1

2

3

4

5                          IN THE UNITED STATES DISTRICT COURT

6                        FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    COTTON, et al.,                              No. C-08-04386 SBA (EDL)

9              Plaintiffs,                        **ORDER DENYING DEFENDANTS'**
                                                  **MOTION FOR EVIDENTIARY**
10     v.                                         **SANCTIONS WITHOUT PREJUDICE TO**
                                                  **RAISING A PROPOSAL FOR**
11   CITY OF EUREKA, et al.,                      **DIFFERENT RELIEF IN APPROPRIATE**
                                                  **MOTION IN LIMINE**
12             Defendants.
     _____/

13

14        Plaintiffs are the heirs of decedent Martin Cotton, Jr., who died in police custody on August

15   9, 2007.  The City of Eureka Defendants brought this motion for evidentiary sanctions, seeking

16   adverse inference instructions to the jury based on the improper conduct of Plaintiffs' counsel, Vicki

17   Sarmiento, at the deposition of Kevin Healy, a non-party witness.  Specifically, Defendants argue

18   that Ms. Sarmiento interposed improper and suggestive objections at the deposition that prevented

19   Defendants from obtaining Mr. Healy's true testimony.  The County of Humboldt Defendants join in

20   this motion.

21        The Court held a hearing on Defendants' Motion on July 20, 2010.  For the reasons stated at

22   the hearing and in this Order, the Court denies Defendants' Motion.

23   **Background**

24        On August 9, 2007, at about 4:40 p.m., police were called to the Rescue Mission in Eureka to

25   respond to a fight there.  Kloeppel Decl. Ex. C at 5.  Decedent Cotton was involved in the fight and

26   was arrested.  Id.  The police report indicates that Mr. Cotton was "very hostile and resistive," and

27   that it took four officers administering various strikes and blows, as well as pepper spray and

28   handholds, to detain him.  Id. at 5.  He was booked into jail at 5:15 p.m.  Id. at 6.  He was discovered

     not breathing in his cell at 7:10 p.m., and was taken to the hospital where he was pronounced dead at

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

7:40 p.m. Id. at 6.

The police report from the date of the incident indicates that the deponent, Mr. Healy, had been involved in an altercation with Mr. Cotton just before Mr. Cotton was arrested. Kloeppel Decl. Ex. C at 5, 20. The report contains a statement from Richard Bradley, local store owner, who told police that Mr. Healy told Mr. Bradley that Mr. Healy broke his hand when he punched Mr. Cotton in the head during the fight. Id. Also, the manager of the Rescue Mission, Bryan Hall, testified in his deposition that he observed Mr. Healy and others swing at and hit Mr. Cotton, and observed Mr. Cotton collapse to the ground. Delaney Decl. Ex. C at 19-20, 36-37, 48-49. Mr. Hall did not know where Mr. Healy's punch landed on Mr. Cotton. Id. at 48-49.

Mr. Healy was interviewed for the Humboldt County District Attorney's Office investigation. Kloeppel Decl. Ex. D. The investigation report states that Mr. Healy was at the Rescue Mission when Mr. Cotton was there on August 9, 2007. Id. at 000124. The report also stated that Mr. Healy stated that Mr. Cotton tried to pick a fight, yelled at people, and punched an uninvolved person in the head. Id. Mr. Healy stated that he knew Mr. Cotton for about one year, that Mr. Cotton was "not right in the head," and that he considered Mr. Cotton to be dangerous and to have mental issues. Id.

**Discussion**

On May 12, 2010, Defendants took Mr. Healy's deposition at Avenal State Prison where Mr. Healy is incarcerated. See Kloeppel Decl. Ex. A; Ex. B. During the deposition scheduling process, Mr. Healy did not ask for counsel. Kloeppel Decl. ¶ 3. During the deposition, Ms. Sarmiento, who did not represent Mr. Healy and had never met him prior to the deposition (see Sarmiento Decl. ¶¶ 5, 6), made numerous objections. Mr. Healy also invoked his Fifth Amendment privilege in response to several questions at the deposition. Ms. Sarmiento states that her objections were not intended to interfere with Mr. Healy's testimony. Regardless of her intent, as described below, a number of her objections were improper coaching and speaking objections and do appear to have influenced Mr. Healy to evade or refuse to answer various questions and in particular appear to have influenced his decision to invoke his Fifth Amendment privilege. At the same time, the witness invoked the Fifth Amendment several times before Ms. Sarmiento made her sole express reference to it.

