1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

7                                  OAKLAND DIVISION

8

9   SIEHNA M. COTTON, a minor, by and            Case No:  C 08-04386 SBA
    Megan McClure, her guardian ad litem; and
10  MARTIN COTTON, SR., an individual,           **ORDER RE MOTIONS IN LIMINE**

11                 Plaintiffs,                    Docket 121, 123 and 127

12          vs.

13  CITY OF EUREKA, CALIFORNIA, a
    political subdivision of the State of California,
14  COUNTY OF HUMBOLDT, CALIFORNIA,
    a political subdivision of the State of
15  California, et al.,

16                 Defendants.

17

18         The instant civil rights action under 42 U.S.C. § 1983 arises from the death of

19  Martin Cotton II ("Decedent"), who allegedly was beaten by officers with the Eureka

20  Police Department ("EPD") and died hours later of a head injury while in custody at the

21  Humboldt County Correctional Facility ("HCCF").  The Decedent's father, Martin Cotton,

22  Sr., and the Decedent's minor daughter, Siehna M. Cotton, by and through her guardian ad

23  litem, bring the instant wrongful death and survival action, alleging federal claims for

24  excessive force, deliberate indifference to serious medical needs and violation of their right

25  to familial association.  As Defendants, Plaintiffs have named the City of Eureka ("the

26  City"), Humboldt County ("the County"), and the respective EPD officers and HCCF

27  correctional officers involved in the underlying incident.  A jury trial is scheduled to

28  commence on January 10, 2011.  The parties are now before the Court on the parties'

1   respective motions in limine.  Dkt. 121, 123 and 127.  In accordance with Federal Rule of

2   Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court, in its discretion, finds that

3   these motions are suitable for resolution without oral argument, and therefore, enters the

4   following rulings.

5   **I.      BACKGROUND**

6          **A.      FACTUAL SUMMARY**

7                 **1.      Arrest of the Decedent at the Rescue Mission**

8          On August 9, 2007, the Decedent was released from the HCCF for reasons not

9   disclosed in the parties' pretrial papers.  At some point after his release, Decedent made his

10  way to the Rescue Mission, which apparently is an emergency homeless shelter.  Decedent

11  became involved in an altercation with another individual at the shelter and the police were

12  summoned.  At around 4:40 p.m., the police arrived at the Rescue Mission and observed the

13  Decedent shove Brian Hall, manager of the Rescue Mission.  The parties disagree as to

14  what transpired next.

15         According to Plaintiffs, EPD Officers Adam Laird and Justin Winkle directed the

16  Decedent to place his hands behind his back, and then sprayed him in the face with pepper

17  spray when he did not comply quickly enough.  Without justification, Officer Winkle then

18  struck the Decedent in the stomach, causing him to collapse.  While the Decedent was on

19  the ground, both officers kicked him and struck his legs with a baton.  Witnesses also

20  allegedly saw the officers hit the Decedent in the head with clenched "hammer" fists.

21         Officer Gary Whitmer arrived at the scene and joined the other officers in kicking

22  and hitting the Decedent.  He also struck the Decedent with a baton, and sprayed him with

23  pepper spray while he was lying face down and being restrained by the other officers.

24  Thereafter, Officers Brian Franco, Steven Watson, Josh Siipola and Tim Jones arrived and

25  also used unspecified force against the Decedent.  The officers handcuffed the Decedent

26  and stood him upright.  Officer Jones applied his nunchucks (a martial arts weapon) on the

27  Decedent's arms allegedly because he refused to walk.  Officer Laird then transported the

28  Decedent directly to HCCF.  Officer Winkle, who was following Officer Laird in his patrol

1  car, testified that he thought that Officer Laird was taking the Decedent to the hospital.

2  None of the police officers called for any medical assistance.

3        The police officers tell a different story.  They claim that upon contacting the

4  Decedent, he took an "aggressive stance" and refused to submit to their authority.  City

5  Defs.' Trial Brief at 2, Dkt. 100.  Despite the use of pepper spray, the Decedent continued

6  to resist and was then eventually was taken down by the officers.  The officers claim that

7  the Decedent displayed extraordinary strength, and they believed he might be under the

8  influence of methamphetamine.  A subsequent toxicology report showed that, in fact, the

9  Decedent had a large amount of LSD in his system.  Though the officers do not deny

10  repeatedly hitting the Decedent, kicking him and using knee strikes, they insist that they did

11  not hit him in the head.  In addition, they maintain that their use of force was justified by

12  the Decedent's conduct and that they comported themselves in accordance with California

13  Peace Officer Standards and Training ("POST") standards and techniques.  The City further

14  denies that its officers caused the Decedent's death and maintain that the Decedent's

15  subdural hematoma was caused by a blow to the head suffered by the Decedent during a

16  fight with an individual named Kevin Healy, which took place before the police officers

17  arrived.[1]

18                    **2.       Decedent's Detention at HCCF**

19        The Decedent was brought to HCCF and booked at around 5:15 p.m.  HCCF

20  Correctional Officers Fernando Cangas and Chet Christensen and HCCF Corporal Dennis

21  Griffin met the Decedent in the jail parking lot.  Officers Cangas and Christensen used

22  "control holds" to bring the Decedent into the booking area.  Pls.' Trial Brief at 3, Dkt. 90.

23  Surveillance tapes in the jail revealed that the Decedent was pushed against a "blue mat" on

24  the wall of the booking area.  Id. at 2-3.  The officers led the Decedent, who was having

25  visible difficulty walking on his own, into a sobering cell.  No medical pre-screening of the

26

27        [1] It is not clear whether the Decedent's altercation with Mr. Healy prompted the
emergency call to the EPD.  Mr. Healy allegedly told an acquaintance who works near the
Rescue Mission that he broke his hand as a result of hitting the Decedent in the head.

28  During his deposition, Mr. Healy claims that he does not recall making such a statement.

Decedent was performed nor was any medical care provided to him.  While in the sobering cell, HCCF personnel continued to use force to hold him down, even though he did not appear to be offering any resistance.[2]  HCCF personnel discovered the Decedent unconscious in his cell at 7:10 p.m.  He was taken to the hospital where he was pronounced dead at 7:40 p.m. due to subdural hematoma (i.e., pooling of blood on the surface of the brain).

All of the HCCF correctional officers involved with the Decedent's booking and detention claim that they had "no idea" that he had a serious medical condition requiring attention.  County Defs.' Trial Brief at 1, Dkt. 91.  The County further claims that none of the correctional officers had been advised that the Decedent needed medical care, that the Decedent did not request medical attention and that he had no visible injuries.  However, autopsy photographs evidently show that the Decedent had sustained significant bruising all over his body.  Additionally, surveillance tapes from HCCF show that the Decedent had difficulty walking on his own accord, and that he appeared to have collapsed at one point.

**B.    PROCEDURAL HISTORY**

Plaintiffs, as survivors-in-interest, filed the instant action against the City and EPD Officers Laird, Whitmer, Jones, Watson, Siipola[3] and Franco (collectively "City Defendants"), and the County, HCCF Correctional Officers Cangas, Christensen, Francis Marie Morgan, Adam Rossiter and Devin Strong and HCCF Corporal Griffin (collectively "County Defendants").  Plaintiffs filed a First Amended Complaint ("FAC") on May 21, 2009, which alleges eight causes of action, styled as follows:

(1) Violation of Civil Rights, 42 U.S.C. § 1983 (for excessive force against EPD Officers Laird, Winkle, Whitmer, Jones, Watson, Siipola and Franco);

(2) Violation of Civil Rights, 42 U.S.C. § 1983 (for deliberate indifference to serious medical needs against EPD Officers Laird, Winkle, Whitmer, Jones, Watson, Siipola and

---

[2] Though not alleged in the pleadings, Plaintiffs now claim that the Decedent was "tased" while in the sobering cell.

[3] The parties stipulated to the dismissal of Officer Siipola.

Franco and HCCF Corporal Griffin and HCCF Officers Cangas, Christensen, Morgan, Rossiter and Strong);

(3) Violation of Civil Rights, 42 U.S.C. § 1983 (for supervisory liability against the City and the County);

(4) Assault and Battery (against the City and EPD Officers Laird, Winkle, Whitmer, Jones, Watson, Siipola and Franco);

(5) Violation of California Government Code § 845.6[4] (against the City and EPD Officers Laird, Winkle, Whitmer, Jones, Watson, Siipola and Franco);

(6) Wrongful Death (against all Defendants);

(7) Survival Damages (against all Defendants); and

(8) Violation of the Fourteenth Amendment (for interference with familial association against all Defendants).

Plaintiffs, the City Defendants and the County Defendants, respectively, have filed motions in limine.  Dkt. 121, 123, 127.[5]  To place these motions in their proper context, the Court first briefly reviews the salient law governing the claims alleged and the Plaintiffs' standing to bring them.  The Court does not address all of Plaintiffs' claims, but only those that are the most pertinent to the resolution of the numerous motions in limine before the Court.

C.   LEGAL OVERVIEW

1.   Standing

It is axiomatic that standing is a threshold issue that precedes consideration of any claim on the merits.  See Moreland v. City of Las Vegas, 159 F.3d 365, 369 (9th Cir. 1998).  Generally, "'Fourth Amendment rights are personal rights which … may not be vicariously

---

[4] California Government Code § 845.6 states, in relevant part, that "a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care."

[5] County Defendants filed a joinder in the City Defendants' opposition to Plaintiffs' motions in limine and each has filed a joinder in the other's motions in limine.

asserted.'"  <u>United States v. Struckman</u>, 603 F.3d 731, 746 (9th Cir. 2010) (quoting <u>Alderman v. United States</u>, 394 U.S. 165, 174 (1969)).  "In § 1983 actions, however, the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorize[] a survival of action."  <u>Moreland</u>, 159 F.3d at 369.  California law provides that a cause of action belonging to the decedent survives his or her death and "passes to the decedent's successor in interest, … and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest."  Cal.Code Civ.Proc. § 377.30; <u>Tatum v. City and County of San Francisco</u>, 441 F.3d 1090, 1094 n.2 (9th Cir. 2006) ("Under California law, if an injury giving rise to liability occurs before a decedent's death, then the claim survives to the decedent's estate.").