2

**United States District Court**
For the Northern District of California

1   As an example of Ms. Sarmiento's improper objections, when Mr. Healy stated at the

2   beginning of the deposition that if he did not want to answer a question, he would not do so, Ms.

3   Sarmiento stated: "That is correct.  If you don't want to answer -- you don't have to answer any

4   questions.  You're not a -- you're not being sued for anything."  Sarmiento Decl. Ex. 1 at 7.  Mr.

5   Healy responded: "That is what I would be afraid of too.  I wouldn't want to get sued by somebody

6   or anything like that by saying something and saying the wrong thing."  Id.  Then defense counsel

7   told Mr. Healy in the admonitions that: "All we're doing here today is finding out what you know,

8   that is all," to which Ms. Sarmiento added: "Assuming you know anything."  Id. at 8.  Mr. Healy

9   responded: "Yeah that is what I am saying.  I don't think, you know, I can add anything that you

10  don't already probably have."  Id.  The objections by Ms. Sarmiento improperly coached Mr. Healy,

11  particularly insofar as she told him he did not have to answer questions if he did not "want to,"

12  regardless of whether he had any valid basis to refuse to answer.

13  Later, Defendants' counsel asked Mr. Healy whether he was at the Rescue Mission on the

14  day of the incident.  Sarmiento Decl. Ex. 1 at 9.  Ms. Sarmiento stated: "I am going to object that

15  you're leading, counsel."  Id.  She followed up with a speaking objection: "I think he's [Healy]

16  basically said at the outset that he doesn't know what we're here talking about.  I think you have a

17  right to ask him non leading questions, he is not under cross-examination, so at this point I am going

18  to object that you're  leading."  Id.  Ms. Sarmiento's objection that defense counsel was leading Mr.

19  Healy was not well-taken, nor was her added reminder to the witness that he claimed to forget

20  matters, even though he had not said he could not recall being at the Rescue Mission on that day and

21  in fact he did recall some things about the incident.

22  Defendants' counsel later attempted to find out from Mr. Healy what caused him to invoke

23  his Fifth Amendment privilege, asking: "What is it about what you're saying that causes you to have

24  Fifth Amendment -- ."  Ms. Sarmiento improperly objected that defense counsel was giving legal

25  advice: "I am going to interpose.  You're giving legal advice to a witness who is not a party to this

26  action, and you're not representing him and I would object to you trying to give him legal advice

27  regarding what the Fifth Amendment is at this point."  Id. at 19.  When defense counsel stated that

28  he was not giving advice, Ms. Sarmiento stated: "He is entitled to respond to your questions and he

is trying to respond to your questions.  And if he believes that he has this protection and unless you get outside counsel for him then he can't --."  Id. at 20.  After that, Mr. Healy asked Ms. Sarmiento if she would be his counsel.  Id.  Ms. Sarmiento responded:  "Well, at this point, I am interposing objections and I think  that you have a right to respond in whatever manner you wish.  And if it is your perception that you are incriminating yourself, you have a right to say that you cannot be forced to answer questions because they are being asked of you."  Id.

Even if Ms. Sarmiento did not intend for her objections to encourage Mr. Healy to invoke his Fifth Amendment privilege, Mr. Healy's final statement at the deposition connecting her objections to his invoking the Fifth Amendment is telling: "Well, most of the questions that I claim the Fifth on she [Ms. Sarmiento] was very adamant about you asking me leading questions and stuff like that." Id. at 38.  Thus, the witness interpreted her objections as triggers to invoke the Fifth Amendment.