Separate from a survival action, a family member may assert a Fourteenth Amendment claim "based on the related deprivation of their liberty interest arising out of their relationship with [a decedent]."  <u>Moreland</u>, 159 F.3d at 371. "This substantive due process claim may be asserted by both the parents and children of a person killed by law enforcement officers."  <u>Id.</u>  In addition, the decedent's survivors may bring a state law wrongful death claim to recover damages based on their own injuries resulting from the Decedent's death.  Cal. Code Civ. Proc. § 377.60; <u>see</u> <u>Ruiz v. Podolsky</u>, 50 Cal.4th 838, 858 (2010) ("Plaintiffs' wrongful death claim is independent, vindicating their own injuries, which arise from the effect that their father's death had on them personally.").[6]

### 2.    Constitutional Violations

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).  There are three principal

---

[6] A survivor may seek recovery for both survival and wrongful death claims in the same action.  See id. § 377.62(a) ("An action under Section 377.30 may be joined with an action under Section 377.60 arising out of the same wrongful act or neglect.").

constitutional claims at issue in this case: (1) excessive force in violation of the Fourth

Amendment; (2) deliberate indifference to serious medical needs in violation of the

Fourteenth Amendment; and (3) interference with familial relations under the Fourteenth

Amendment.

### a)     Excessive Force

Allegations of excessive force are examined under the Fourth Amendment's

prohibition on unreasonable seizures.  See Graham v. Connor, 490 U.S. 386, 394 (1989).

"[T]he reasonableness inquiry in an excessive force case is an objective one:  the question

is whether the officers' actions are objectively reasonable in light of the facts and

circumstances confronting them, without regard to their underlying intent or motivation."

Id. at 397.  Under Graham, the reasonableness of the officer's conduct is based on the

consideration of three factors:  (1) the severity of the crime at issue, (2) whether the suspect

poses an immediate threat to the police or others, and (3) whether the suspect is fleeing or

resisting arrest.  See Brooks v. City of Seattle, 599 F.3d 1018, 1025 (9th Cir. 2010).  In

considering an excessive force claim, the court is to balance "the nature and quality of the

intrusion on the individual's Fourth Amendment interests against the countervailing

governmental interests at stake."  Graham, 490 U .S. at 396; Lolli v. County of Orange, 351

F.3d 410, 415 (9th Cir. 2003).

### b)     Denial of Medical Care

A pretrial detainee has a constitutional right to adequate medical care, which derives

from the substantive due process clause of the Fourteenth Amendment.  Gibson v. County

of Washoe, Nevada, 290 F.3d 1175, 1187 (9th Cir. 2002).  To state a claim for denial of

medical treatment, a plaintiff must show (1) a serious medical need, and (2) the official was

deliberately indifferent to that need.  Conn v. City of Reno, 591 F.3d 1081, 1095 (9th Cir.

2010), pet. for cert. filed, 78 U.S.L.W. 3670 (2010).  As to the first prong of this test, a

medical need is deemed serious "if the failure to treat the condition could result in further

significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin v. Smith,

974 F.2d 1050, 1059 (9th Cir. 1992) (quoting in part Estelle v. Gamble, 429 U.S. 97, 104

(1976)).  "The second prong requires both '(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.' Deliberate indifference thus requires an objective risk of harm and a subjective awareness of that harm."  Conn, 591 F.3d at 1095 (quoting in part Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  Mere negligence does not constitute deliberate indifference.  See Hallett v. Morgan, 296 F.3d 732, 744-745 (9th Cir. 2002).

### 3.     Right to Familial Association

The Ninth Circuit "has recognized that parents have a Fourteenth Amendment liberty interest in the companionship and society of their children."  Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010).  "Official conduct that 'shocks the conscience' in depriving parents of that interest is cognizable as a violation of due process."  Id.  The shock the conscience test may be met by showing that a defendant acted with deliberate indifference or by showing that he acted with a "purpose to harm" the decedent for reasons unrelated to legitimate law enforcement objectives.  Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008).  If the officers had the opportunity for actual deliberation, the deliberate indifference standard applies; but if there was not sufficient time for such deliberation, then the plaintiff must satisfy the more stringent purpose to harm standard.  Id. at 1137-40.  To satisfy the purpose to harm standard, a plaintiff must show "the intent to inflict force beyond that which is required by a legitimate law enforcement objective."  Id. at 1140 (citations and internal quotations omitted).

### 4.     Individual and Municipal Liability

Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).  A person deprives another of a constitutional right within the meaning of § 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains.  Id. at 633.

There is no respondeat superior liability under § 1983.  Polk County v. Dodson, 454 U.S. 312, 325 (1981).  To impose liability on a municipality, a plaintiff must show that the defendant's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct.  Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 694 (1978).  "[A] a single decision by a municipal policymaker may be sufficient to trigger section 1983 liability under Monell" only where there is "evidence of a conscious, affirmative choice."  Gillette v. Delmore, 979 F.2d 1342, 1348 (9th Cir. 1992).  In the absence of such evidence, a single incident is insufficient to impose municipal liability. See Haugen v. Brosseau, 351 F.3d 372, 393 (9th Cir. 2003), overruled on other grounds by Brosseau v. Haugen, 543 U.S. 194 (2004).

Inadequate training may serve as the basis for § 1983 liability against a municipality "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  City of Canton v. Harris, 489 U.S. 378, 388 (1989). To state a claim based on inadequate training, the plaintiff must show the following: "(1) an inadequate training program, (2) deliberate indifference on the part of the County in adequately training its law enforcement officers, and (3) whether the inadequate training 'actually caused' a deprivation of [plaintiff's] constitutional rights."  Merritt v. County of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989).

## II.   PLAINTIFFS' MOTIONS IN LIMINE

### A.   MOTION NO. 1:  DECEDENT'S CRIMINAL HISTORY

Plaintiffs move to exclude evidence of or reference to the Decedent's criminal record and history on the ground that such evidence is not relevant and unduly prejudicial. Fed.R.Evid. 402, 403.  Under Graham, the salient inquiry in an excessive force claim is "whether the officers' actions are objectively reasonable *in light of the facts and circumstances confronting them*."  490 U.S. at 397 (emphasis added).  Thus, evidence regarding an arrestee's criminal past may be relevant and admissible in an excessive force case *provided that* the officer was aware of such information at the time of incident.

1   Compare Ruvalcaba v. City of Los Angeles, 64 F.3d 1323, 1328 (9th Cir. 1995) ("we

2   conclude that the district court properly allowed the officers to testify about the facts known

3   to them regarding [plaintiff]'s criminal past"); with Stringer v. City of Pablo, No. C 07-

4   03544 MEJ, 2009 WL 5215396, at *7 (N.D. Cal. Dec. 28, 2009) (evidence of plaintiff's

5   criminal history was "overwhelmingly prejudicial" where officers lacked such knowledge

6   when the incident occurred).

7          In the instant case, Defendants do not contend that any of the EPD officers were

8   aware of the Decedent's criminal history at the time they encountered him at the Rescue

9   Mission.  Instead, they assert that the fact that Plaintiff had just been released from HCCF

10  corroborates the observations of the responding police officers that the Decedent was

11  combative and resisting arrest.  County Defs.' Opp'n at 2, Dkt. 128.  More specifically,

12  Defendants assert that "[i]t is reasonable to infer from the fact that he was released from jail

13  shortly before the subject incident that he had an increased desire to resist arrest to avoid

14  being returned to jail."  Id.  However, the suggestion that the Decedent was more likely to

15  resist arrest because of his recent release is nothing more than unsupported conjecture.

16  Indeed, the desire to avoid re-incarceration would likely apply to any person who was

17  previously in custody.

18         Alternatively, Defendants argue that "[t]ime spent away from the family due to

19  incarceration is relevant to the issue of damages plaintiffs may recover in this action."  Id.

20  The Court agrees that the Decedent's past separation from his family is pertinent to the

21  amount of pecuniary support, society and comfort he would have otherwise provided them.

22  See Garcia v. Super. Ct., 42 Cal.App.4th 177, 187 (1996) (noting that a survivor bringing a

23  wrongful death claim may "recover pecuniary losses caused by the death, including

24  pecuniary support the decedent would have provided them, and noneconomic damages for

25  being deprived of the decedent's society and comfort.") (citing Krouse v. Graham, 19

26  Cal.3d 59, 67-68 (1977)); Judicial Council of Cal. Civ. Jury Instruction ("CACI") No. 3921

27  (jury instruction on wrongful death damages).  However, Defendants have made no

28  showing that in calculating Plaintiffs' damages the jury must be made aware of the reason

1   for the separation, i.e., his incarceration, which the Court finds to be potentially

2   inflammatory under FRE 403.  Accordingly, Plaintiffs' motion in limine no. 1 to exclude

3   evidence of or reference to the Decedent's criminal record and history is GRANTED,

4   subject to the foregoing.

5           **B.    MOTION NO. 2:  TOXICOLOGY RESULTS/PRIOR DRUG USE**

6                   **1.    Toxicology Results**

7           Plaintiffs seeks to exclude any evidence of or reference to (1) post-mortem

8   toxicology results that the decedent had "LSD" (presumably meaning lysergic acid

9   diethylamide) in his system at the time of his death and (2) his prior drug use.  Citing

10  Graham, Plaintiffs argue that only evidence pertaining to the officers' actual knowledge at

11  the time of the incident is admissible.  Pls.' Mot. at 3-4.  The flaw in this argument is that it

12  overlooks that evidence that the Decedent was under the influence of LSD may be

13  probative of his behavior at the time of the incident.  See Luchtel v. Hagemann, 623 F.3d

14  975, 980 (9th Cir. 2010) (citing hospital medical report showing that plaintiff was under the

15  influence of crack cocaine in considering whether the police officers used a reasonable

16  amount of force while arresting her); Boyd v. City and County of San Francisco, 576 F.3d

17  938, 944 (9th Cir. 2009) (holding that evidence that the decedent was "on drugs" at the time

18  of the incident was probative of the police officers' claim that the decedent was "acting

19  erratically, taunting police and goading them to shoot him instead of following police

20  commands").  The EPD officers and percipient witnesses in this case observed that the

21  Decedent's behavior at the Rescue Mission at the time of his arrest was erratic and

22  abnormal, and possibly the result of the influence of illegal drugs.  Evidence that the

23  Decedent was under the influence of LSD at that time may corroborate those observations,

24  and thus, is relevant and admissible.  Thus, Plaintiffs' motion in limine no. 2 to exclude

25  toxicology reports showing that the decedent had LSD in his system at the time of his death

26  is DENIED.