As another example, when the County Defendants' counsel attempted to show Mr. Healy an exhibit, Ms. Sarmiento stated: "Just for the record, I am objecting to any exhibits unless he wrote that statement that you're going to show him or unless he has seen it before.  You can ask him those foundational questions, but I am going to object to you requesting him to read anything off of something that he did not write."  Sarmiento Decl. Ex. 1 at 28.  She further stated: "You can refresh his memory with documents he wrote or authored, but not what somebody else wrote that is attributed to him."  Id.  As defense counsel pointed out, this is plainly not the law.

As a final example, defense counsel asked Mr. Healy how often he would stay at the Mission, to which Ms. Sarmiento objected on the ground that the question was vague as to time. Sarmiento Decl. Ex. 1 at 11.  Mr. Healy then responded, "Yeah, it would be really hard to say . . . so I couldn't give you a good estimate of that. . . . "  Id.  Defense counsel asked Mr. Healy if he remembered telling Mr. Bradley that Mr. Healy hit Mr. Cotton and broke his hand, and Ms. Sarmiento objected on the grounds that the question called for hearsay, assumed facts not in evidence and was leading, none of which were valid objections.  Id. at 23.  Mr. Healy then responded: "Yeah, I can't answer that, my memory isn't that good for that day.  To tell you the truth I remember him getting hauled away by the police and that is all I remember." Id. at 23.  Ms. Sarmiento's hearsay objection is not well-taken, and furthermore, her other objections appear to

United States District Court
For the Northern District of California

1    have influenced Mr. Healy's response.

2         Thus, as described above, Ms. Sarmiento interposed improper coaching objections and

3    improper speaking objections during Mr. Healy's deposition in violation of Federal Rule of Civil

4    Procedure 30(c)(2), which states that objections "must be stated concisely in a nonargumentative

5    and nonsuggestive manner."  She also made objections based on misstatements of the law regarding

6    the duty to answer deposition questions and opposing counsel's ability to refresh Mr. Healy's

7    recollection.

8         Nonetheless, the evidentiary sanctions that Defendants seek are not justified and are

9    disproportionate to Ms. Sarmiento's misconduct.  Defendants seek far-reaching and extensive

10   adverse instructions, including an instruction that the jury may draw an adverse inference as to,

11   among other things, whether Mr. Healy hit Mr. Cotton in the head and broke his own hand while

12   Mr. Cotton was at the Rescue Mission prior to the arrival of the police and whether Mr. Healy

13   informed Richard Bradley after the incident that Mr. Healy had hit Mr. Cotton in the head and broke

14   his hand.  Defendants also seek a jury instruction that an inference adverse to Plaintiffs must be

15   drawn from Mr. Healy's refusal to answer questions based on the Fifth Amendment, and that the

16   statements of Mr. Healy made to Mr. Bradley as stated in the police report regarding Mr. Healy

17   having broken his hand when he hit Mr. Cotton in the head shall be admissible in the same fashion

18   as if testified to by Mr. Healy.  Severe evidentiary sanctions are not warranted by Ms. Sarmiento's

19   objections, which although improper, are less egregious than required for the drastic remedy of such

20   adverse inferences, especially based on a third party witness's invocation of the Fifth Amendment.

21        In general, a court may order adverse inferences based on a party's invocation of the Fifth

22   Amendment privilege.  See, e.g., SEC v. Colello, 139 F.3d 674, 677 (9th Cir. 1998) ("Parties are

23   free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse

24   inferences from their failure of proof.").  However, this case presents the unusual situation in which

25   Defendants are seeking adverse inference instructions against Plaintiffs based on the invocation of

26   the Fifth Amendment by a non-party witness, rather than by Plaintiffs.  Cf. Nationwide Life Ins. Co.

27   v. Richards, 541 F.3d 903, 911-12 (9th Cir. 2008) ("When a party asserts the privilege against

28   self-incrimination in a civil case, the district court has discretion to draw an adverse inference from

1   such assertion. . . . Moreover, the inference may be drawn only when there is independent evidence

2   of the fact about which the party refuses to testify.") (internal citations omitted).  Defendants did not

3   present any Ninth Circuit authority extending this discretion to a third party witness, especially one

4   not closely aligned with a party.