27

28

1

### 2.    Prior Drug Use

2    Defendants argue that the Decedent's prior drug use is relevant and admissible to the

3    determination of damages because it relates to his life expectancy, as well as his habits,

4    activities and lifestyle.  See Allen v. Toledo, 109 Cal.App.3d 415, 424 (1980) ("The life

5    expectancy of the deceased is a question of fact for the jury to decide..., considering all

6    relevant factors including the deceased's health, lifestyle and occupation.").   Plaintiffs'

7    only response is that they are "unaware of any expert testimony to support Defendants'

8    contention that Decedent had a drug problem that impacted his life span."  Pls.' Reply at 3,

9    Dkt. 130.  Plaintiffs neglect to cite any legal authority establishing that expert testimony is

10   necessary to establish damages in a wrongful death case.  Indeed, it is noteworthy that

11   Plaintiffs, whose burden it is to establish damages, have not disclosed any damages expert

12   in their witness list.  Dkt. 104.  Plaintiffs' motion in limine no. 2 to exclude evidence of

13   Plaintiffs' prior drug use is DENIED.[7]

14   ### C.    MOTION NO. 3:  HEARSAY STATEMENT OF KEVIN HEALY

15   ### 1.    Background

16   The police report from the date of the incident indicates that prior to the arrival of

17   the police officers at the Rescue Mission, the Decedent and Kevin Healy were involved in a

18   fight.  After the fight, Mr. Healy allegedly informed Richard Bradley, an employee at a

19   nearby record store, that he had broken his hand when he hit the Decedent in the head.  Mr.

20   Bradley provided this information to the police.

21   On May 12, 2010, Defendants took Mr. Healy's deposition at Avenal State Prison,

22   where he currently is incarcerated.  Mr. Healy did not ask for nor was he represented by

23   counsel.  Nevertheless, during the deposition, Plaintiffs' counsel Vicki Sarmiento

24   interposed a number of argumentative objections.  Mr. Healy also invoked his Fifth

25   Amendment right in response to a number of questions.  Following the deposition, the City

26

27   _____

[7] In the event the Court bifurcates liability and damages, such evidence may be presented only during the damages phase of trial.  If the trial is not bifurcated, this evidence

28   may be used only as to the issue of damages.

1    Defendants, joined by the County Defendants, filed a motion for evidentiary sanctions

2    based on Ms. Sarmiento's conduct at the deposition.  As relief, Defendants requested:

3    (1) an instruction advising the jury that they may draw adverse inferences from witness Mr.

4    Healy's refusal to answer deposition questioning as a result of improper instructions and

5    objections by Plaintiffs' counsel; (2) an instruction that an inference adverse to Plaintiffs

6    must be drawn from Mr. Healy's refusal to answer questions; and (3) an instruction that the

7    statements of Mr. Healy to another witness shall be admissible evidence in the same

8    fashion as if testified to by Mr. Healy.  See Defs.' Mot. for Evidentiary Sanctions at 1, Dkt.

9    46, 53.

10         The Court referred the motion for sanctions to Magistrate Judge Laporte for

11   determination.  5/27/10 Order, Dkt. 55.  On July 22, 2010, Magistrate Judge Laporte issued

12   an order denying the motion.  7/22/10 Order, Dkt. 87.  She agreed with Defendants that "a

13   number of [Ms. Sarmiento's] objections were improper coaching and speaking objections

14   and do appear to have influenced [Mr. Healy's] decision to invoke his Fifth Amendment

15   privilege.  Id. at 2.  Magistrate Judge Laporte found that such conduct violated Federal Rule

16   of Civil Procedure 30(c)(2), which provides that objections "must be stated concisely in a

17   nonargumentative and nonsuggestive manner."  Id. at 5.  Nonetheless, she declined to

18   impose the sanctions requested by Defendants, finding that they were "not justified" and

19   were "disproportionate to Ms. Sarmiento's conduct."  Id.  In addition, Magistrate Judge

20   Laporte noted that Mr. Healy was the first to raise any Fifth Amendment objection and that

21   Ms. Sarmiento "did not suggest to him that he invoke that privilege."  Id. at 6.

22         Though denying Defendants' motion for evidentiary sanctions, Magistrate Judge

23   Laporte left open the possibility that Defendants could seek to proffer Mr. Healy's

24   statement through Mr. Bradley.  The conclusion of her order states that:  "[I]f Defendants

25   move for an in limine ruling to admit the testimony of Mr. Bradley even if the testimony is

26   found to be hearsay, it may well be appropriate to grant such a motion based on Ms.

27   Sarmiento's misconduct and the fact that Mr. Healy curtailed his testimony and refused to

28

answer some legitimate questions at his deposition due at least in part to being improperly influenced by Ms. Sarmiento's objections." Id. at 7.

Plaintiffs now move to preclude Defendants from eliciting from Mr. Bradley the statement allegedly made to him by Mr. Healy that he broke his hand after hitting the Decedent on the ground that it is inadmissible hearsay under FRE 802. Pls.' Mot. at 4-7.[8] City Defendants have filed a separate motion in limine seeking the admission of such testimony. See City Defs.' Mot. at 1-5, Dkt. 127 (motion in limine no.1). Defendants argue that Mr. Healy's statement is subject to the hearsay exception under FRE 804(b)(3) applicable to statements against interest, or alternatively, under the "catchall" exception set forth in FRE 807. They also contend that Mr. Healy's statement should be admitted through Mr. Bradley as a sanction for Ms. Sarmiento's conduct at Mr. Healy's deposition. The Court discusses these issues below.

### 2.    EXCEPTIONS TO THE HEARSAY RULE

#### a)    FRE 804(b)(3) – Admission Against Penal Interest

"[H]earsay is inadmissible unless it is defined as non-hearsay or falls within a hearsay exception…." Orr v. Bank of Am., NT & SA, 285 F.3d 764, 778 (9th Cir. 2002). Defendants do not dispute that Mr. Healy's statement to Mr. Bradley constitutes hearsay, but contend that it is admissible as a "statement against interest" of a non-party declarant. Fed.R.Evid. 804(b)(3). This exception to the hearsay rule applies if (1) the declarant is unavailable as a witness and (2) the statement is made against interest. Id. FRE 804(a)(1) provides that "'Unavailability as a witness' includes situations in which the declarant—[¶] … is exempted *by ruling of the court on the ground of privilege* from testifying concerning the subject matter of the declarant's statement …." (Emphasis added).

---

[8] Plaintiffs also seek to exclude "other hearsay statements from other individuals regarding what Mr. Healy may have said." Pls.' Mot. at 4. Without any specification of what individuals Plaintiffs are referring to, the content of the statements or the purpose for which the statements are being elicited, the Court is not in a position to address this aspect of Plaintiffs' motion in limine. Plaintiffs, of course, may interpose appropriate objections at trial, if legally justified.

1 Defendants argue that Mr. Healy is "unavailable" by virtue of invoking his Fifth

2 Amendment rights and corresponding refusal to answer questions at his deposition

3 regarding the statements he allegedly made to Mr. Bradley.[9]  Though Defendants fail to cite

4 any supporting decisional authority, the Court notes that there is case law in the Ninth

5 Circuit holding that a declarant may be deemed unavailable if he invokes his Fifth

6 Amendment right not to testify.  See United States v. Holland, 880 F.2d 1091, 1093 (9th

7 Cir. 1989).  However, the express language of Rule 804(a)(1) provides that in order for this

8 exception to apply, the court must first enter a "ruling … on the ground of privilege…."

9 This requirement is echoed in the Advisory Committee notes which state that "[a] ruling by

10 the judge is required, which clearly implies that an actual claim of privilege must be made."

11 Fed.R.Evid. 804, Advisory Committee Notes (1972); e.g., United States v. Udey, 748 F.2d

12 1231, 1243 (8th Cir. 1984) (finding that FRE 804(b)(3) was inapplicable in the absence of a

13 ruling by the court on the witness's assertion of privilege).  Because Mr. Healy invoked his

14 Fifth Amendment privilege in the course of his deposition and not in court, the precise

15 questions to which he may invoke the privilege in response thereto are unknown.  Because

16 the requisite legal foundation under FRE 804(b)(3) has not been made, application of this

17 exception is premature and not warranted at this juncture.[10]

---

[9] Defendants fail to provide any citations to the deposition transcript of Mr. Healy to establish which questions he refused to answer by invoking his Fifth Amendment privilege. See City Defs.' Mot. at 1-4.  The Court is not obligated to consider matters not specifically brought to its attention.  See Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide:  Fed. Civ. Pro. Before Trial ¶ 14.145.2 (TRG 2009).  "As the Seventh Circuit observed in its now familiar maxim, 'judges are not like pigs, hunting for truffles buried in briefs.'" Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).  In any event, based on the citations to Mr. Healy's deposition transcript provided by Plaintiffs, it does not appear that Mr. Healy refused to answer questions regarding what he allegedly said to Mr. Bradley concerning his altercation with the Decedent.  Rather, Mr. Healy stated that he *did not recall* telling anyone, including Mr. Bradley, that he hit the Decedent in the head.  Galipo Decl. Ex. Ex. A at 21:18-22, 23:12-23.

[10] This does not foreclose Defendants from calling Mr. Healy as a witness.  Indeed, Mr. Healy is listed as a witness in the County Defendants' witness list.  County Defs.' List of Witnesses and Exhs. at 2, Dkt. 94.  Should he refuse to testify at trial on Fifth Amendment grounds and the Court enters a ruling accordingly, Defendants may seek to proffer Mr. Healy's statement through Mr. Bradley, pursuant to FRE 804(b)(3).