5          The Second Circuit has opined that there are four factors that a court should consider in

6   deciding whether to permit an adverse inference against a party based on a non-party's invocation of

7   his Fifth Amendment privilege.  See LiButti v. United States, 107 F.3d 110, 123-24 (2d Cir. 1997)

8   ("1. The Nature of the Relevant Relationships . . . 2. The Degree of Control of the Party Over the

9   Non-Party Witness . . . 3. The Compatibility of the Interests of the Party and Non-Party Witness in

10  the Outcome of the Litigation . . . 4. The Role of the Non-Party Witness in the Litigation . . . .").  It

11  is not clear whether LiButti applies in the Ninth Circuit, but even if it does, there has been no

12  showing that the LiButti factors are met here.

13         Most importantly, there is no evidence of any close or special relationship between Plaintiffs

14  and Mr. Healy.  Moreover, there is no showing that Plaintiffs have any degree of control over Mr.

15  Healy.  In fact, Mr. Healy testified that Mr. Cotton was not his friend, and indeed, Defendants seek

16  an inference that Mr. Healy assaulted Mr. Cotton.  See Sarmiento Decl. Ex. 1 at 33.  Further, unlike

17  in LiButti, here, not only is there no indication of a close relationship between Plaintiffs and Mr.

18  Healy, but there is no assertion that the invocation of the privilege advances the interests of both

19  Plaintiffs and Mr. Healy in the outcome of this litigation -- litigation in which Mr. Healy appears to

20  have no stake.  By contrast, in LiButti, a non-party taxpayer's refusal to answer questions from the

21  government as to whether he or his daughter was the owner of a stable or race horse was admissible

22  in the daughter's wrongful levy action against the government because the non-party and his

23  daughter had a close relationship, manipulated the stable's monies and business affairs and had the

24  same interest against the drawing of adverse inferences from the taxpayer's invocation of privilege

25  against self-incrimination -- to insulate race horse and stable's assets from government's levy.  See

26  LiButti, 107 F.3d at 124.  In addition, Mr. Healy was the first to raise the Fifth Amendment during

27  his deposition, Ms. Sarmiento did not suggest to him that he invoke that privilege.  Moreover, Mr.

28  Healy's invocation of the Fifth Amendment might well have occurred without any suggestion from

1   Plaintiffs' counsel, given that Defendants sought an admission from Mr. Healy, who had been

2   arrested and jailed before and was incarcerated at the time of his deposition, that he assaulted Mr.

3   Cotton.

4   **Conclusion**

5        As stated at the hearing, the Court declines to recommend any evidentiary sanctions based on

6   Ms. Sarmiento's improper objections or Mr. Healy's invocation of his Fifth Amendment privilege.

7   Accordingly, Defendants' Motion for Evidentiary Sanctions is denied.  Toward the end of the

8   hearing, counsel for the County Defendants proposed in the alternative a limited evidentiary

9   sanction that the testimony of the local store owner, Mr. Bradley, regarding Mr. Healy's statements

10  to Mr. Bradley on the date of the incident that Mr. Healy had broken his hand when he punched Mr.

11  Cotton in the head at the Rescue Mission, be admitted over a hearsay objection.  The Court notes

12  that if Defendants move in limine for a ruling to admit the testimony of Mr. Bradley even if the

13  testimony is found to be hearsay, it may well be appropriate to grant such a motion based on Ms.

14  Sarmiento's misconduct and the fact that it appears that Mr. Healy curtailed his testimony  and

15  refused to answer some legitimate questions at his deposition due at least in part to being improperly

16  influenced by Ms. Sarmiento's objections.

17       **IT IS SO ORDERED.**

18  Dated: July 21, 2010

                                    *Elizabeth D. Laporte*

19                                     ELIZABETH D. LAPORTE
                                   United States Magistrate Judge

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California