**b)      FRE 807 – Residual Exception**

Next, Defendants argue that Mr. Healy's hearsay statement is admissible under Rule 807, which is commonly known as the "residual" or "catchall" exception to the hearsay rule.  Rule 807 states:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Fed.R.Evid. 807.  District courts have "wide discretion" with respect to the application of FRE 807, which generally is reserved for "exceptional circumstances."  United States v. Bonds, 608 F.3d 495, 501 (9th Cir. 2010).

In the instant case, Defendants have made no showing that there are exceptional circumstances justifying application of FRE 807.  The mere fact that the hearsay exception under FRE 804(b)(3) is inapposite does not qualify as an exceptional circumstance.  See Bonds, 608 F.3d at 501 (affirming district court's finding that a witness's refusal to testify was not an exceptional circumstance "because the effect was to make him an unavailable declarant, and FRE 804 already defines an 'unavailable' declarant and lists exceptions to inadmissibility that the government does not contend are applicable in this case.").

**3.      Magistrate Judge Laporte's Ruling**

Finally, Defendants contend that "Magistrate Judge Laporte *recommended* that the testimony of Mr. Bradley as to the statements Mr. Healy made to [Mr.] Bradley regarding hitting Mr. Cotton be admitted over hearsay objection."  City Defs.' Mot. at 2 (emphasis added).  Magistrate Judge Laporte made no such recommendation.  Rather, she merely commented that it "may be appropriate" to grant such relief in light of Ms. Sarmiento's

conduct.  7/22/10 Order at 6.  That notwithstanding, the Court notes that Magistrate Judge Laporte was somewhat equivocal with respect to her findings.  In one part of the order, she found that Ms. Sarmiento "interposed improper coaching objections and improper speaking objections during Mr. Healy's deposition…."  <u>Id.</u> at 5.  Yet, the order later notes that "there was no showing that Plaintiffs have any degree of control over Mr. Healy" and that "Mr. Healy's invocation of the Fifth Amendment privilege might well have occurred without any suggestion from Plaintiffs' counsel…."  <u>Id.</u> at 6-7.  In any event, neither the order denying the motion for sanctions nor Defendants cite any legal authority demonstrating that permitting hearsay testimony on a critical issue is an appropriate sanction given the circumstances presented—particularly where, as here, Mr. Healy is available to testify at trial.

### 4.    Conclusion

The Court concludes that Mr. Bradley's testimony as to what Mr. Healy told him about hitting the Decedent is inadmissible hearsay, and the exceptions set forth in FRE 804 and 807, as discussed, are unavailing.  The Court further finds that Magistrate Judge Laporte did not "recommend" allowing the admission of such hearsay as a sanction for Ms. Sarmiento's conduct at Mr. Healy's deposition.  Nor has the Court been presented with any legal authority from Defendants in their motion in limine that such a sanction is permissible in this instance.  Accordingly, the Court GRANTS Plaintiffs' motion in limine no. 3 and DENIES City Defendants' motion in limine no. 1 without prejudice.  Defendants may renew their motion during trial in the event changed circumstances warrant the admission of Mr. Healy's statements through Mr. Bradley.

### D.    MOTION NO. 4:  INFORMATION NOT KNOWN TO DEFENDANTS

On relevance and prejudice grounds, Plaintiffs seek to preclude the following evidence that was not known to the EPD officers at the time of the incident:  (1) the Decedent's alleged violence in the past; (2) Decedent's assault on another person at Rescue Mission on the day of the incident; (3) statements that Decedent had previously been

1   evicted from Rescue Mission; and (4) that Decedent had been fighting at the Rescue

2   Mission prior to the City officers' arrival.  Pls.' Mot. at 7-8.

3        Plaintiffs again argue that only information actually known to the officers at the time

4   of the incident is relevant to evaluating whether the amount of force applied was reasonable

5   under the circumstances.  Id.  However, evidence of the Decedent's combativeness *on the*

6   *day of the incident* is relevant and admissible to corroborate the Defendant officers'

7   contentions regarding their observations of the Decedent's behavior.  See Boyd, 576 F.3d at

8   944 ("In a case such as this, where what the officer perceived just prior to the use of force is

9   in dispute, evidence that may support one version of events over another is relevant and

10  admissible.").  Evidence of the Decedent's past violence and prior evictions, however, is

11  inadmissible character evidence under FRE 404(b).  Therefore, Plaintiffs' motion in limine

12  no. 4 is DENIED with respect to evidence pertaining to the Decedent's conduct at the

13  Rescue Mission on the day of the incident and GRANTED with respect to his alleged past

14  violence and prior evictions from the Rescue Mission.

15       E.    MOTION NO. 5:  STATEMENTS ATTRIBUTED TO DECEDENT

16       Plaintiffs seek to exclude statements attributed to the Decedent during his encounter

17  with Defendants, including the statement, "I did not rape my daughter," on the grounds that

18  such statements are not relevant, constitute inadmissible hearsay and are otherwise unduly

19  prejudicial.  Pls.' Mot. at 10-11.  Decedent allegedly made the "rape" comment to the

20  officers when they arrived and confronted him at the Rescue Mission.  Id.  Defendants

21  contend that the Decedent's comment is relevant in order to corroborate the officers'

22  observations that he was "on drugs and was being combative."  Defs.' Opp'n at 11.

23  However, there is no showing that the Decedent's utterance was the result of drug-induced

24  behavior or in relation to any combative behavior.  Moreover, the introduction of such

25  remark at trial would be highly inflammatory, since it could mislead and/or confuse the jury

26

27

28

regarding whether the Decedent was somehow implicated or suspected in a sexual assault of his daughter.  Fed.R.Evid. 403.  Plaintiffs' motion in limine no. 5 is GRANTED.[11]

### F.     MOTION NO. 6:  DECEDENT'S HOMELESSNESS

Plaintiffs move to exclude any evidence of the Decedent's homelessness as irrelevant and unduly prejudicial.  Pls.' Mot. at 12-13.  Defendants argue that the Decedent's homelessness is necessary "as a foundational fact to help the jury understand why the Decedent was at the Rescue Mission fighting with others staying there."  City Defs.' Opp'n at 11.  Specifically, Defendants point out that Mr. Cotton, Sr., told the County Coroner that he had asked the Decedent to leave his home after the Decedent pulled a knife on him.  Id.  Defendants suggest that "it would invite confusion if the jury were left to speculate whether the decedent resided with his father, when, in fact, he did not and he did not for reasons consistent with what the defendant officers observed on the night of the encounter."  Id.  The Court concurs that to provide context for the claims at issue, Defendant should be allowed to inform the jury that the Decedent was present at the Rescue Mission because he was homeless.  See Lyons v. England, 307 F.3d 1092, 1111 (9th Cir. 2002) (holding that time-barred acts of employment discrimination which were not actionable were nonetheless "*relevant as background* and may be considered by the trier of fact in assessing the defendant's liability….") (emphasis added).[12]

In addition, evidence of the Decedent's homelessness is relevant and admissible to the issue of damages.  Recoverable damages in a claim for wrongful death consist of economic and non-economic damages.  CACI 3921.  Economic damages include "[t]he financial support, if any, that [name of decedent] would have contributed to the family during either the life expectancy that [name of decedent] had before [his/her] death or the life expectancy of [name of plaintiff], whichever is shorter;…"  Quiroz v. Seventh Ave.

---

[11] Since no other specific statements have been submitted for the Court's consideration, the instant ruling is limited to the "rape" statement.

[12] Evidence concerning the reasons for his homelessness, i.e., that he pulled a knife on his father and was asked to leave, is inflammatory and is excluded under FRE 403.

<table><tr><td>1</td></tr><tr><td>2</td></tr><tr><td>3</td></tr><tr><td>4</td></tr><tr><td>5</td></tr></table>

_Center_, 140 Cal.App.4th 1256, 1264 n.2 (2006) (quoting CACI 3921).  The jury's determination of a decedent's life expectancy takes into consideration "the deceased's health, lifestyle and occupation."  _Allen_, 109 Cal.App.3d at 424.  Defendants contend—and Plaintiffs do not dispute—that the Decedent's homelessness may have some bearing on his life expectancy, and by extension, the issue of damages.

In sum, Plaintiffs' motion in limine no. 1 is DENIED.  Defendants may present evidence of the Decedent's homelessness to explain the reason he was at the Rescue Mission on August 9, 2007, and in connection with the issue of damages.  Defendants may not present evidence regarding the reason he was homeless.

### MOTION NO. 7:  SELF-INFLICTED INJURY

Plaintiffs seek to preclude Defendants from presenting evidence that the Decedent's head injuries occurred when he "banged his head against his cell wall."  Pls.' Mot. at 15.  In particular, Plaintiffs contend that there is no evidence that the Decedent's death was _caused_ by "head banging," and therefore, no mention or evidence of such conduct should be permitted.  Id.  The Court disagrees.  Although Defendants do not dispute the conclusion that Decedent's death was not self-inflicted, there is evidence from Plaintiffs' pathologist that the Decedent engaged in "head banging" in his cell.  City Defs.' Opp'n at 14.  Such behavior tends to corroborate Defendants' contention that the Decedent was acting erratically and abnormally and was combative at the time of his arrest and thereafter.  Plaintiff's motion in limine no. 7 is DENIED.

## III.   CITY DEFENDANTS' MOTIONS IN LIMINE

### A.   MOTION NO. 1:  TESTIMONY OF KEVIN HEALY

For the reasons set forth supra, Defendants' motion in limine no. 1 to admit the testimony of Mr. Bradley with respect to statements made to him by Mr. Healy is DENIED without prejudice.

### B.   MOTION NO. 2:  EVIDENCE OF INSURANCE/INDEMNIFICATION

The parties are in agreement that no reference shall be made to insurance or indemnification.  Accordingly, Defendants' motion in limine no. 2 is DENIED as moot.

**C.**   **MOTION NO. 3:  SETTLEMENT OFFERS**

The parties are in agreement that no reference shall be made to settlement or settlement negotiations.  Accordingly, Defendants' motion in limine no. 3 is DENIED as moot.

**D.**   **MOTION NO. 4:  OTHER POLICE BRUTALITY CASES**

The parties are in agreement that no reference shall be made to other well publicized cases involving police misconduct.  Accordingly, Defendants' motion in limine no. 4 is DENIED as moot.

**E.**   **MOTION NO. 5:  STATEMENTS OF "POLITICAL EFFECT"**

The parties are in agreement that neither side will urge the jury to reach a decision for "political effect." Accordingly, Defendants' motion in limine no. 5 is DENIED as moot.

**F.**   **MOTION NO. 6:  OPINION OF HARRY J. BONNELL, M.D.**

Defendants move to preclude Plaintiffs' expert, Harry J. Bonnell, M.D., from offering expert testimony that the Decedent died as a result of injuries inflicted by Defendants.  FRE 702, which governs the admissibility of expert testimony, allows for the admission of "scientific, technical, or other specialized knowledge" when "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702.  The trial court acts as a "gatekeeper" to the admission of expert scientific testimony.  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 579-80 (1993).  In performing such duty, "[a] district court may rely on various factors in evaluating such evidence, including (1) whether the theory can be or has been tested; (2) whether the theory has been subjected to peer review; (3) whether the error rate is known and standards exist to control the operation of the technique; and (4) whether the theory has gained general acceptance." United States v. McCaleb, 552 F.3d 1053, 1060 (9th Cir. 2009) (discussing Daubert).  The court has "broad discretion" in determining the admissibility of expert testimony and is not required to "mechanically apply the Daubert factors[.]" Id. (internal quotations and citation omitted).

1    Defendants do not challenge Dr. Bonnell's qualifications nor do they present any

2    argument with respect to any of the <u>Daubert</u> factors.  Instead, Defendants contend that Dr.

3    Bonnell's opinions are "unsupported" because he allegedly did not take into account that

4    the Decedent was involved in a physical altercation with Mr. Healy prior to the police

5    officers' arrival.  City Defs.' Mot. at 6.  The matter of whether the assumptions underlying

6    Dr. Bonnell's opinions are accurate is germane to the weight, as opposed to the

7    admissibility, of his opinions.  At trial, Defendants will have ample opportunity to

8    challenge the credibility of Dr. Bonnell's opinions through cross-examination.  <u>See</u>

9    <u>Hangarter v. Provident Life and Acc. Ins. Co.</u>, 373 F.3d 998, 1017 n.14 (9th Cir. 2004)

10   ("The factual basis of an expert opinion goes to the credibility of the testimony, not the

11   admissibility, and it is up to the opposing party to examine the factual basis for the opinion

12   in cross-examination.") (brackets, internal quotations and citation omitted); <u>Bergen v. F/V</u>

13   <u>St. Patrick</u>, 816 F.2d 1345, 1352 n.5 (9th Cir. 1987) ("the weakness in the underpinnings of

14   [expert] opinions may be developed upon cross-examination," as "such weakness goes to

15   the weight and credibility of the testimony" as opposed to its admissibility) (internal

16   quotations and citation omitted).  Defendants' motion in limine no. 6 to exclude the expert

17   testimony of Dr. Bonnell is thus DENIED.

18       **G.     MOTION NO. 7:  REFERENCE TO "MURDER"**

19   The parties have agreed that no witness shall testify that the Decedent was

20   "murdered" by Defendants.  City Defs.' Mot. at 7.  Given such agreement, Defendants'

21   motion in limine no. 7 is DENIED as moot.

22       **H.     MOTION NO. 8:  INFLAMMATORY STATEMENTS**

23   Defendants seek to preclude Plaintiffs' expert, Roger Clark, from "inflammatory"

24   characterizations of the EPD officers' conduct, including terms such as "pummeled,"

25   beating the dickens out of," and "beat into submission."  City Defs.' Mot. at 7.  The Court

26   finds that such characterizations are inflammatory within the meaning of FRE 403.

27   Therefore, Defendants' motion in limine no. 8 is GRANTED.  Both parties are instructed to

28

1   ensure that their respective experts articulate their opinions in a thoughtful and professional

2   manner, and to avoid eliciting unnecessarily sensationalized testimony.

3       **I.      MOTION NO. 9:  EXPERT TESTIMONY OF ROGER CLARK**

4       Defendants seek to preclude Plaintiffs' expert on police procedures, Roger Clark,

5   from offering opinions "regarding current (2007) police practices on the ground that these

6   opinions are unreliable, as Mr. Clark purportedly lacks adequate training and experience to

7   opine regarding current police practices."  City Defs.' Mot. at 8. Where non-scientific

8   expert testimony is at issue, the reliability of the expert's opinion focuses on his or her

9   knowledge and experience.  Hangarter, 373 F.3d at 1017.

10      The crux of Defendants' motion to exclude the testimony of Mr. Clark is that he is

11  not qualified to opine on the use of force for an incident occurring in 2007 because he has

12  not received any training on the use of force since his retirement in 1993.  The record,

13  however, shows that Mr. Clark has sufficient experience to render opinions on the use of

14  force.  Mr. Clark was employed with the Los Angeles County Sheriff's Department for

15  twenty-seven years from 1965 through 1993.  Galipo Decl. Ex. C at 16, Dkt. 132.  Since his

16  retirement, Mr. Clark has served as an expert witness on matters pertaining to "police

17  administration, police procedures, police tactics, police investigative procedures, police

18  investigative procedures and jail administration ….."  Id. at 19.  He has testified as an

19  expert in state and federal courts about the duties and responsibilities of police officers.  Id.

20  at 19.  His opinions are based on his years of experience, which has included investigating

21  and reporting on the use of force by law enforcement officers.  Id. at 17.  As with Dr.

22  Bonnell, Defendants will have a full opportunity at trial to challenge the credibility of Mr.

23  Clark's opinions through cross-examination.  Defendants' motion in limine no. 9 is

24  DENIED.

25      **J.      MOTION NO. 10:  PRIOR COMPLAINTS OF EXCESSIVE FORCE**

26      Defendants seek to exclude evidence relating to prior complaints, use of force and

27  disciplinary actions involving any of the individual Defendants.  City Defs.' Mot. at 11.

28

1    Plaintiffs respond that they do not oppose this motion.  There being no controversy,

2    Defendants' motion in limine no. 10 is DENIED as moot.

3          **K.      MOTION NO. 11:  EMOTIONAL DISTRESS TESTIMONY**

4          Defendants seek to preclude Plaintiffs from offering any evidence or making any

5    argument that they suffered emotional distress on the ground that damages for emotional

6    distress are not recoverable in a wrongful death action.  City Defs.' Mot. at 11.  California

7    law does not provide for emotional damages in wrongful death actions.  See Krouse, 19

8    Cal.3d at 72 ("California cases have uniformly held that damages for mental and emotional

9    distress, including grief and sorrow, are not recoverable in a wrongful death action").  Thus,

10   to the extent that Plaintiffs are seeking emotional distress damages based on their sixth

11   cause of action for wrongful death, they are precluded from doing so.

12         In their opposition, Plaintiffs contend that they should be allowed to proffer

13   evidence to support recovery of emotional distress damages based on their eighth cause of

14   action, which is based on a violation of the Fourteenth Amendment.  The Fourteenth

15   Amendment right to due process protects familial relationships from unwarranted state

16   interference.  See Smith, 818 F.2d at 1418.  Where state action resulting in the unlawful

17   death of a family member is alleged, surviving family members may bring a claim under

18   § 1983 for violation of their due process rights in the companionship and society of the

19   decedent.  Id. at 1419 (holding that children of father slain by police officers could sue

20   under the Fourteenth Amendment for violation of substantive due process); Moreland, 159

21   F.3d at 371 ("The [Fourteenth Amendment] substantive due process claim may be asserted

22   by both the parents and children of a person killed by law enforcement officers.").  Where

23   an injury such as mental and emotional distress is caused by a constitutional violation, that

24   injury is compensable under § 1983.  Carey v. Piphus, 435 U.S. 247, 264 (1978); accord

25   Alexander v. City of Menlo Park, 787 F.2d 1371, 1376 (9th Cir. 1986) ("Harm due to

26   mental and emotional distress is clearly compensable under 42 U.S.C. § 1983") (internal

27   quotations and citations omitted).  Thus, the Court agrees that Plaintiff should be allowed to

28   testify regarding the emotional distress which they suffered as a result of Defendants'

1   violation of their right to substantive due process.  Defendants' motion in limine no. 11 is

2   DENIED.[13]

3       **L.      MOTION NO. 12:  NON-PARTY WITNESSES**

4       The parties are in agreement that non-party witnesses should be excluded from the

5   courtroom.  Accordingly, Defendants' motion in limine no. 12 is DENIED as moot.

6       **M.      MOTION NO. 13:  POST-INCIDENT POLICY CHANGES**

7       Defendants move to exclude evidence that, after the underlying incident, the City's

8   Police Chief instituted a new policy that where force was applied to overcome a combative

9   arrestee, the arrestee must receive a medical clearance at a hospital.  City Defs.' Mot. at 12-

10  13.  According to Defendants, this policy is "in excess of any constitutional or other

11  federally imposed requirements," and therefore, is not relevant to any issue in this case.  Id.

12      Under FRE 407, evidence of subsequent remedial measures generally is not

13  admissible.   This rule provides:

14          When, after an injury or harm allegedly caused by an event,
            measures are taken that, if taken previously, would have made
15          the injury or harm less likely to occur, evidence of the
            subsequent measures is *not admissible to prove negligence,*
16          *culpable conduct*, a defect in a product, a defect in a product's
            design, or a need for a warning or instruction. This rule does not
17          require the exclusion of evidence of subsequent measures when
            offered for another purpose, such as proving ownership, control,
18          or feasibility of precautionary measures, if controverted, or
            impeachment.

19

20  (Emphasis added).  As stated by the Advisory Committee, this rule is largely grounded in

21  "a social policy of encouraging people to take, or at least not discouraging them from

22

23  _____

24      [13] In their reply, Defendants argue for the first time that emotional distress damages
    are not recoverable in a survival action.  City Reply at 5.  Since Defendants failed to
    present this argument in their moving papers, this issue is not properly before the Court.
25  See In re Rains, 428 F.3d 893, 902 (9th Cir. 2005) (court need not consider argument raised
    for the first time in a reply brief).  But even if it were, the Court notes that there is ample,
26  persuasive authority to support the conclusion that emotional distress damages are
    recoverable in a survival action.  See T.D.W. v. Riverside County, No. 08-232 CAS, 2009
27  WL 2252072, at *6 (C.D. Cal. July 27, 2009); Garcia v. Whitehead, 961 F. Supp. 230, 233
    (C.D. Cal. 1997); Williams v. County of Oakland, 915 F.Supp. 1074, 1076-77 (N.D. Cal.
28  1996); Guyton v. Phillips, 532 F. Supp. 1154, 1167 (N.D. Cal. 1981).

1  taking, steps in furtherance of added safety."  Fed.R.Evid. 407, Advisory Committee Notes
2  (1972).

3       Plaintiffs argue that the City's change of policy is "relevant and admissible to prove
4  the inadequacy of the prevailing party at the time of the incident – which is not only
5  relevant to liability but also to Plaintiff's <u>Monell</u> claims."  Pls.' Opp'n at 9.  In advancing
6  this argument, it is plain that Plaintiffs are seeking to utilize evidence of the Police Chief's
7  policy change for the very purpose proscribed by FRE 407, i.e., to establish Defendants'
8  liability.  <u>See</u> <u>Maddox v. Los Angeles</u>, 792 F.2d 1408, 1417 (9th Cir. 1986).  Because
9  Plaintiffs seek to utilize evidence of the City's policy change for an impermissible purpose,
10  Defendants' motion no. 13 is GRANTED.

11       **N.**    **MOTION NOS. 14:  TRAINING DEFICIENCIES**

12       Defendants seek to exclude any evidence or testimony regarding the purported
13  inadequacies in the City's training program.  City Defs.' Mot. at 13-14.  Defendants point
14  to Mr. Smith's deposition testimony where he stated that he was unaware of any
15  deficiencies in the training of the City's officers in relation to the use of force.  Stunich
16  Decl. Ex. H at 14:3-6, Dkt. 118-8.  However, the City overlooks that Smith also opined in
17  his expert report that the City police offers appear not to have been trained adequately on
18  POST standards, which require officer intervention "when excessive force occurs in their
19  presence."  Galipo Decl. Ex. C ¶ 9; <u>see also</u> <u>id.</u> ¶¶ 9, 11-14.  Thus, despite Defendants'
20  suggestions to the contrary, there is evidence in the record which supports Plaintiffs'
21  allegation that the City failed to adequately train its officers.  Any apparent inconsistencies
22  in Mr. Smith's opinions may be explored by Defendants on cross-examination.
23  Defendant's motion in limine no. 14 is DENIED.

24       **O.**    **MOTION NO. 15:  DEFICIENCY IN WRITTEN POLICIES**

25       Similar to the above motion, Defendants contend that evidence or testimony
26  regarding any inadequacies in the City's written policies should be excluded on the ground
27  that Plaintiffs have no evidence to support such a claim.  City Defs.' Mot. at 14.  During his
28  deposition, Mr. Smith testified as follows:

Q.      Did you find any problem with the use of force policies of the City of Eureka?

A.      *No. It's in compliance with POST.*

Q.      So if I understand correctly, the use of force policy is fine, the training is fine, but there were essentially rogue actions in your opinion by Winkle, Laird and Whitmer; is that correct?

A.      Well, I don't know if it's – if it's cultural, the department allows it despite what we know the officers are trained in that's not resolved, but certainly I think that Winkle, Laird and Whitmer departed from what they knew they should be doing in significant ways.

Stunich Decl. Ex. H at 48:23-49:9 (emphasis added). In their opposition, Plaintiffs fail to cite any evidence to support their allegation that the City's written policies are deficient. Given the lack of such evidence, Defendants' motion in limine no. 16 is GRANTED.

### P.      MOTION NO. 16: MR. HALL'S DRUG USE

The parties are in agreement that witnesses will be precluded from testifying regarding hearsay statements about the use of drugs and other illegal conduct by Mr. Hall, the manager of the Rescue Mission. Accordingly, Defendants' motion in limine no. 16 is DENIED as moot.

### Q.      MOTION NO. 17: JOINDER IN THE COUNTY'S MOTIONS IN LIMINE

The City Defendants join in all of the motions in limine filed by the County Defendants. Therefore, the Court's rulings on those motions apply equally to the City Defendants.

## IV.    COUNTY DEFENDANTS' MOTIONS IN LIMINE

### A.      MOTION NO. 1: EXPERT TESTIMONY OF ROGER CLARK

#### 1.      Speculative Testimony

Defendants seek to preclude Plaintiffs' expert, Roger Clark, from offering opinions relating to the HCCF officers' actions with respect to the Decedent. County Defs.' Mot. at 3. In particular, Defendants contend that Mr. Clark's opinions are improperly "predicated upon [his] speculation that on-duty jail personnel knew or should have known Mr. Cotton was injured." Id. They assert "[t]here is no evidence in the record to support such a conclusion and Mr. Clark's speculation and assumption on the points is impermissible." Id.

1     The record does not support Defendants' position.  During Mr. Clark's deposition,

2   Defendants asked him why the HCCF correctional officers should have known that the

3   Decedent was in need of medical treatment or monitoring.  In response, Mr. Clark

4   expressly testified that the autopsy photographs show "horrific bruising on his body" and

5   that his injuries were "obvious."  Stunich Decl. Ex. H at 75:19-23.  He also opined that

6   California regulations required the Decedent to have been medically screened before being

7   placed into the sobering cell, and had that been performed, they would have confirmed his

8   need for medical attention.  Id. at 78:7-22, 97:7-13.[14]  Moreover, Mr. Clark pointed out

9   that it was clear from the surveillance videos that the Decedent had difficulty walking.  Id.

10   at 77:13-17.  Thus, despite Defendants' assertions to the contrary, the record shows that Mr.

11   Clark provided a factual basis for his opinions that HCCF should have known of the

12   Decedent's need for immediate medical attention.

13     Defendants attempt to make much HCCF correctional officers' statements that they

14   were unaware that the Decedent was in need of medical care.  However, it is the province

15   of the jury to decide on the evidence presented whether the Decedent's injuries were so

16   obvious that the correctional officers must have been subjectively aware of them.  See

17   Conn, 591 F.3d at 1097 (finding that "there is sufficient circumstantial evidence to create a

18   genuine issue of fact regarding defendants' subjective awareness of [the decedent's] serious

19   medical need" based, inter alia, on "evidence from which the jury could conclude that [the

20   decedent's] medical need was so obvious that [defendants] must have been subjectively

21   aware of it, despite their later denial of that awareness.").  Based on the record presented,

22   the Court finds no basis to exclude Mr. Clark's testimony on the ground that his opinions

23   are speculative, and therefore, DENIES Defendants' motion in limine in this ground.

24

25

26

27
          [14] According to Mr. Clark, at least some of the HCCF correctional officers involved
    in his booking were aware that the Decedent had just been released from the mental health
    unit of HCCF only a few hours before his arrest, and yet, failed to conduct a mental health
28   assessment upon his return to HCCF.  Stunich Decl. Ex. A at 6 (opinion no. 13).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 2.    Opinions Comparing Actions to Policies and Laws

Defendants seek to preclude Mr. Clark from offering opinions that constitute legal conclusions.  County Defs.' Mot. at 8.  Without citation to any legal authority, Defendants claim that:  "Mr. Clark's opinions are replete with multiple references to alleged policy and law violations.  The defendants' written policies can be admitted into evidence and the correctional officer's factual actions compared thereto by lay persons.  It is hardly necessary to have an alleged expert make partisan arguments on such matters."  Id.  The Court is not persuaded by these contentions.

"[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law."  United States v. Moran, 493 F.3d 1002, 1008 (9th Cir. 2007) (internal quotations and citation omitted).  However, an expert may offer a legal opinion about an issue that is ancillary to the ultimate issue in the case.  See Hangarter, 373 F.3d at 1016.  For example, in Hangarter, the plaintiff in an insurance bad faith case proffered expert testimony that defendants failed to comport with industry standards.  The Ninth Circuit rejected the defendants' contention that such testimony amounted to improper legal opinions.  The court explained:

> Defendants contend that Caliri's [i.e., the expert] testimony that Defendants failed to comport with industry standards inappropriately reached legal conclusions on the issue of bad faith and improperly instructed the jury on the applicable law.  This argument is unavailing.  Caliri's testimony did not improperly embrace the issue of bad faith under Fed.R.Evid. 704(a).  *While Caliri's testimony that Defendants deviated from industry standards supported a finding that they acted in bad faith, Caliri never testified that he had reached a legal conclusion that Defendants actually acted in bad faith (i.e., an ultimate issue of law).*  [Citations].
>
> Moreover, Caliri's testimony did not improperly usurp the court's role by instructing the jury as to the applicable law.  Although Caliri's testimony that Defendants departed from insurance industry norms relied in part on his understanding of the requirements of state law, specifically California's Unfair Settlement Claims Practice § 2695, "*a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible*.  Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms."  [Citation].  Caliri's references to California

statutory provisions—none of which were directly at issue in the case—were ancillary to the ultimate issue of bad faith.

Id. (emphasis added).

Defendants are correct that the jury will be in a position to consider, based on the evidence presented, whether the EPD officers and HCCF personnel followed applicable procedures and legal requirements.  That, however, does not foreclose Mr. Clark from offering opinions that Defendants deviated from such requirements.  While Mr. Clark may not opine that Defendants violated the Decedent's constitutional rights, he is permitted to offer opinions that may ultimately support such a finding.  See Hangarter, 373 F.3d at 1016.[15]

Lastly, Defendants object to Mr. Clark's anticipated testimony that their failure to conduct a mental health assessment amounts to a violation of "policy and law."  County Defs.' Mot. at 9.  They assert that the alleged failure to conduct such an assessment shows nothing more than negligence, and therefore, "lacks relevance" to a § 1983 claim.  Id.  This argument ignores that Plaintiffs' deliberate indifference claim is not based solely on the failure to conduct a mental health assessment.  As discussed, Plaintiffs also allege that after booking the Decedent, HCCF immediately placed him in a sobering cell without tending to his serious and allegedly obvious injuries.  Taken together, such evidence is relevant to and may properly be considered by the jury in assessing whether Defendants were deliberately indifferent to the Decedent's medical needs—or, merely negligent, as Defendants claim.  In either event, Plaintiffs are entitled to proffer Mr. Clark's expert testimony on this issue.  Defendants' motion in limine to preclude Mr. Clark from offering opinions regarding Defendants failure to comply with policies, POST standards and the law is DENIED.

### 3.    Opinions Regarding Use of Taser

Plaintiffs contend that during his review of the video surveillance tape made while the Decedent was placed in a sobering cell, Mr. Clark recently discovered that an

---

[15] Indeed, Defendants themselves insist that violations of internal policies and regulations "do not establish a violation of constitutional rights…."  County Defs.' Mot. at 9.  Thus, Defendants tacitly concede that Mr. Clark is not offering an opinion on "an ultimate issue of law."  Moran, 493 F.3d at 1008.

1   unidentified person shot the Decedent in the neck with a taser.  Stunich Decl. Ex. A at 3,

2   Dkt. 118-1.  In his report, Mr. Clark notes that there is no mention of the use of a taser in

3   Defendants' records, and opines that the failure to document such use "is a violation of

4   policy and law" and "was excessive and unreasonable."  Id.  Defendants contend that Mr.

5   Clark's opinion regarding the deployment of the taser should be excluded for lack of

6   relevance and as being unduly prejudicial under FRE 403.  They argue that there is no

7   evidence or record of a taser having actually been used on the Decedent and that, in any

8   event, whoever deployed the taser is not named in the FAC or otherwise identified by

9   Plaintiffs.  County Defs.' Mot. at 10.[16]

10      The Court is not persuaded by Defendants' arguments for excluding Mr. Clark's

11   opinion testimony regarding the taser.  While it is true that none of the individual County

12   Defendants is alleged to have discharged the taser, Plaintiffs are not asserting an excessive

13   force claim against the County nor are they seeking to impose liability against them

14   specifically for use of a taser.  Rather, Plaintiffs allege that the County Defendants were

15   deliberately indifferent to the Decedent's medical needs.  See FAC ¶¶ 47-60.  Evidence that

16   a HCCF staff member shot the Decedent with a taser *during a time period during which he*

17   *is alleged to have been in medical distress and in need of medical attention* is probative of

18   whether County Defendants acted with deliberate indifference.  See Conn, 572 F.3d at 1055

19   (noting that deliberate indifference requires a showing of "a purposeful act or failure to

20   respond to" the prisoner's potential medical needs).  In that regard, Mr. Clark's opinion that

21   "[t]he deployment of the Taser under the circumstances was excessive and unreasonable" is

22   relevant and admissible in the context of Plaintiffs' claims for deliberate indifference

23   against the County Defendants.  Accordingly, Defendants' motion in limine to preclude Mr.

24   Clark from offering opinions related to the use of the taser is DENIED.

25

26      [16] There is no allegation in the FAC regarding the use of a taser on the Decedent, nor
    is any of the individual City or County Defendants alleged to have discharged a taser.  To
27   the extent that the use of a taser is elicited at trial, Defendants may submit a limiting
    instruction to clarify that Plaintiffs are not alleging an excessive force claim against them
28   based on the use of a taser.

1

### 4.       Opinions Regarding Pattern and Practice

2       In his expert report, Mr. Clark opined as follows:

3            There is no evidence in the record thus far that there has been
             any retraining or adequate discipline of the police officers or
4            custody personnel involved.  The response of the EPD and
             Humboldt County Sheriff's Department to this incident is
5            indicative of their collective ratification of what occurred and it
             is wrong.  As such, it demonstrates *systemic and organizational*
6            *cultural patterns and practices to allow excessive and*
             *unnecessary force by the rank and file of both departments*.
7            The responsibility for this condition rests with the chain of
             commands of both departments.

8

9    Stunich Decl. Ex. A at 7 (emphasis added).

10          Defendants argue that Mr. Clark should be precluded from offering any opinion

11   regarding their alleged "systemic organizational and cultural patterns and practices" that

12   allow the use of excessive force based on his admission that he lacks any evidence to

13   support his assertions.  County Defs.' Mot. at 10-11.  During his deposition, Mr. Clark was

14   questioned regarding the basis of the above-quoted opinion.  Stunich Decl. Ex. H at 92:1-

15   25.  In response, Mr. Clark conceded that he had no "historical evidence" to support his

16   contention that the County has a culture of allowing excessive force.  Id. at 92:9-15.

17   Instead, he based his opinion on the lack of training or discipline imposed as a result of the

18   incident.  Id. at 92:17-20.  Mr. Clark concluded that:  They've basically ratified it because

19   they've done nothing about it."  Id. at 92:22-23.

20          A municipality may be held liable for a constitutional violation under the theory of

21   ratification if an authorized policymaker approves a subordinate's decision and the basis for

22   it.  See Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004); see Gillete, 979 F.2d at 1349

23   (noting that a custom may be inferred from "evidence of *repeated* constitutional violations

24   for which the errant municipal officers were not discharged or reprimanded.") (emphasis

25   added).  "A mere failure to overrule a subordinate's actions, without more, is insufficient to

26   support a § 1983 claim."  Lytle, 382 F.3d at 987.  The policymaker must have knowledge

27   of the constitutional violation and must make a "conscious, affirmative choice" to ratify the

28

1  conduct at issue.  Id.; Haugen, 351 F.3d at 393 (single instance of failure to discipline did

2  not rise to the level of ratification for purposes of imposing Monell liability).

3       Here, Mr. Clark's opinion is based solely on a single instance of a failure to

4  discipline or retrain the officers involved.  Without more, Mr. Clark's opinion regarding the

5  Defendants' "patterns and practices" lacks foundation.  See Brooke Group, v. Brown &

6  Williamson Tobacco Corp., 509 U.S. 209, 242 (1993) ("When an expert opinion is not

7  supported by sufficient facts to validate it in the eyes of the law, or when indisputable

8  record facts contradict or otherwise render the opinion unreasonable, it cannot support a

9  jury's verdict.").  The Court therefore GRANTS Defendants' motion in limine with respect

10  to this aspect of Mr. Clark's opinion.

11       **B.   MOTION NOS. 2: AUTOPSY PHOTOGRAPHS**

12       Pursuant to FRE 403, Defendants move to exclude photographs taken from the

13  Decedent's autopsy.  County Defs.' Mot. at 11.  As support for their motion, Defendants

14  rely exclusively on Campbell v. Keystone Aerial Surveys, Inc., 138 F.3d 996 (5th Cir.

15  1998), where the Fifth Circuit upheld the exclusion of photographs depicting the burned

16  and decapitated body of the decedent, who died as a result of an airplane crash.  Id. at 1004-

17  1005.  In reaching its decision, the court agreed with the trial court that the introduction of

18  such photographs "created some risk that the jury's decision would be based on a visceral

19  response to the images presented."  Id. at 1004.

20       Campbell is distinguishable.  In that case, the cause of the decedent's death—the

21  airline accident—was not in dispute.  In contrast, the cause of the Decedent's injuries, his

22  medical condition and the conspicuousness of his physical injury are directly at issue.  The

23  autopsy photographs allegedly show that the Decedent's had bruising throughout his body.

24  Consequently, photographs of his injuries are potentially probative of the manner of death

25  and the extent of the Decedent's injuries.  See Kealohapauole v. Shimoda, 800 F.2d 1463,

26  1466 (9th Cir. 1986) (finding that videotape of an autopsy performed on murder victim was

27  probative on issue of cause of victim's death).  Defendants' motion in limine no. 2 is

28  DENIED.

**C.   MOTION NOS. 2:  PHOTOGRAPHS OF THE DECEDENT**

Defendants move to exclude twenty-three photographs of the Decedent (while he was alive) which they claim are "intended to do nothing more than simply curry sympathy from the jury."  County Defs.' Mot. at 11.  Defendants cite no factual and/or legal authority to support their contention that photographs of the Decedent in this § 1983 wrongful death case may or should be excluded under Rule 403.  Indeed, "[f]ederal and state courts routinely admit photographs of the decedent in wrongful death suits," as they "are probative of the love and affection shared among the Deceased and other members of the [decedent's] family."  Brossette v. Swift Transp. Co., Inc., No. 07-0888, 2008 WL 4809651, at *3 (W.D. La. Oct. 30, 2008).  Defendants' motion in limine no. 3 is DENIED.

**D.   MOTION NO. 4:  TESTIMONY OF KAREN LOVIE**

Defendants move to exclude the testimony of Karen Lovie.  County Defs.' Mot. at 12.  Ms. Lovie, a compliance officer with the HCCF, conducted an investigation into the Decedent's death and concluded that the HCCF personnel involved failed to comply with HCCF written policies by failing to conduct a medical assessment and evaluation before placing him in his cell.  Specifically, Defendants argue that the failure to comply with such policies is not relevant because it shows nothing more than negligence.  County Defs.' Mot. at 12.  The Court disagrees.  While the failure to comply with internal procedures may not, standing alone, establish that Defendants were deliberately indifferent, such evidence is pertinent, in combination with the other evidence in this case, to the overall reasonableness and/or deliberateness of the conduct at issue.  See Smith v. City of Hemet, 394 F.3d 689, 703 (9th Cir. 2005) (testimony regarding officers' violation of "applicable police standards" relevant to the reasonableness of a particular application of force).  Defendants' motion in limine no. 4 is DENIED.

**E.   MOTION NO. 5:  TESTIMONY OF MARTIN COTTON, SR.**

Defendants contend that the proposed testimony of the Decedent's father, Mr. Cotton, Sr., regarding his relationship with the Decedent and on the damages issue is irrelevant, ostensibly because he lacks standing to bring a wrongful death or survival claim.

County Defs.' Mot. at 13.  The Court partially agrees with Defendants' standing argument. Standing to bring a survival action must exist under the laws of the forum state.  See Moreland, 159 F.3d at 369 ("In § 1983 actions, … the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action.").  Under California law, a survival claim "may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest."  Cal.Code Civ.Proc. § 377.30.  The term "'decedent's successor in interest' means the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of property that is the subject of a cause of action."  Id. § 377.11.

When a person dies intestate, as the Decedent did here, "beneficiary of the decedent's estate" means "the sole person or all of the persons who succeed to a cause of action, or to a particular item of property that is the subject of a cause of action, under Sections 6401 and 6402 of the Probate Code …."  Id. § 377.10.  These sections of the California Probate Code, which set forth the state's rules for intestate succession, provide, in substance, that separate property is devised first to the surviving spouse or domestic partner, or among the spouse and specified family members; *the share not going to a surviving spouse passes first to surviving issue*; but if no surviving issue, then to the decedent's parent or parents equally.  Cal. Prob. Code §§ 6401, 6402.  Here, the Decedent has a surviving issue, i.e., Siehna.  See Dkt. 32.  Because the Decedent died intestate, only Siehna is the beneficiary of the Decedent's estate—and hence, the only person with standing to bring a survival claim.

Mr. Cotton, Sr., also lacks standing to bring a wrongful death claim.  Standing to bring such a claim is governed by California Code of Civil Procedure § 377.60, which establishes a wrongful death cause of action and delineates who may avail themselves of the action.  See Ruiz v. Podolsky, 50 Cal.4th 838, 858 (2010) ("Plaintiffs' wrongful death claim is independent, vindicating their own injuries, which arise from the effect that their father's death had on them personally.").  In relevant part, § 377.60 states:

1
2
3

> A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf:

4
5

> (a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession.

6
7
8

> (b) Whether or not qualified under subdivision (a), *if they were dependent on the decedent*, the putative spouse, children of the putative spouse, stepchildren, or *parents*….

9   (Emphasis added); see Chavez v. Carpenter, 91 Cal.App.4th 1433, 1445 (2001) ("parents

10  may sue for the wrongful death of their child 'if they were dependent on the decedent.'")

11  (quoting Cal.Code.Civ.P. § 377.60).  Here, Plaintiffs do not allege or make any showing

12  that Mr. Cotton, Sr., was dependent on the Decedent. The Court thus finds that Mr. Cotton,

13  Sr., lacks standing to bring a wrongful death claim.

14       The above notwithstanding, Defendants completely ignore that Mr. Cotton, Sr., has

15  standing to assert a violation of his Fourteenth Amendment right to familial association.

16  See Moreland, 159 F.3d at 371 (recognizing that a Fourteenth Amendment claim "may be

17  asserted by *both the parents and children* of a person killed by law enforcement officers.")

18  (emphasis added).  In their reply, Defendants insist that Moreland, in fact, supports their

19  position and highlights the Ninth Circuit's conclusion that the appellants, i.e., the

20  decedent's mother and minor children, lacked standing under Nevada's survival statutes to

21  allege an excessive force claim under the Fourth Amendment.  159 F.3d at 369-70.  What

22  Defendants ignore, however, is that in the next section of their opinion, the Ninth Circuit

23  held that "[r]egardless of whether Appellants have standing to assert a Fourth Amendment

24  claim based on [the decedent's] death, they *each* may assert a Fourteenth Amendment

25  claim based on the related deprivation of their liberty interest arising out of their

26  relationship with [the decedent]." Id. at 371 (emphasis added).  Like the appellants in

27  Moreland, Mr. Cotton, Sr., is bringing a Fourteenth Amendment claim based on his

28  relationship to the Decedent.  Mr. Cotton, Sr., thus has a right to present evidence to

1  support this claim, including evidence of the emotional distress he suffered as a result of the

2  death of his son.  Defendants' motion in limine no. 5 is therefore DENIED.

3         **F.**      **MOTION NO. 6:  CAUSE OF DECEDENT'S SUBDURAL HEMATOMA**

4         Defendants seek to preclude Plaintiffs from arguing that the Decedent's head injury

5  (i.e., subdural hematoma) was caused by the actions of any of the County Defendants.

6  County Defs.' Mot. at 13.  Plaintiffs respond that they do not intend to make such an

7  argument.  Pls.' Opp'n at 8.  Thus, Defendants' motion in limine no. 6 is DENIED as moot.

8         **G.**      **MOTION NO. 7:  SHERIFF INCIDENT REPORTS**

9         In their seventh motion in limine, Defendants move to exclude Sheriff Incident

10  Reports (listed as Plaintiffs' Exhibits 91-100) as inadmissible hearsay.  County Defs.' Mot.

11  at 13.  Plaintiffs acknowledge that the reports are hearsay and state that they do not intend

12  to introduce them at trial.  Pls.' Opp'n at 9.  However, Plaintiffs have reserved their right to

13  use the reports for other purposes, such as for impeachment or to refresh a witness's

14  recollection.  Id.  In view of Plaintiffs representation that they do not intend to present the

15  reports in their case-in-chief, Defendant's motion in limine no. 7 is DENIED as moot.

16        **H.**      **MOTION NO. 8:  WITNESS INTERVIEWS**

17         Defendants move to exclude the written interviews of several witnesses who

18  allegedly observed the EPD officers beating the Decedent as inadmissible hearsay.  County

19  Defs.' Mot. at 14-15.  Plaintiffs respond that they intend to call these declarants as

20  witnesses at trial, though they may refer to the reports for other non-hearsay purposes.

21  Pls.' Opp'n at 9.  Thus, Defendants' motion in limine no. 8 is DENIED as moot.

22        **I.**      **MOTION NO. 9:  MENTION OF EXCLUDED EVIDENCE**

23         In their final motion in limine, Defendants seek to preclude Plaintiffs from referring

24  to evidence that the Court has ruled inadmissible.  County Defs.' Mot. at 15. Plaintiffs state

25  that they have no intention of making any reference to any excluded evidence.  Defendants'

26  motion in limine no. 9 is therefore DENIED as moot.

27  **V.**    **<u>CONCLUSION</u>**

28         For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.      Plaintiffs' Motion in Limine No. 1 is GRANTED.  Defendants are precluded from presenting evidence of or referring to the Decedent's criminal record and history.

2.      Plaintiffs' Motion in Limine No. 2 is DENIED.

3.      Plaintiffs' Motion in Limine No. 3. is GRANTED.  Defendants are precluded from eliciting from Mr. Bradley the alleged statement made to him by Mr. Healy that he broke his hand by striking the Decedent.

4.      Plaintiffs' Motion in Limine No. 4 is GRANTED IN PART and DENIED IN PART, as set forth above.  Defendants are precluded from presenting evidence of or referring to the Decedent's alleged past violence and prior evictions from the Rescue Mission.

5.      Plaintiffs' Motion in Limine No. 5 is GRANTED.  Defendants are precluded from presenting evidence of or referring to the Decedent's "rape" statement.

6.      Plaintiffs' Motion in Limine No. 6 is DENIED, as set forth above.

7.      Plaintiffs' Motion in Limine No. 7 is DENIED.

8.      City Defendants' Motion in Limine No. 1 is DENIED without prejudice.

9.      City Defendants' Motion in Limine No. 2 is DENIED as moot.

10.      City Defendants' Motion in Limine No. 3 is DENIED as moot.

11.      City Defendants' Motion in Limine No. 4 is DENIED as moot.

12.      City Defendants' Motion in Limine No. 5 is DENIED as moot.

13.      City Defendants' Motion in Limine No. 6 is DENIED.

14.      City Defendants' Motion in Limine No. 7 is DENIED as moot.

15.      City Defendants' Motion in Limine No. 8 is GRANTED.  Plaintiffs' expert shall not use inflammatory characterizations to describe Defendants' alleged actions, including terms and phrases such as "pummeled," beating the dickens out of," and "beat into submission."

16.      City Defendants' Motion in Limine No. 9 is DENIED.

17.      City Defendants' Motion in Limine No. 10 is DENIED as moot.

18.   City Defendants' Motion in Limine No. 11 is DENIED.

19.   City Defendants' Motion in Limine No. 12 is DENIED as moot.

20.   City Defendants' Motion in Limine No. 13 is GRANTED.  Plaintiffs are precluded from presenting evidence of or referring to the City's post-incident policy changes.

21.   City Defendants' Motion in Limine No. 14 is DENIED.

22.   City Defendants' Motion in Limine No. 15 is GRANTED.  Plaintiffs are precluded from presenting evidence of or referring to deficiencies in the City's written policies.

23.   City Defendants' Motion in Limine No. 16 is DENIED as moot.

24.   City Defendants' Motion in Limine No. 17 is GRANTED IN PART and DENIED IN PART, consistent with the Court's rulings on the County Defendants' motions in limine.

25.   County Defendants' Motion in Limine No. 1 is GRANTED IN PART and DENIED IN PART.  Plaintiffs are precluded from eliciting any opinions from their police expert, Roger Clark, that the City and County have "systemic organizational cultural patterns and practices to allow excessive and unnecessary force by the rank and file of both departments."

26.   County Defendants' Motion in Limine No. 2 is DENIED.

27.   County Defendants' Motion in Limine No. 3 is DENIED.

28.   County Defendants' Motion in Limine No. 4 is DENIED.

29.   County Defendants' Motion in Limine No. 5 is DENIED.

30.   County Defendants' Motion in Limine No. 6 is DENIED as moot.

31.   County Defendants' Motion in Limine No. 7 is DENIED as moot.

32.   County Defendants' Motion in Limine No. 8 is DENIED as moot.

33.   County Defendants' Motion in Limine No. 9 is DENIED as moot.

34.   This Order terminates Docket 121, 123 and 127.

1        IT IS SO ORDERED.

2    Dated: December 14, 2010

3                                                    SAUNDRA BROWN ARMSTRONG
                                                     United States District Judge
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28