UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SIEHNA M. COTTON, a minor, by Megan McClure, her guardian ad litem; and MARTIN COTTON, SR., an individual,<br><br>            Plaintiffs,<br><br>    vs.<br><br>CITY OF EUREKA, CALIFORNIA, a political subdivision of the State of California, COUNTY OF HUMBOLDT, CALIFORNIA, a political subdivision of the State of California, et al.,<br><br>            Defendants. | Case No:  C 08-04386 SBA<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL, AND DENYING DEFENDANTS' MOTION TO STAY ENFORCEMENT OF JUDGMENT**<br><br>Dkt. 256, 261 |

Plaintiffs Siehna Cotton and Martin Cotton, Sr., filed the instant survival and wrongful death action pursuant to 42 U.S.C. § 1983 following the death of their father and son, Martin Cotton II ("Decedent"), respectively, who died on August 7, 2007 after being severely beaten by City of Eureka Police Officers Justin Winkle, Adam Laird, and Gary Whitmer.  The First Amended Complaint alleged federal claims for, inter alia, excessive force, deliberate indifference to serious medical needs and interference with familial relations, as well as supplemental state law causes of action.  Plaintiffs' claims against the City of Eureka ("the City") and the aforementioned officers in their individual capacity (collectively "Defendants" or "City Defendants"), proceeded to trial.  On September 23,

2011, a jury returned a verdict for Plaintiffs and awarded $4,575,000 in compensatory and punitive damages.

The parties are presently before the Court on:  (1) Defendants' Motion for Judgment as a Matter of Law, pursuant to Federal Rule of Civil Procedure 50(b), or in the Alternative, Motion for a New Trial, pursuant to Federal Rule of Civil Procedure 59; and (2) Defendants' Motion to Stay Enforcement of Judgment.  Dkt. 256, 261.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES both motions in their entirety.  The Court, in its discretion, finds the motions suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.   BACKGROUND

### A.   FACTUAL SUMMARY

The following facts are taken from the testimony and evidence presented at trial and the record in this action.  On or about August 9, 2007, the Decedent was involved in a fight with another individual, Kevin Healy ("Healy"), at the Eureka Rescue Mission ("Rescue Mission") in Eureka, California.  In response to a call from Bryan Hall ("Hall"), the manager of the Rescue Mission, Officers Laird and Winkle arrived on scene around 4:40 p.m.  By the time the officers arrived, however, the Decedent's altercation with Healy had ceased.

The officers observed the Decedent standing alone near a fence outside the Rescue Mission, though they made no effort to confirm his identity.  Officer Winkle directed the Decedent to place his hands behind his back.  The Decedent did not respond, and instead, remained motionless.  Although the Decedent neither threatened the officers nor appeared to pose a threat to anyone else, Officer Winkle immediately sprayed Decedent directly in his eyes with pepper spray in a purported effort to "detain" him.  In response to being sprayed, the Decedent raised his hands towards his eyes, at which point Officer Winkle quickly delivered a right knee strike to the Decedent's midsection and forcefully pulled him down to the ground.

As the Decedent lay face down on the cement on his side with his hands underneath his body, Officer Winkle delivered eight to nine additional full-force knee strikes to the right and left side of the Decedent's body and repeatedly used both hands to shove the Decedent's head onto the cement sidewalk.  Though Officer Winkle denied striking the Decedent's head, eyewitness Louis Valente ("Valente") testified that he saw him use clenched "hammer" fists to strike the Decedent's head between five to ten times. Reporter's Partial Transcript of Proceedings, Sept. 14, 2011 ("9/14/11 RT") at 6:18-8:7, 13:14-14:6.  Valente described the sound of Officer Winkle's fist hitting the Decedent's head as "bone against bone" and "fist against skull."  Id. at 8:17-16.  Witness Michael Gage ("Gage") also testified that he observed the officers deliver multiple blows to the Decedent's head.

At trial, Officer Laird testified that he also repeatedly hit the Decedent with his metal baton, and kneed and kicked him with his boots numerous times.  Officer Whitmer, who arrived shortly after Officers Winkle and Laird, jumped out of his patrol car, ran up to the Decedent, and kicked him in his rib area.  He also struck the Decedent with his baton, sat on top of the Decedent (who still was on the ground), and sprayed him with pepper spray only seven inches from his face.  During the fray, Officer Whitmer dropped his baton, which was then retrieved by Officer Laird, who then used it to hit the Decedent.  Officer Whitmer also continued to kick the Decedent.  Although all officers attempted to characterize the Decedent as non-compliant, they conceded at trial that he was not using force against them and did not threaten them or attempt to flee.  Witnesses Valente and Gage also testified that the Decedent was not resisting the officers.

Officer Stephen Watson was next to arrive.  After making his way through the crowd that had gathered, Officer Watson was asked to place a spit mask on the Decedent. Officer Tim Jones then showed up.  By that point, the Decedent was already handcuffed and had a spit mask over his face.  To control the Decedent while he was being searched, Officer Jones used his nunchukus (a martial arts weapon consisting of two sticks connected by a short chain or rope) on the Decedent's forearm and wrists.  Unlike the other officers,

there was no evidence that Officers Watson or Jones struck the Decedent with their fists, knees or batons or had sprayed him with pepper spray.

Despite the significant amount of force applied by Officers Laird, Winkle and Whitmer against the Decedent, they failed to call for an ambulance, take him to the hospital or otherwise seek any medical attention for him.  Instead, they arrested the Decedent and took him directly to the Humboldt County Correctional Facility ("HCCF") sally port, i.e., the underground parking area.[1]  At trial, Defendants introduced video surveillance recordings taken from cameras located in the sally port and inside the facility which showed the officers and HCCF personnel brusquely escorting the Decedent, who appeared to have difficulty standing, from the patrol car directly to a sobering cell.  Footage taken from inside the sobering cell shows the Decedent rolling around, grasping his head, and in apparent distress.  Plaintiff's expert, Harry Bonnell, M.D., testified that the Decedent's behavior was indicative of a head injury, and that in observing the video, he was "watching a man die."  9/16/11 RT at 53:19-23.

Decedent was not medically examined or treated while at the HCCF. The Decedent died in the sobering cell a few hours later.  The County Coroner's autopsy report later concluded that the Decedent died of acute subdural hematoma (i.e., pooling of blood on the surface of the brain) caused by blunt force trauma.  The coroner also noted bruising throughout the Decedent's body as well as internal hemorrhaging.

## B.   PROCEDURAL HISTORY

### 1.   Pretrial Proceedings

Plaintiffs filed the instant action against the City Defendants, as well as the County of Humboldt and certain of its correctional officers at the HCCF (collectively "County Defendants"), based on their respective roles in the underlying events.  The First Amended Complaint filed on May 21, 2009, alleged eight causes of action for:  (1) excessive force in violation of the Fourth Amendment; (2) deliberate indifference to serious medical needs in

---

[1] However, after Officers Winkle and Laird left the HCCF, they took themselves to the hospital to have their hands examined for injuries following the incident.

violation of the Fourteenth Amendment; (3) supervisory liability under § 1983; (4) assault and battery; (5) violation of California Government Code § 845.6; (6) wrongful death; (7) survival damages; and (8) interference with familial association in violation of the Fourteenth Amendment.

Trial was scheduled to commence on January 10, 2011, with the pretrial conference to take place on December 14, 2010. Dkt. 139. The parties filed thirty-three motions in limine, which the Court resolved in a written order filed on December 14, 2010. Dkt. 147. On the same date, the Court held a pretrial conference, at which time it urged the parties to resume their settlement discussions. To that end, the Court vacated the trial date and referred the matter to Magistrate Judge Bernard Zimmerman for a mandatory settlement conference. Dkt. 148, 149. The action did not settle, however. As such, the Court rescheduled the pretrial conference to September 6, 2011, and set a new trial date of September 12, 2011. Dkt. 161. Since the trial date was not scheduled to commence for several months, the Court issued a scheduling order granting the City Defendants and County Defendants leave to file motions for summary judgment beyond the law and motion cut-off date which had previously lapsed. Dkt. 162.

In accordance with the Court's scheduling order, the County Defendants filed a motion for summary judgment with respect to all claims alleged in the FAC. Dkt. 167. The City Defendants filed a motion for partial summary judgment. Dkt. 178. On August 31, 2011, the Court issued an Order granting in part and denying in part both motions. Dkt. 208. As to the City Defendants, the Court granted their motion with respect to the claims alleged against Officers Watson and Jones. The Court found that Officer Watson's placement of a spit mask on the Decedent and Officer Jones' use of nunchukus to apply a compliance hold, standing alone, were insufficient to establish liability as to these particular officers for excessive force. 8/31/11 Order at 27-29, Dkt. 208. The Court denied the City Defendants' summary judgment motion with respect to Plaintiffs' claims for deliberate indifference to serious medical needs, violation of California Government Code § 845.6, and interference with familial association. Id. at 35.

1    The pretrial conference proceeded as scheduled on September 6, 2011, at which time

2    the Court again strongly encouraged the parties to continue their efforts to resolve the

3    action short of trial.  Dkt. 209.  On September 9, 2011, the County Defendants notified the

4    Court that they had reached a settlement with Plaintiffs.  Dkt. 213.

5                        **2.    Trial**

6    On September 12, 2011, a jury trial commenced with respect to Plaintiffs' claims

7    against the remaining City Defendants.[2]  Among those testifying at trial were:  Officers

8    Winkle, Laird and Whitmer; percipient witnesses Valente and Gage; Plaintiffs' expert

9    Roger Clark ("Clark"); and defense expert Don Cameron ("Cameron").

10   On September 21, 2011, after the close of testimony, Defendants made an oral

11   motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) solely

12   with respect to Plaintiffs' fifth claim under California Government Code § 845.6.  The

13   Court indicated that it would take the matter under submission.  The Court denied the

14   motion the next day.  Dkt. 240, 241.

15   On September 22, 2011, the parties' respective counsel presented their closing

16   arguments and the Court instructed the jury.  Early the following afternoon, the jury

17   reached a verdict in favor of the Plaintiffs.  Special Verdict Form, Dkt. 245.  The jury found

18   that Officers Winkle and Laird, but not Whitmer, used excessive force against the

19   Decedent, and that all three Defendants were deliberately indifferent to his serious medical

20   needs and failed to obtain medical care in violation of California Government Code

21   § 845.6.  Id. (Questions 1, 2, 4).  In addition, the jury found that all officers violated

22   Plaintiff Martin Cotton Sr.'s constitutional right to familial association.  Id. (Question 6).

23   As to the City, the jury found that it failed to train its officers with respect to obtaining

24   treatment for arrestees upon whom force had been inflicted, but that the City was not

25   deliberately indifferent in its failure to train.  Id. (Question 3).  Finally, the jury found that

26

27   _____

     [2] Prior to trial, the Court ruled that Plaintiff Siehna Cotton had standing as a successor-in-interest to bring a survival action on behalf of the Decedent's estate.  Plaintiff Martin Cotton Sr.'s standing was limited to Plaintiffs' eighth claim for interference with familial association.

28

all officers acted maliciously, oppressively and in reckless disregard of Plaintiffs and/or the Decedent's constitutional rights.  (Question 7).

As for damages, the jury awarded $1,250,000 to Siehna Cotton as "[d]amages for any injury sustained by the decedent . . . before his death," and $2,750,000 in damages for "[d]amages for harm sustained by Plaintiff Siehna Cotton as a result of the death of Decedent . . . ." Id. (Question 5).  The jury also awarded $500,000 to Martin Cotton Sr. on his familial association claim.  Id. (Question 6).  Finally, the jury imposed punitive damages against the officers, as follows:  $30,000 against Officer Laird; $30,000 against Officer Winkle; and $15,000 against Officer Whitmer.  Id. (Question 7).  The Court entered final judgment in accordance with the jury verdict on September 23, 2011.  Dkt. 246.

### 3.    Post-Trial

On October 21, 2011, Defendants filed the instant Motion for Judgment as a Matter of Law, or in the Alternative, Motion for a New Trial.  Dkt. 256.[3]  Defendants also filed a request to stay enforcement of the judgment.  Dkt. 261.  Plaintiff opposes both motions.  Dkt. 270, 264.  Both motions have been fully briefed and are ripe for adjudication.

## II.    <u>MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL</u>

Defendants contend that they are entitled to:  (1) judgment as a matter of law or a new trial on the ground that the Court impermissibly allowed Plaintiff Siehna Cotton to recover survival damages based on the Decedent's pain and suffering leading up to his death; (2) a new trial based on "repeated misconduct of Plaintiffs' counsel" during trial; (3) a new trial based on the Court's "erroneous evidentiary rulings"; and (4) judgment as a

---

[3] Although the arguments presented in Defendants' motion for judgment as a matter of law or new trial are based almost entirely on the trial proceedings which took place between September 12, 2011 and September 23, 2011, Defendants inexplicably failed to accompany their motion with citations to the record of those proceedings—most likely because they failed to have them transcribed.  Indeed, the only portions of the trial for which Defendants sought certified transcriptions consist of the opening and closing statements, and the testimony of Valente, Clark, Harry Bonnell and Don Cameron.  Even then, Defendants did not provide copies of the certified transcripts to the Court with their moving papers.  Instead, Defendants provided excerpts of Valente and Clark's trial testimony in a reply declaration.  Supp. Kloeppel Decl. Exs. A, B, Dkt. 267.  Nonetheless, to ensure the accuracy of its analysis, the Court has obtained and reviewed the uncertified "rough" transcript of the entire trial proceedings from the court reporter.

matter of law or a new trial with respect to Officer Whitmer as to Plaintiffs' claim for deliberate indifference to serious medical needs. Defs.' Mot. at 1-2. The Court addresses these issues seriatim.

### A.   LEGAL STANDARD

#### 1.   Judgment as a Matter of law

Motions for judgment as a matter of law are governed by Federal Rule of Civil Procedure 50. Rule 50(a) governs pre-verdict motions while Rule 50(b) applies to post-verdict motions. In the Ninth Circuit, a motion for judgment as a matter of law pursuant to Rule 50(b) is appropriate when the evidence permits only one reasonable conclusion, and that conclusion is contrary to that of the jury. Martin v. Cal. Dep't of Veterans Affairs, 560 F.3d 1042, 1046 (9th Cir. 2009); Josephs v. Pacific Bell, 443 F.3d 1050, 1062 (9th Cir. 2006). All evidence must be viewed in the light most favorable to the nonmoving party, and the court must draw all reasonable inferences in that party's favor. E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009). "[I]n entertaining a motion for judgment as a matter of law, the court . . . may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). A jury verdict "must be upheld if it is supported by substantial evidence . . . even if it is also possible to draw a contrary conclusion." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002).

#### 2.   New Trial

Under Federal Rule of Civil Procedure 59, a district court has the discretion to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," courts are "bound by those grounds that have been historically recognized." Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003). Cognizable grounds for a new trial include (1) a verdict that is contrary to the weight of the evidence, (2) a verdict that is based on false or perjurious evidence, or (3) to prevent a miscarriage of justice. Molski v. M .J. Cable, Inc.,

481 F.3d 724, 729 (9th Cir. 2007).  The decision as to whether to grant a new trial motion lies within the discretion of the district court.  See <u>Merrick v. Paul Revere Life Ins. Co.</u>, 500 F.3d 1007, 1013 (9th Cir. 2007).

## B. ISSUES

### 1. Survival Damages

Defendants contend that they are entitled to judgment as a matter of law under Rule 50(b), or alternatively, a new trial under Rule 59(a)(1), ostensibly because the Court erred in allowing Plaintiff Siehna Cotton to recover damages based on the Decedent's pain and suffering.  They argue that the damages recoverable in a § 1983 survival action are limited by California's survival statute, Cal. Code Civ. Proc. § 377.34 ("§ 377.34"), which expressly disallows damages for pain and suffering.  Plaintiffs counter that Defendants' motion is procedurally flawed because Defendants' failed to preserve the issue by raising it in a pre-verdict Rule 50(a) motion.  They also contend that Defendants' arguments regarding the recoverability of damages for the Decedent's pain and suffering fail on the merits.

#### a) Waiver

It is well settled that any arguments raised in a post-trial Rule 50(b) motion for judgment as matter of law must first have been presented in a pre-verdict Rule 50(a) motion.  <u>Go Daddy Software</u>, 581 F.3d at 961.  Consequently, a Rule 50(b) motion "is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." <u>Id.</u>  The Ninth Circuit "strictly construe[s] the procedural requirement of filing a Rule 50(a) motion before filing a Rule 50(b) motion." <u>Tortu v. Las Vegas Metro. Police Dep't</u>, 556 F.3d 1075, 1082 (9th Cir. 2009).  Any challenges not presented in a Rule 50(a) motion are waived and cannot be presented in a Rule 50(b) motion. <u>Id.</u> at 1083 ("Failing to make a Rule 50(a) motion before the case is submitted to the jury forecloses the possibility of considering a Rule 50(b) motion.").

Defendants tacitly concede that their pre-verdict Rule 50(a) motion only addressed Plaintiffs' fifth claim under California Government Code § 845.6, and that it did not

1    include any arguments regarding the applicability of § 377.34.  Nonetheless, Defendants

2    insist that they preserved this issue when "[it] was first raised in [D]efendants' motions in

3    limine and again addressed following the close of evidence." Defs.' Reply at 2, Dkt. 266.[4]

4    According to Defendants, raising the issue in that manner is a tantamount to an "inartfully

5    made" pre-verdict Rule 50(a) motion, and thus provides a legally sufficient basis for them

6    to present in a post-trial Rule 50(b) motion.  Not so.  The requirement that arguments

7    presented in a Rule 50(b) must first have been made in a Rule 50(a) motion is strictly

8    construed.  Tortu, 556 F.3d at 1082.  For that reason, the Ninth Circuit has consistently held

9    that "substantial compliance [with Rule 50] is not enough." James v. Wal-Mart Stores Inc.,

10   279 F.3d 883, 887 (9th Cir. 2002) (holding that raising issue in a trial brief and summary

11   judgment motion were insufficient to satisfy requirement to file pre-verdict Rule 50(a)

12   motion); Tortu, 556 F.3d at 1082 (motions made pretrial and during trial and did not

13   "suffice for a Rule 50(a) motion.").

14        Defendants cite Reeves v. Teuscher, 881 F.2d 1495 (9th Cir. 1989), which noted that

15   "[Rule] 50(b) may be satisfied by an ambiguous or inartfully made motion for a directed

16   verdict or by an objection to an instruction for insufficient evidence to submit an issue to

17   the jury." Id. at 1498.  In Reeves, however, the defendants attempted to move for a directed

18   verdict at the close of evidence, but were unable to do so because the district court

19   interrupted defendants and instructed them to renew the motion after the verdict—which

20   they did.  In contrast, Defendants were allowed to, and did, in fact, make a Rule 50(a)

21        ───────────────────────

22        [4] Defendants' recitation of the facts is not entirely accurate.  In their eleventh motion
     in limine, Defendants sought to exclude evidence of the Plaintiffs' emotional distress on the
23   ground that emotional distress damages are not recoverable in a wrongful death cause of
     action. Defs.' Mots. in Limine at 11, Dkt. 127.  Defendants did not argue, as they do now,
24   that evidence of the Decedent's pain and suffering should have been excluded under §
     377.34 from Plaintiff Siehna Cotton's survival damages.  While Defendants belatedly
25   attempted to raise the issue for the first time in their reply brief, see Defs.' Reply to Pls.'
     Opp'n to City Defs.' Mots. in Limine at 5, Dkt. 134, the Court ultimately ruled that "[s]ince
26   Defendants failed to present this argument in their moving papers, this issue is not properly
     before the Court."  See Order Re Mots. in Limine at 25 n.13.  As for the discussion after the
27   close of evidence, it was the Court, not Defendants, which raised the issue based on the
     parties' argument in their Joint Pretrial Statement.  See Jt. Pretrial Conf. Stmt. at 4, Dkt.
28   101.  As discussed infra, making an argument in a pretrial document is not tantamount to a
     Rule 50(a) motion.

motion in which they chose to challenge Plaintiffs' fifth claim <u>only</u>.  Thus, having failed to properly preserve the issue, Defendants have waived their right to seek judgment as a matter of law on the ground that Plaintiff Siehna Cotton impermissibly recovered damages based on the Decedent's pain and suffering.

### b)     Merits

The above notwithstanding, even if Defendants' Rule 50(b) motion were properly before the Court, Defendants' contention that the Court erred in allowing the jury to consider evidence of the Decedent's pain and suffering prior to death is without merit.  As a general matter, "'Fourth Amendment rights are personal rights which . . . may not be vicariously asserted.'"  <u>United States v. Struckman</u>, 603 F.3d 731, 746 (9th Cir. 2010) (quoting <u>Alderman v. United States</u>, 394 U.S. 165, 174 (1969)).  "In § 1983 actions, however, the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action."  <u>Moreland v. Las Vegas Metro. Police Dep't</u>, 159 F.3d 365, 369 (9th Cir. 1998).[5]  California expressly authorizes survival actions.  Cal. Code. Civ. Proc. §§ 377.30, 377.34.  "Under California law, if an injury giving rise to liability occurs before a decedent's death, then the claim survives to the decedent's estate."  <u>Tatum v. City and Cnty. of San Francisco</u>, 441 F.3d 1090, 1094 n.2 (9th Cir. 2006).  California's survival statute permits a decedent's successor-in-interest to recover "the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived"; however, it does <u>not</u> allow "damages for pain, suffering, or disfigurement."  Cal. Civ. Proc. Code § 377.34.

---

[5] A survival action is a personal injury action that survives to permit a decedent's estate to recover damages that would have been personally awarded to the decedent had he survived.  Cal. Civ. Pro. Code §§ 377 .20, 377.30.  In contrast, a wrongful death action is an independent claim for damages personally suffered by a decedent's heirs as a result of the decedent's death.  <u>Id.</u> § 377.60; <u>see</u> <u>Davis v. Bender Shipbuilding & Repair Co.</u>, 27 F.3d 426, 429 (9th Cir. 1994).

Section 1983 does not "address directly the question of damages[.]"  Carey v. Piphus, 435 U.S. 247, 255 (1978).  Rather, in survival actions, "42 U.S.C. § 1988(a) requires the application of state-law survival remedies in § 1983 actions unless those remedies are inconsistent with the Constitution and laws of the United States."  Jefferson v. City of Tarrant, Ala., 522 U.S. 75, 79 (1997) (citing Robertson v. Wegmann, 436 U.S. 584, 588-590 (1978)) (internal quotation marks omitted, emphasis added).  There is no controlling authority resolving the question of whether California's limitation on the recovery of survival damages, namely the exclusion of damages for pain and suffering, is inconsistent with § 1983.  See Mahach-Watkins v. Depee, 593 F.3d 1054, 1060 (9th Cir. 2010) (noting that the applicability of California Civil Code § 377.34 in § 1983 cases is undecided).

To determine whether state law survival remedies are inconsistent with federal law, "courts must look not only at particular federal statutes and constitutional provisions, but also at the policies expressed in [them]."  Robertson, 436 U.S. at 590 (internal quotations and brackets omitted).  The statute at issue here, 42 U.S.C. § 1983, has its origins in § 1 of the Civil Rights Act of 1871, which was enacted as part of the congressional response to the states' failure to prevent widespread racial violence committed by the Klu Klux Klan.  See Ngiraingas v. Sanchez, 495 U.S. 182, 187-88 (1990).  The Act "was intended not only to 'override' discriminatory or otherwise unconstitutional state laws, and to provide a remedy for violations of civil rights "where state law was inadequate," but also to provide a federal remedy 'where the state remedy, though adequate in theory, was not available in practice.'"  Zinermon v. Burch, 494 U.S. 113, 124 (1990) (quoting Monroe v. Pape, 365 U.S. 167, 173-74 (1961), overruled in part on other grounds by Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 664-689 (1978)).

The Supreme Court has emphasized that § 1983 is a "remedial" statute which is to be "broadly construed" to provide a remedy "against all forms of official violation of federally protected rights."  Dennis v. Higgins, 498 U.S. 439, 444 (1991) (internal quotations omitted).  "The policies underlying § 1983 include compensation of persons

injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." Id. at 590-91; Hardin v. Straub, 490 U.S. 536, 539 (1998) (identifying "§ 1983's chief goals" as "compensation and deterrence," and its "subsidiary goals" as "uniformity and federalism.").  The twin goals of compensation and deterrence are furthered through compensatory damage awards.  See Carey, 435 U.S. at 256-57.

The seminal case addressing whether California survival remedies limit the damages recoverable in a § 1983 action is Judge Marilyn Hall Patel's decision in Guyton v. Phillips, 532 F. Supp. 1154 (N.D. Cal. 1981), abrogated on other grounds, Peraza v. Delameter, 722 F.2d 1455 (9th Cir. 1984).  In Guyton, the plaintiff filed a § 1983 action for excessive force following the shooting death of her unarmed minor son by two City of Emeryville police officers.  Following a court trial, Judge Patel ruled in favor of the plaintiff.  With respect to the issue of damages, Judge Patel ruled that "California's survival statute, insofar as it excludes recovery for pain and suffering, is inconsistent with § 1983." Id. at 1166.  In reaching her decision, Judge Patel explained:

> To deny recovery for pain and suffering would strike at the very heart of a § 1983 action. . . .  Had the victim survived, he could have recovered, among other things, loss of earnings and pain and suffering.  The inescapable conclusion is that there may be substantial deterrent effect to conduct that results in the injury of an individual but virtually no deterrent to conduct that kills its victim.
>
> . . . .
>
> The court is still faced with an anomalous result in this survival action.  The clear purpose of § 1983 is to prevent abuse of official acts that cause deprivation of rights.  Yet that purpose is hardly served when the police officer who acts without justification suffers a harsher penalty for injuring or maiming a victim than for killing him.  The court must be able to fashion a remedy that will fit the penalty to the deprivation and will serve as a deterrent to abusive conduct in the future.
>
> A remedy must obtain by reason of the actual deprivation-in this case the greatest of deprivations, loss of life.  Absent such a remedy, the § 1983 action amounts to little more than a tort claim. . . .

Id. at 1166-67.  Though Guyton addressed California Probate Code § 573, which has since been repealed, Judge Patel later applied the same reasoning in Williams v. County of

1 | Oakland, 915 F. Supp. 1074 (N.D. Cal. 1996), and concluded that California Code of Civil

2 | Procedure § 377.34's exclusion of damages for pain and suffering "is inconsistent with the

3 | purposes of section 1983 of the federal civil rights statutes." Id. at 1079.

4 |   Citing Guyton, the Seventh Circuit in Bell v. Milwaukee held that a state survival

5 | statute's limitations on recoverable damages is inconsistent, and hence, not controlling in a

6 | federal § 1983 action. 746 F.2d 1205 (7th Cir. 1984), overruled on other grounds by Russ

7 | v. Watts, 414 F.3d 783 (7th Cir. 2005). In Bell, siblings of the decedent brought a civil

8 | rights action under § 1983 against various city police officers involved in the shooting

9 | death of their brother. The defendants argued, inter alia, that Wisconsin law precluded the

10 | plaintiffs' recovery of survival damages on behalf of the estate. The district court disagreed

11 | and upheld the jury's award of $100,000 in loss of life damages to decedent's estate. The

12 | court of appeal affirmed, holding that Wisconsin's restriction on damages was inconsistent

13 | with § 1983's underlying goal of deterrence. Id. at 1239. In reaching its decision, the court

14 | explained that application of the state law limitation on damages "would result in more than

15 | a marginal loss of influence . . . on the ability of § 1983 to deter official lawlessness if the

16 | victim's estate could not bring suit to recover for loss of life." Id. The court further noted

17 | that if plaintiff's recovery were thwarted by state law, "deterrence would be further

18 | subverted since it would be more advantageous to the unlawful actor to kill rather than

19 | injure." Id.

20 |   Notably, a majority of California district courts faced with the issue of whether

21 | § 377.34 precludes the recovery of pain and suffering damages in a § 1983 action have

22 | followed Guyton. See Guerrero v. County of San Benito, No. C 08-0307 PVT, 2009 WL

23 | 4251435, at *5 (N.D. Cal. Nov. 23, 2009); Hirschfield v. San Diego Unified Port Dist., No.

24 | 08cv2103 BTM(NLS), 2009 WL 3248101, at *4 (S.D. Cal. Oct. 8, 2009); T.D.W. v.

25 | Riverside Cnty., No. EDCV 08-232 CAS, 2009 WL 2252072, at *5-6 (S.D. Cal. July 27,

26 | 2009); Garcia v. Whitehead, 961 F. Supp. 230, 232-33 (C.D. Cal. 1997). Other circuits and

27 | district courts addressing analogous state court survival statutes have likewise determined

28 | that the exclusion of damages for pain and suffering is inconsistent with the spirit and intent

of § 1983.  See, e.g., Bass by Lewis v. Wallenstein, 769 F.2d 1173, 1190 (7th Cir. 1985); Jaco v. Bloechle, 739 F.2d 239, 245 (6th Cir. 1984); McClurg v. Maricopa Cnty., No. CIV-09-1684-PHX-MHB, 2011 WL 4434029, at *4 (D. Ariz. Sept. 23, 2011); Gilbaugh v. Balzer, No. Civ-99-1576-AS, 2001 WL 34041889, at *5-7 (D. Or. June 7, 2001); Banks v. Yokemick, 177 F. Supp. 2d 239, 251-52 (S.D.N.Y. 2001); Davis v. City of Ellensburg, 651 F. Supp. 1248, 1256 (E.D. Wash. 1987).

Defendants urge the Court to follow a line of Eastern District of California decisions led by Venerable v. City of Sacramento, 185 F. Supp. 2d 1128, 1132 (E.D. Cal. 2002), which have concluded that § 377.34's exclusion of damages for pain and suffering in survival actions apply to federal § 1983 civil rights actions.  In Venerable, the district court first traced the history leading to the California legislature's enactment of § 377.34 and concluded that its exclusion of recovery for pain and suffering "represents a considered judgment as to the appropriate balance among a number of competing considerations." 185 F. Supp. 2d at 1132.  Without considering whether that limitation was inconsistent with the purposes of § 1983, the court then summarily rejected the reasoning expressed in Guyton and Williams, among other cases, that the exclusion of pain and suffering damages would place the defendant in a better position in cases where the victim dies and thereby undermine § 1983's goal of deterrence.  Venerable, 185 F. Supp. 2d at 1133.  The court noted that "[i]n the absence of reliable empirical evidence to the contrary, the court declines to adopt the cynical proposition that law enforcement officers generally prefer to run the risk of inflicting death than of merely maiming a victim because death cuts off a claim for pain and suffering by the decedent."  Id.  Defendants also cite Provencio v. Vazquez, No. 1:07-CV-0069 AWI TAG, 2008 WL 3982063, at *12 (E.D. Cal. Aug. 18, 2008), which followed Venerable and noted that "[t]he deterrent purpose of Section 1983 is satisfied by the fact that Section 377.34 allows the estate to recover the punitive damages the decedent would have been entitled to recover had he survived."  Provencio, 2008 WL 3982063, at *12.

The Court is unpersuaded by the reasoning set forth in <u>Venerable</u> and <u>Provencio</u>.  In <u>Venerable</u>, the court focused on whether the California legislature had a "sound basis" for enacting § 377.34 and excluding damages for pain and suffering in survival actions.  185 F. Supp. 2d at 1132.  But <u>California's</u> rationale for limiting the damages recoverable in a state law survival action is entirely beside the point.  As noted, the Supreme Court has instructed that the question of whether a state law's survival remedies are inconsistent with federal law requires the court to examine the "particular <u>federal</u> statutes and constitutional provisions" at issue as well as the "<u>federal</u> policy underlying the cause of action under consideration."  <u>Robertson</u>, 436 U.S. at 590 (internal quotation marks omitted, emphasis added).  But instead of considering "§ 1983's chief goals of compensation and deterrence," <u>Hardin</u>, 490 U.S. at 539, <u>Venerable</u> only considered the matter of deterrence and did not take into account the equally important goal of compensation, 185 F. Supp. 2d at 1132-33.  And even then, the court never explained how application of California's exclusion of pain and suffering damages in survival actions is consistent, if at all, with § 1983's goal of deterrence.

Nor is the Court persuaded by <u>Provencio</u>'s unsupported assumption that the mere threat of punitive damages is sufficient to deter unconstitutional conduct by government officials.  Punitive damages, of course, are not recoverable in every § 1983 case.  See <u>Smith v. Wade</u>, 461 U.S. 30, 52 (1983) ("punitive damages . . . are never awarded as of right, no matter how egregious the defendant's conduct.").  Rather, a plaintiff must demonstrate that the defendant's conduct was driven by evil motive or intent or that it involved a reckless or callous indifference to the constitutional rights of others.  <u>Dang v. Cross</u>, 422 F.3d 800, 807 (9th Cir. 2005).  And even where a constitutional violation is found, punitive damages are unavailable against a public entity.  See <u>City of Newport v. Facts Concert, Inc.</u>, 453 U.S. 247, 271 (1981).  As to individual defendants, the amount of punitive damages is circumscribed by the financial condition of the individual officer and "is therefore likely to be relatively small."  <u>Williams</u>, 915 F. Supp. at 1078.  The conclusion that punitive damages by themselves are sufficient to further § 1983's goal of deterrence also is contrary

to Supreme Court jurisprudence.  As observed in <u>Carey</u>, "[t]o the extent that Congress intended that awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of <u>compensatory damages</u>."  435 U.S. at 256-57 (emphasis added); <u>Memphis Cmty. Sch. Dist. v. Stachura</u>, 477 U.S. 299, 307 (1986) ("Deterrence is also an important purpose of this system, but it operates through the mechanism of damages that are *compensatory*—damages grounded in determinations of plaintiffs' actual losses.").[6]

At bottom, the Court finds that application of California's prohibition on the recovery of damages for pain and suffering in survival actions is inconsistent with § 1983. Had the Decedent survived, he indisputably would be entitled to compensation for the pain and suffering he endured as a result of Defendants' use of excessive force and deliberate indifference to his serious medical needs.  Precluding such damages would plainly undermine § 1983's twin goals of compensation and deterrence.  Similarly, eliminating pain and suffering damages in an action where the victim dies would also undermine the statute's subsidiary goals of uniformity and federalism, particularly since a potential damage award could vary significantly depending on the forum in which the action was filed.  The Court thus concludes that, even if they had not waived the issue, Defendants are not entitled to judgment as a matter of law on the issue of Plaintiffs Siehna Cotton's recovery of survival damages based on the Decedent's pain and suffering.

---

[6] Defendants also cite two Northern District decisions which have precluded pain and suffering damages in a § 1983 survival action; i.e., Judge Illston's decision in <u>Mahach-Watkins v. Depee</u>, No. C 05-1143 SI, 2007 WL 3238691, at *2 (N.D. Cal. Oct. 31, 2007) and Judge Wilken's decision in <u>Lewis v. City of Hayward</u>, No. C 03-5360 CW, 2006 WL 436134, at *14 (N.D. Cal. Feb. 21, 2006).  The Court respectfully finds neither decision to be germane.  Judge Illston's decision contains no analysis of the issue and simply cites the Eastern District's decision in <u>Venerable</u>, which is discussed above <u>infra</u>.  In <u>Lewis</u>, Judge Wilken also cited <u>Venerable</u> but provided no analysis of the issue since plaintiffs did not dispute the applicability of § 377.34.  <u>Lewis</u>, 2006 WL 436134, at *14.

### c)     New Trial

In the alternative to their motion for judgment as a matter of law, Defendants contend that they are entitled to a new trial based on the allegedly erroneous introduction of evidence pertaining to the Decedent's pain and suffering.  As set forth above, there was no error in allowing such evidence at trial.  But even if there were, Defendants have failed to demonstrate that a new trial is warranted.

An erroneous evidentiary ruling may serve as a basis for a new trial only if it "substantially prejudiced" a party.  See Ruvalcaba v. City of Los Angeles, 64 F.3d 1323, 1328 (9th Cir. 1995).  In other words the movant must demonstrate that, "more probably than not," the evidentiary error "tainted the verdict."  Harper v. City of Los Angeles, 533 F.3d 1010, 1030 (9th Cir. 2008).  Here, Defendants speculate that evidence of the Decedent's pain and suffering impacted the entire verdict.  Defs.' Mot. at 6.  Beyond their vague and conclusory reference to "evidence of decedent's pain and suffering," id. at 3, however, Defendants never identify the specific evidence that they claim was erroneously admitted that allegedly necessitates a new trial.  As such, Defendants have failed to carry their initial burden of demonstrating that there was an erroneous evidentiary ruling which "substantially prejudiced" them.  See Ruvalcaba, 64 F.3d at 1328; e.g., Howard v. Nat'l R.R. Passenger Corp., No. C 05-4069 SI, 2007 WL 2854382, at *3 (N.D. Cal. Sept. 27, 2007 (denying motion for new trial where plaintiff claimed "character" evidence was improperly admitted, but failed to "cite any specific evidence that he claims was improperly admitted") (Illston, J.).

Defendants also have failed to demonstrate that they properly preserved their argument by establishing that they timely objected to the introduction of any evidence of the Decedent's pain and suffering.  See Getz v. Boeing Co., 654 F.3d 852, 868 (9th Cir. 2011) ("by failing to object to or otherwise challenge the introduction of the [evidence] in the district court, Plaintiffs have waived any challenge on the admissibility of this evidence."); People of Territory of Guam v. Gill, 61 F.3d 688, 693 (9th Cir. 1995) ("Failure to make a timely objection constitutes a waiver of that objection.").  In addition, it was

Defendants, not Plaintiffs, who introduced critical evidence regarding the Decedent's pre-death suffering through the introduction of the surveillance recordings made of the Decedent while he was at HCCF which showed him in apparent physical distress.  See Trial Sheet at 4, Dkt. 242 (video played during Officer Laird's cross-examination on 9/14/11). Since any alleged evidentiary error was invited, Defendants cannot legitimately claim that they are entitled to a new trial.  See Larson v. Neimi, 9 F.3d 1397, 1401 (9th Cir. 1993) (trial court did not abuse its discretion in denying motion for new trial where the alleged error resulted from the movant's conduct).

Even if Defendants had established that the admission of evidence relating to the Decedent's pain and suffering were improper, they have failed to show that a new trial is necessary or appropriate.  The Special Verdict Form agreed upon by the parties segregated Plaintiff Siehna Cotton's survival damages based on her own loss from the Decedent's pre-death suffering.  Special Verdict Form (Question 5).  Defendants do not dispute that the Decedent's pain and suffering damages are "easily discernable from the verdict form," but surmise that the evidence and argument proffered on such damages "prejudiced the jury in deciding other issues in this case."  Defs.' Reply at 5.  Beyond these conclusory and speculative assertions, however, Defendants have made no showing that their introduction of evidence pertaining to the Decedent's pain and suffering tainted the verdict in its entirety.  See Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir.1997) (speculative assertions are not enough to establish prejudice).  Accordingly, the Court finds no merit to Defendants' alternative request for a new trial based on the introduction of evidence concerning the Decedent's pain and suffering.

### 2.    Attorney Misconduct

Defendants next contend that they are entitled to a new trial based on Plaintiffs' counsel's alleged misconduct during trial.  The Ninth Circuit's standard for granting a new trial based on attorney misconduct under Rule 59 is that "the flavor of the misconduct 'must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.'"  Doe ex rel. Rudy-Glanzer v.

Glanzer, 232 F.3d 1258, 1270 (9th Cir. 2000) (quoting McKinley v. City of Eloy, 705 F.2d 1110, 1117 (9th Cir. 1983)).

The alleged misconduct consists of:  (1) Plaintiffs' counsel's reference to the use of a spit mask and nunchukus during opening statements; (2) witness Valente's reference to the Rodney King incident; (3) Valente's reference to another "trial"; (4) Plaintiffs' counsel's mention of a "Fullerton" case during closing arguments; and (5) "inflammatory" remarks by Plaintiffs' counsel during closing arguments that the Defendants "beat" the Decedent.  As will be discussed below, Defendants completely mischaracterize the record. In addition, none of the alleged misconduct, whether considered individually or in aggregate, persuades the Court that a new trial is either necessary or appropriate.

### a)     *Opening Statements*

During his opening statement, Plaintiffs' attorney Dale Galipo provided an overview of the events that eventually led to the Decedent's death.  In the course of that summary, he briefly mentioned that "[t]hey used nunchukus" and that a "spit mask [was] put on [the [Decedent]." 9/12/11 RT at 10:6-8.  Defense counsel did not object to Mr. Galipo's statements.  Instead, during her opening statement on behalf of Defendants, defense counsel Nancy Delaney first stated that "nunchukus are never used to strike Mr. Cotton," and then attempted to recite the Court's summary judgment ruling that the use of the nunchukus and spit mask, standing alone, did not amount to an unreasonable use of force.  Id. at 21:19-22. Plaintiffs' counsel objected on the ground that references to the Court's prior rulings are improper during opening statements.  Id. at 21:23-24, 22:7-8.  The Court agreed, and pointed out that the purpose of opening statements is to convey what the evidence will show, and that the Court's rulings are not evidence.  Id. at 23:12-24:7.  Defense counsel thus agreed to limit her opening remarks accordingly.  Id. at 24:8-9.

Defendants now assert that Plaintiffs' counsel's reference in his opening statement to the spit mask and nunchakas amounts to "misconduct."  Defs.' Mot. at 6-7.  Further, Defendants complain that the Court erred in refusing to give their requested "curative" instructions to the jury that the use of these items could not be considered in determining

whether Defendants used excessive force and that the use of nunchukus and the spit mask was a reasonable use of force, as a matter of law.  Id.  These contentions are frivolous. Plaintiffs' counsel did nothing improper.  As part of his summary of the events in question, counsel stated once during his opening statement that nunchukus and a spit mask were used on the Decedent.  Counsel did not claim that the use of those items constituted excessive force nor did he even mention them in his closing argument.  In any event, to the extent that Defendants were concerned about the mere mention of the nunchukus or spit mask, they should have filed a motion in limine and/or interposed a timely objection.  Given defense counsel's failure to do so, Defendants have waived any claim of error or prejudice.  See Getz, 654 F.3d at 868; Gill, 61 F.3d at 693.

Even if Plaintiffs' counsel's brief mention of the nunchukus and spit mask were improper—which it was not—Defendants have failed to show any prejudice, let alone prejudice sufficient to warrant a new trial.  Plaintiffs' counsel made no mention of these items in their closing argument, and never argued to the jury that the use of the nunchukus by Officer Jones and application of the spit mask by Officer Watson were unreasonable or excessive.  If anything, it was Defendants who insisted on highlighting this matter at trial. In addition to offering an exemplar of a spit mask at trial, Defendants repeatedly questioned and elicited testimony from their own witnesses, including Officers Laird and Watson, Cameron and Hall, regarding the use of a spit mask and nunchukus on the Decedent—even though Plaintiffs' counsel had not previously questioned them about those matters.  See Trial Sheet at 3 (spit mask exemplar offered as defense Exhibit C); 9/16/11 & 9/21/11 RT at 50:10-13 (Cameron direct testimony), 52:9-18 (same).[7]  Had defense counsel reviewed the trial transcript, instead of relying on their flawed recollection of the trial proceedings, they would have realized this.  See Fed. R. Civ. P. 11(b).  At bottom, any prejudice resulting from references to the spit mask and nunchukus was of Defendants' own making.

---

[7] Such testimony was also elicited by defense counsel during the redirect examination of Bryan Hall on September 16, the cross-examination of Officer Laird on September 14 and 15, and the direct examination of Officer Watson on September 15.

For the above reasons, the Court further finds that there was no need for a "curative" instruction.[8] If anything, Defendants' proposed, specially-prepared instructions would have likely confused the jury by interjecting non-issues into their deliberations. Moreover, Defendants' assertion that Plaintiffs' counsel's singular reference to the nunchukus and the spit mask during opening statements prejudicially permeated the entire proceeding and resulted in a verdict borne of passion and prejudice strains credulity. At trial, there was <u>overwhelming</u> evidence and testimony establishing that Officers Laird, Winkle and Whitmer viciously beat the Decedent with their fists, knee strikes, kicks and baton strikes— and that their use of force was unreasonable under the circumstances. Given the record presented at trial, it is clear that Plaintiffs' counsel's brief reference to the use of nunchukus and a spit mask does not warrant a new trial.

### b)   Reference to Rodney King

Prior to trial, the parties agreed that "no reference shall be made to well-publicized incidents involving purported police misconduct." Defs.' Mots. in Limine No. 4 at 5, Dkt. 127. Given the parties' agreement, which obviated the need for a court order, the Court denied as moot Defendants' motion in limine to exclude such references. Order re Mots. in Limine at 21, Dkt. 147. Defendants now complain that Plaintiffs' counsel violated their agreement when witness Valente, who personally observed the incident, allegedly "likened the circumstances here to the Rodney King incident during direct examination[.]" Defs.' Mot. at 8.

Though Defendants neglect to cite to or provide copies of the record containing the testimony at issue, it appears that they are referring to the following exchange during Valente's direct testimony:

---

[8] Defendants' supplemental proposed jury instruction no. 6 read as follows: "The use of nunchukus on the decedent, during the incident was a reasonable use of force and cannot be used to determine that the defendant police officers used excessive force." Defs.' Am. Proposed Jury Instructions at 17, Dkt. 221. Proposed instruction no. 7 stated: "The placement of the spit mask by law enforcement during the incident was a reasonable use of force and cannot be used to determine that the defendant police officers used excessive force." <u>Id.</u> at 18. The Court declined to give either instruction.

Q.     Okay.  When you were seeing him getting hit in the head, at  that point what were you thinking?

A.     Shock.

Q.     Why?

A.     I never seen -- the only thing I seen like that was on TV, <u>Rodney King</u>.  I never seen anything like that.  Especially by -- maybe by people fighting, but never a police officer doing that to a person.

Sarmiento Decl. Ex. 1 at 8:12-15 (emphasis added).

Defendants assert that Valente's reference to Rodney King violated the parties' agreement to avoid referring to well-publicized cases involving police conduct.  Because Defendants did not object the question nor to Valente's testimony which had been elicited, any claim of error based on the admission of his testimony has been waived.  See <u>Gill</u>, 61 F.3d at 693.  Their argument also fails on the merits.  Despite Defendants' assertions to the contrary, Valente did not make a broad reference to the Rodney King matter.  At most, he made single mention of that case in the course of explaining why he was shocked by what he observed.  And even if Valente's remark were improper, there is no evidence that such testimony was inappropriately elicited by Plaintiffs' counsel or otherwise resulted in a verdict based on passion and prejudice.[9]

### c)     *Reference to a Prior Trial*

As an ancillary matter, Defendants accuse Plaintiffs' counsel of engaging in misconduct as a result of Valente's testimony, which allegedly referred to his concern about the officers "getting off" in a "first trial."  Def.'s Mot. at 8.  Again, Defendants fail to provide any citations to the record, and as such, the actual basis of their argument, if any, is not entirely clear.  Nonetheless, their argument appears to be based on direct testimony offered by Valente regarding his reasons for agreeing to testify as a witness:

---

[9] Defendants inaccurately claim that the reference to Rodney King "occurred in the atmosphere of protests by Oscar Grant supporters, whom the Court had to admonish to cease making disrespectful sounds during the testimony of the officers."  Defs.' Mot. at 2.  Oscar Grant was killed by a Bay Area Rapid Transit police officer in an incident unrelated to the instant case.  There were no "protests" inside or outside the courtroom, however.  Nor was it established that the few persons observing were associated with the Oscar Grant matter.  The Court maintained proper decorum inside the courtroom throughout the trial.

- 23 -

Q.     At some point did you feel, as a citizen, that you needed to come forward and say what you saw?

A.     Yeah -- yes, I did. And I wrestled with it for a while until I -- it came down to the last minute where they were going to get off and I had to do something. So I went to the Eureka Reporter. Is the only thing I knew to do.

Q.     Let me ask you this: you saw what happened that day, is that true?

A.     Yes.

Q.     And then at some point did you see newspaper articles regarding the incident?

A.     I don't think so. I don't think I -- I don't read their paper very much to tell you the truth.

Q.     Why did you decide to come forward?

A.     Because I have a huge conscience. And I was hoping if it was me, someone else would come forward, too, so I wouldn't die in vain.

Q.     Who did you go contact?

A.     Heather Muller (phonetic) from the Eureka Reporter.

Q.     And did she -- did someone contact you, some investigators or detectives at some point?

A.     Yeah. I had two interviews with her. The first one was kind of anonymous. I just told her my story.

       And then I reckon I -- they were going to let him off. It was coming down to the end of the trial, and I called her and said, what can I do?

       She goes, the only thing I can do for you is you give me your name and where you work.

       So I wrestled on it for a few days, kind of scared, what should I do, and then I just called her and said okay.

Q.     Okay. And then did you -- eventually were you interviewed by a detective --

A.     Yes.

Q.     Or an investigator?

A.     Yes. After he knew my name and where I worked, the next day there was someone there.

Q.     Okay. And did you then answer their questions that they had at that time?

A.     Yes.

Q.     And did you explain what you saw?

A.     Yes.

9/14/11 RT at 10:13-12:1 (emphasis added). According to Defendants, Valente's testimony created the appearance that, as in the Rodney King case, there was a prior state court trial

where the officers were acquitted, and therefore, jurors were led to believe that it was "now up to the federal system to 'punish' the officers." Defs.' Mot. at 8.  They further claim that the Court erred in refusing to allow Defendants to elicit testimony from other witnesses that there was no previous trial or give their proposed curative instruction stating that there was no prior trial.  Id. at 8, 10.[10]

As an initial matter, Defendants have waived any claim of error based on their failure to object to Valente's testimony when it was offered.  See Gill, 61 F.3d at 693. Defendants also waived any error by failing to cross-examine Valente on this issue.  See United States v. King, 552 F.2d 833, 844 (9th Cir. 1976) ("[B]y failing to avail themselves of the opportunity to cross-examine the Government witnesses . . . the appellants . . . gave up . . . the right . . . to object to future use of the testimony.").  Defendants admit their failure to cross-examine Valente on this point, but assert that they did so intentionally so as not to draw further attention to the issue.  Instead, Defendants contend that they should have been allowed to "impeach" Valente by establishing through testimony from other witnesses that there was no prior trial.  However, having chosen not to cross-examine him, there was no foundation upon which to impeach Valente.  See McConney v. United States, 421 F.2d 248, 251 (9th Cir. 1969)  Moreover, Defendants' claim that they decided against cross-examining Valente regarding his reference to another trial to avoid highlighting the issue is uncompelling given that the examination of other witnesses would have focused

---

[10] The proposed instruction read:  "There has been no previous trial involving the circumstances that are the subject of this lawsuit."  Defs.' Proposed Supp. Instruction by City Defs., Dkt. 237.

1   more attention on this entirely collateral issue.  See Fed. R. Evid. 403.  Defendants cannot

2   have it both ways.[11]

3       Next, Defendants contend that a new trial is required based on the Court's related

4   decision not to give a curative instruction to the jury that there was "no previous trial."

5   Erroneous instructions as well as the failure to give adequate instructions may, in some

6   instances, present grounds for a new trial.  See Murphy v. City of Long Beach, 914 F.2d

7   183, 187 (9th Cir. 1990).  In particular, the movant must show that there was instructional

8   error and that such error was prejudicial.  See Tritchler v. Cnty. of Lake, 358 F.3d 1150,

9   1154 (9th Cir. 2004).  In evaluating whether a particular jury instruction was erroneous, the

10  court must consider the jury instructions as a whole, and whether they "fairly and

11  adequately cover the issues presented, correctly state the law, and are not misleading."

12  Duran v. City of Maywood, 221 F.3d 1127, 1130 (9th Cir. 2000).

13      In the instant case, Defendants do not contend that the jury instructions, as a whole,

14  were misleading or misstated the law.  Rather, they insist that without the purported

15  curative instruction, the jury was misled into believing that there was a prior trial and that

16  Defendants would "get[] off" if they did not find in favor of Plaintiffs.  Defs.' Mot. at 8.

17  Setting aside the entirely speculative nature of such argument, Defendants' recourse was

18  cross-examine Valente while he was on the witness stand.  The proposed instruction was

19  little more than a belated attempt by Defendants to rectify the error of their own strategic

20  decision.  In addition, Defendants ignore the fact that the proposed instruction would have

21  likely confused and/or mislead the jury.  Aside from Valente's stray remark, there was no

22  other testimony, statement or comment regarding another trial.  As such, the instruction

23

---

24  [11] The Court is particularly troubled by Defendants' attempt to insulate themselves
    from the consequences of their decisions by now making claims of error that could have
    been addressed during the course of trial.  As the Ninth Circuit aptly observed in Bird v.

25  Glacier Elec. Coop., Inc., 255 F.3d 1136, 1145 (9th Cir. 2001): "Doubtless,
    contemporaneous objections at trial are to be encouraged.  Where objections are made,

26  there may be an opportunity for the trial judge to foreclose further error or to provide a
    curative instruction[.]"  In the case of Valente, Defendants admittedly made a strategic

27  decision not to cross-examine him under the misplaced assumption that they would be able
    to examine other witnesses on this particular issue.  As a result, Defendants must live with

28  the consequences of their decision.

---

would, after the close of testimony, likely have confused the jury regarding a tangential, immaterial matter and unnecessarily interjected factual questions regarding Valente's credibility to which no objection had been made.

### d) Reference to a "Situation" in Fullerton

Equally without merit is Defendants' contention that Plaintiffs' counsel improperly mentioned a police matter in Fullerton, California, during closing arguments. Defs.' Mot. at 8-9. In the course of arguing for the imposition of punitive damages, Plaintiffs' counsel made the following remarks:

> And then the last issue is punitive damages against the officers. That's separate and apart from the compensatory damages for the loss of a life and the pain and suffering.
>
> They all got up there and said we are basically broke. Well, we make 60 or $70,000 a year, but we don't have many assets.
>
> Well, what they did is wrong. They took a man's life. What they did is wrong. And as a society, we don't want this happening to people. We don't. We don't want it happening to people.
>
> <u>We had a recent situation down in Southern California, similar facts situation to this in Fullerton, but we don't want this happening to people.</u> And these officers should be held accountable. Their actions, and you are going to have a question was it malicious, oppressive, or done with reckless disregard. When you read the definition, intent to cause injury, reckless disregard for their safety, you are going to find, yes, punitive damages are appropriate in this case for what they did in not getting him medical attention.

9/22/11 RT at 7:17. Plaintiffs' counsel did not elaborate or provide any details on the Fullerton matter or mention it again during closing arguments.

Defendants did not object, claiming that "[a]t the time of closing arguments were made, [they] had no knowledge of the matter." Defs.' Mot. at 9. After trial, however, Defendants apparently learned that the Fullerton case involved a police officer who was criminally charged in the killing of a homeless man, and that published news reports regarding the case were available at or around the time closing arguments were made. Defs.' Mot. at 9; Kloeppel Decl. Ex. C, Dkt. 257. As such, Defendants now contend that opposing counsel violated their agreement to avoid mention of other well-publicized police

brutality cases.  Def.'s Mot. at 9.  They further aver that mention of the Fullerton case was particularly prejudicial since both cases involved the beating of a homeless person.  Id.

Defendants' arguments are meritless.  As an initial matter, to the extent that Defendants took exception to Plaintiffs' counsel's remarks, defense counsel should have objected and sought appropriate relief from the Court.  See Bird, 255 F.3d at 1145.  In the absence of a timely objection, a new trial is warranted only if Defendants have shown a "plain or fundamental error" that calls into serious question "the integrity or fundamental fairness of the proceedings [at trial.]"  Id. at 1148.  Defendants have made no such showing, as their claim of prejudice is entirely speculative and unsubstantiated.  Aside from briefly mentioning the Fullerton matter, Plaintiffs' counsel provided no details regarding the case.  The fact that there may have been news reports available at or around the time closing arguments were made is inapt.  The fact that defense counsel—who are much more likely to be aware of other high-profile police brutality cases—admittedly had "no knowledge" of the Fullerton matter suggests that it is highly unlikely that the average juror would know of the details regarding that case.  In sum, the Court finds that Plaintiffs' counsel's bare mention of the Fullerton matter does not amount to misconduct nor does it warrant a new trial.

### e)   *"Inflammatory" Remarks*

Finally, Defendants aver that Plaintiffs' counsel violated the Court's in limine order when he stated during closing arguments that the Decedent was "beat . . . into submission," 9/22/11 RT at 99:2, and used similar "inflammatory terms to describe the incident."  Defs.' Mot. at 9.[12]  To the extent that Defendants objected to Plaintiffs' counsel's characterizations of their conduct, they should have interposed an objection at that time.

---

[12] All of the other citations to the record provided by Defendants pertain to points during closing arguments where Plaintiffs' counsel used the word "beat" or some form thereof.  See Defs.' Mot. at 9; 9/22/11 RT at 22:3-4 ("This poor guy, he's handcuffed, he's all beat up, they are pushing him forward."); 22:18-19 ("He was beat pretty bad."); 80:22-23 ("if anyone's loved one or friend had been beaten like that by the police, they would want to be checked out."); 90:19-20 ("Getting someone in handcuffs, fine.  But not beating someone like this.").

1   Having failed to do so, Defendants' have waived any claim of error.  That aside, there was

2   nothing improper in Plaintiffs' counsel's characterization of the officers' conduct toward

3   the Decedent.

4           The Court's in limine order was specifically directed at Plaintiffs' expert, Roger

5   Clark, and precluded him from offering "inflammatory" characterizations of the police

6   officers' conduct, including using terms such as "pummeled," "beating the dickens out of,"

7   and "beat into submission."  Order re Mots. in Limine at 22 (addressing Defendants'

8   motion in limine no. 8).[13]  Neither Defendants' motion in limine nor the Court's order was

9   directed at Plaintiffs' counsel.  Nor were any limitations imposed on closing arguments.

10  The Court also rejects Defendants' contention that Plaintiffs' counsel's remarks were

11  "inflammatory."  The overwhelming evidence presented at trial demonstrated that the three

12  Defendant officers <u>repeatedly</u> inflicted blows to the Decedent's body throughout his body

13  with their fists, knees, legs and batons as he lay on the ground.  As such, Plaintiffs' counsel

14  had a substantial evidentiary basis upon which to argue to the jury that the officers "beat"

15  the Decedent.

16                  **3.      Evidentiary Rulings**

17          In addition to seeking a new trial on the grounds of attorney misconduct, Defendants

18  contend that a new trial is warranted based on the following allegedly erroneous evidentiary

19  rulings:  (1) permitting Plaintiffs to present evidence regarding the Decedent's pain and

20  suffering; (2) disallowing other witnesses from testifying that there was no prior trial; (3)

21  declining to give curative instructions in response to Plaintiffs' alleged "violations of

22  agreements as to motions in limine" and the references to nunchukus and the spit mask; and

23  (4) refusing to permit their expert Cameron to "provide expert testimony regarding the

24  _____

25          [13] In their reply, Defendants argue for the first time that Roger Clark violated the
    Court's in limine order by offering "various inflammatory phrases and terms used through
    the trial, such as 'beat into submission.'"  Defs.' Reply at 6 (citing Supp. Kloeppel Decl.

26  Ex. A at 37:6-23).  The Court does not consider new arguments presented in a reply brief.
    <u>In re Rains</u>, 428 F.3d 893, 902 (9th Cir. 2005).  Defendants also mischaracterize Clark's

27  testimony.  He did not testify that the Decedent was "beat into submission" by the officers.
    Rather, he merely stated that the purpose of a baton is to "repel and protect," as opposed to

28  "beating someone into submission."  9/15/11 RT at 37:8-13.

                                    - 29 -

1   training of law enforcement officers as to risks of injury from trained tactics and

2   appropriate evaluation of related medical care needs."  Defs.' Mot. at 5, 6, 10. "A new trial

3   is only warranted on the basis of an incorrect evidentiary ruling if the ruling substantially

4   prejudiced a party."  United States v. 99.66 Acres of Land, 970 F.2d 651, 658 (9th Cir.

5   1992).  The Court concludes that under this standard, the rulings which form the basis of

6   Defendants' motion do not justify a new trial.

7         Defendants' first three arguments are the same as those which the Court has

8   considered and rejected above.  With respect to their fourth argument regarding Cameron,

9   Defendants contend that they are entitled to a new trial on the ground that the Court

10  improperly limited the scope of his opinions.  At trial, Defendants sought to have Cameron

11  accepted as an expert in three areas:  (1) the use of force; (2) training police officers to

12  identify when medical care is needed; and (3) identifying when an officer no longer needs

13  to monitor the condition of a detainee.  9/16/11 RT at 57:11-15.  Plaintiffs did not object to

14  Cameron as a use of force expert, but did object to his being accepted as an expert as to the

15  remaining subjects on the grounds they were beyond the scope of his expert disclosure

16  report under Federal Rule of Civil Procedure 26(a)(2).  Id. at 59:14-16.  The Court held a

17  sidebar conference with counsel and granted Defendants the opportunity to establish that

18  they properly disclosed him with respect to the two areas in dispute.  Id. at 59:17-65:7.

19  After reviewing Defendants' Rule 26 report, the Court found that Cameron was, in fact, not

20  disclosed as an expert qualified to render expert opinions in the areas of medical care or the

21  need to monitor the condition of a detainee.  Id. at 65:5-6.  As a result, the Court sustained

22  Plaintiffs' objections and limited Cameron's testimony to the use of force, as disclosed.  Id.

23        Rule 26(a)(2)(B) requires each party to identify any expert witness that it may call

24  during trial.  The disclosure must be accompanied by the expert witness's signed written

25  report which discloses:  (1) a complete statement of all opinions the witness will express

26  and the bases and reasons for the opinions; (2) the facts or data considered by the witness in

27  forming their opinions; (3) any exhibits that will be used to summarize or support their

28  opinions; (4) the witness's qualifications, including a list of all publications authored in the

previous ten years; (5) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and (6) a statement of the compensation to be paid for the study and testimony in the case.  Fed. R. Civ. P. 26(a)(2)(B).  A party must provide its expert witness disclosures "at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a) (2)(C). "Rule 37(c)(1) gives teeth to this requirement" by automatically excluding any evidence not properly disclosed under Rule 26(a), irrespective of the party's bad faith or willfullness.  Yeti by Molly Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001); e.g., Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963, 969 n.5 (9th Cir. 2006) ("It is not an abuse of discretion to exclude a party's expert testimony when that party failed to disclose the expert report by the scheduling deadline and that party reasonably could have anticipated the necessity of the witness at the time of the deadline.").

In the instant case, Defendants do not dispute that their Rule 26 report failed to disclose Cameron as an expert in the areas of training police officers to identify when medical care is needed and identifying when an officer no longer needs to monitor the condition of a detainee.  Rather, citing Lanard Toys Ltd. v. Novelty, Inc., 2010 WL 1452527 (9th Cir. Apr. 13, 2010), Defendants argue that Plaintiffs cannot claim either prejudice or surprise resulting from Cameron's undisclosed opinions on the theory that they had the opportunity to depose him on these issues. Defs.' Mot. at 11.[14]  However, Lanard merely ruled that notwithstanding Rule 37(c)(1), a district court retains discretion to excuse the failure to timely comply with Rule 26's disclosure requirements if the failure to disclose was "justified or is harmless."  2010 WL 1452527, at *6 (citing Yeti by Molly, 259 F.3d at 1106-1107).  In this case, Defendants have offered no justification for their non-disclosure. Nor have they shown that the non-disclosure was harmless.

The mere fact that Plaintiffs had the opportunity to depose Cameron before trial is of little moment.  It is axiomatic that one of the purposes of Rule 26's disclosure requirement

_____

[14] Lanard is unpublished and therefore is not precedential under Ninth Circuit Rule 36-3.

1   is to place the opposing party on notice of the expert's opinions to enable them to determine

2   what areas to explore with the expert, as well as to determine whether to designate rebuttal

3   experts.  Given Defendants' failure to disclose Cameron's opinions relating to training,

4   Plaintiffs had no reason to, and did not, expend time and resources in questioning him on

5   undisclosed opinions.  See Kloeppel Decl. Ex. B, Dkt. 257.  Given these circumstances, the

6   Court finds, as it did during trial, that Defendants' failure to disclose Cameron's opinions

7   on the matters pertaining to training was neither justified nor harmless.  The Court's

8   limitation on the scope of Cameron's testimony was entirely justified and thus does not

9   justify a new trial.

10                   **4.      Claims Against Officer Whitmer**

11          Lastly, Defendants argue that Officer Whitmer is entitled to judgment as a matter of

12   law on Plaintiffs' claim for deliberate indifference to serious medical needs.  Defs. Mot. at

13   12-15.  They contend that because the jury found in his favor on Plaintiffs' excessive force

14   claim, the verdict against him on the deliberate indifference claim necessarily is

15   "inconsistent" and therefore must be set aside.  Alternatively, Plaintiffs contend that Officer

16   Whitmer is entitled to a new trial.

17          The fundamental flaw in Defendants' argument is that it ignores the legal

18   distinctions between a claim for excessive force and a claim for deliberate indifference to

19   serious medical needs.  Allegations of excessive force are examined under the Fourth

20   Amendment's prohibition on unreasonable seizures, and require a showing that the law

21   enforcement official used objectively unreasonable force on the plaintiff.  See Graham v.

22   Connor, 490 U.S. 386, 394 (1989).  In contrast, a deliberate indifference claim, which is

23   grounded on the Fourteenth Amendment, is shown where the official is aware of a serious

24   medical need and fails to adequately respond.  Simmons v. Navajo Cnty., Ariz., 609 F.3d

25   1011, 1018 (9th Cir. 2010).  Defendants cite to no authority in support of their contention

26   that a finding of no liability on an excessive force claim compels the same finding on a

27   claim for deliberate indifference to serious medical needs.

28

Defendants next assert that the jury lacked a substantial basis for its finding that Officer Whitmer was deliberately indifferent.  Defs.' Mot. at 13.  Specifically, they argue that Officer Whitmer did not witness the use of "force indicating any significant injury," did not observe any injuries on the Decedent and was not involved in transporting him to the HCCF.  Id.  However, Defendants' failure to bring a Rule 50(a) motion challenging the sufficiency of the evidence as to Officer Whitmer forecloses their ability to do so through a Rule 50(b) motion.  Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003) ("A party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion.").  The Court further rejects Defendants' argument based on their failure to provide any citations to the record to support their conclusory assertions.  See United States v. Rewald, 889 F.2d 836, 852 n.7 (9th Cir. 1989) (noting that the failure to provide citations to the record to support claim of error "would justify rejecting [appellant's] claim entirely.").

There was more than ample evidence and testimony presented at trial for the jury to find Officer Whitmer liable on Plaintiffs' deliberate indifference claim.  Officer Whitmer testified that he witnessed the other officers repeatedly strike the Decedent with their batons and kick him as he lay on the ground.  In addition, Officer Whitmer admitted—and other witnesses confirmed—that he kicked the Decedent and struck him with his baton.  While the other officers restrained the Decedent on the ground, Officer Whitmer sprayed the Decedent directly in the face with pepper spray from a distance of only seven inches.  Although aware of the considerable amount of force used against the Decedent, not once did Officer Whitmer bother to check on the Decedent's well-being or assess whether he required medical attention.  Notably, Officer Whitmer conceded that a person subjected to the amount of force which the officers had used on Decedent may require medical attention beyond that which could be provided at HCCF, and that he had offered to follow Officer Laird in case he wanted to take the Decedent to the hospital.  From this and other evidence presented at trial, the jury could easily find that Officer Whitmer knew of, but ignored, the Decedent's serious medical needs.  Based on the record presented, the Court concludes that

Officer Whitmer is entitled to neither judgment as a matter of law nor a new trial.  See Wallace v. City of San Diego, 479 F.3d 616, 624 (9th Cir. 2007) ("A jury's verdict must be upheld if it is supported by substantial evidence.").

## III.   MOTION TO STAY ENFORCEMENT OF JUDGMENT

The second motion before the Court is Defendants' motion to stay enforcement of the judgment pending appeal.  Dkt. 261.  Defendants first contend that they are entitled to an automatic stay of the judgment without a supersedeas bond under Federal Rule of Civil Procedure 62(f).  In the alternative, they request that in the event that Rule 62(f) is found inapplicable, that the Court waive the bond requirement.  Finally, Defendants argue that if the bond is not waived that the Court set the bond amount based solely on the $75,000 punitive damage award.  Plaintiffs challenge each of Defendants' contentions.

### A.   AUTOMATIC STAY

Under Federal Rule of Civil Procedure 62(a), a district court's judgment becomes final and enforceable fourteen days after judgment is entered.  "At that time, a prevailing plaintiff is entitled to execute upon a judgment."  See Columbia Pictures Tel., Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1197 (9th Cir. 2001).  In general, to stay the execution of a judgment, the appellant must post a supersedeas bond.  Fed. R. Civ. P. 62(d). "The stay takes effect when the court approves the bond."  Id.  The purpose of a supersedeas bond is to secure an appellee from a loss that may result from the stay.  Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1505 n.1 (9th Cir. 1987). "The posting of a bond protects the prevailing plaintiff from the risk of a later uncollectible judgment and compensates him for delay in the entry of the final judgment."  NLRB v. Westphal, 859 F.2d 818, 819 (9th Cir. 1988).

Defendants contend that they are entitled to a stay as a matter of right without a supersedeas bond under subsection (f) of Rule 62, which states:

> **Stay in Favor of a Judgment Debtor Under State Law**.  If a judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor is entitled to the same stay of execution the state court would give.

Fed. R. Civ. P. 62(f) (emphasis added).  Under this rule, a judgment debtor is entitled to a stay in federal court only if, under California law, (1) the judgment is a lien on the property of the judgment debtor and (2) the judgment debtor would be entitled to stay if the judgment were rendered in state court.  Aldasoro v. Kennerson, 915 F. Supp. 188, 190 (S.D. Cal. 1995).

The parties dispute whether the first prong of Rule 62(f), i.e., that "the judgment is a lien on the judgment debtor's property under the law of the state where the court is located," has been satisfied.  Under California law, a judgment is not a lien unless and until such time as the creditor records the judgment in the county where the debtor's property is located.  See Cal. Code. Civ. Proc. § 697.310(a) ("a judgment lien on real property is created under [California Code of Civil Procedure § 697.310] by recording an abstract of a money judgment with the county recorder.") (emphasis added); see also id. § 697.060(a) ("An abstract or certified copy of a money judgment of a court of the United States that is enforceable in this state may be recorded to create a judgment lien on real property . . . .") (emphasis added).  In view of these requirements, California district courts have uniformly concluded that a federal judgment rendered in California does not trigger the provisions of Rule 62(f).  Aldasoro, 915 F. Supp. at 190 (denying request for stay of judgment under Rule 62(f) on the ground that "a judgment is not a lien on real property in California"); accord Ribbens Int'l v. Transport Int'l Pool, Inc., 40 F. Supp. 1141, 1143 n.2 (C.D. Cal. 1999) ("California is not a state in which a judgment is automatically a lien upon the property of the judgment debtor."); Acevedo-Garcia v. Vera-Monroig, 296 F.3d 13, 17-18 & n.5 (1st Cir. 2002) (citing Aldasoro with approval and holding that Rule 62(f) is inapplicable since Puerto Rico law provided that a judgment becomes a lien only after the creditor obtains a writ of attachment from the court).

Defendants urge the Court to disregard Aldasoro and its progeny, arguing that the "relatively minor action of recording or filing a judgment" to transform a judgment into a lien under California law does not foreclose application of Rule 62(f).  Defs.' Reply at 3,

1   Dkt. 272.  Defendants cite <u>Hoban v. Wash. Metro. Area Transit Auth.,</u> 841 F.2d 1157, 1158

2   (D.C. Cir. 1988) and <u>Smith v. Village of Maywood</u>, No. 84-2269, 1991 WL 277629, at *1

3   (N.D. Ill. Dec. 20, 1991) which concluded that Rule 62(f) applies where the applicable state

4   law provided that a judgment, once recorded, operated as a lien on real property of the

5   debtor.  Neither opinion, however, provides any legal analysis or cites any decisional

6   authority to support this conclusion.  In addition, neither decision addresses the plain

7   language of Rule 62(f), which specifies that the debtor is entitled to a stay only where the

8   "judgment *is* a lien . . . ."  Fed. R. Civ. P. 62(f) (emphasis added); <u>see</u> <u>Whittlestone, Inc. v.</u>

9   <u>Handi-Craft Co.,</u> 618 F.3d 970, 973 (9th Cir. 2010) ("Our interpretation of the Federal

10  Rules of Civil Procedure begins with the relevant rule's 'plain meaning.'").  For these

11  reasons, the Court finds neither decision persuasive.

12      Even if the judgment at issue constituted a lien against Defendants' property under

13  California law, Defendants have not demonstrated that the second prong of Rule 62(f) has

14  been met.  Defendants rely on California Code of Civil Procedure § 995.220, which

15  provides that:

16      Notwithstanding any other statute, if a statute provides for a
        bond in an action or proceeding, including but not limited to a
17      bond for issuance of a restraining order or injunction,
        appointment of a receiver, or stay of enforcement of a judgment
18      on appeal, <u>the following public entities and officers are not</u>
        <u>required to give the bond</u> and shall have the same rights,
19      remedies, and benefits as if the bond were given:

20          (a)  The State of California or the people of the state, a
        state agency, department, division, commission, board, or other
21      entity of the state, or a state officer in an official capacity or on
        behalf of the state.

22          (b)  A county, <u>city</u>, or district, or public authority, public
        agency, or other political subdivision in the state, or an officer
23      of the local public entity in an official capacity or on behalf of
        the local public entity.

24          (c)  The United States or an instrumentality or agency of
        the United States, or a federal officer in an official capacity or
25      on behalf of the United States or instrumentality or agency.

26  Cal. Code Civ. Proc. § 995.220 (emphasis added).

27      Defendants are correct that § 995.220(b) relieves the City of the requirement to post

28  a bond to secure a stay of a money judgment.  See <u>Whittier Redevelopment Agency v.</u>

Oceanic Arts, 33 Cal.App.4th 1052, 1059 (1995) ("Under section 995.220, subdivision (b) plaintiff [a public redevelopment agency] is exempt from the bond requirements otherwise required to stay enforcement of a money judgment.").  Officers Laird, Winkle and Whitmer, however, were sued in their individual capacities.  As such, the officers are outside the purview of § 995.220(b).  Defendants attempt to sidestep this critical distinction, claiming that "the individual officers have been defended in this action by the City of Eureka, and the judgments against them, upon approval by the City Council, will be paid by the City."  Defs.' Reply at 5.[15]  That contention misses the point.  Nothing in § 995.220(b) states or suggests that its provisions may be extended to a non-enumerated party who has been represented and may be indemnified by a covered entity.  Tellingly, Defendants cite no authority to support their novel interpretation of this statute.

Defendants further contend that even if the officers are not exempted from the bond requirement under § 995.220(b), only $75,000 of the judgment (i.e., punitive damages award) is attributable to them, and that the remaining $4,500,000 of the judgment would be automatically stayed under Rule 62(f).  This argument incorrectly assumes that the $4,500,000 compensatory damage award was levied only against the City.  To the contrary, the compensatory damage award was rendered against the City and the individual officers, who are jointly and severally liable for the judgment.  See Hervey v. Estes, 65 F.3d 784, 792 (9th Cir. 1995) (parties sued under § 1983 may be held jointly and severally liable for their actions).  Thus, even if the City were exempted from the bond requirement under

---

[15] Though not cited by Defendants, California Code of Civil Procedure § 825(a) provides, in relevant part, that:  "If the public entity conducts the defense of an employee or former employee against any claim or action with his or her reasonable good-faith cooperation, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed."  A public entity may pay punitive damages only in the event it finds that (1) the employee was acting within the course and scope of his or her employment, (2) at the time of the incident the employee acted, or failed to act, in good faith, without actual malice and in the apparent best interests of the public entity, and (3) payment of the claim or judgment would be in the best interests of the public entity.  Cal. Code Civ. Proc. § 825(b).  The City has yet to decide whether it will indemnify the individual officers for the punitive damage award.  Additionally, nothing in § 825 provides that an employee indemnified by his or her employer under that section also is entitled to the shelter of § 995.220(b) where, as here, the employees are sued in their individual capacity.

§ 995.220(b), the officers remain potentially liable for the full amount of the damages awarded by the jury.

### B.    DISCRETIONARY WAIVER

Defendants submit that if Rule 62(f) is deemed inapplicable that the Court waive the bond requirement on the theory that the City has sufficient resources to satisfy the judgment. District courts have "inherent discretionary authority in setting supersedeas bonds[.]" Rachel, 831 F.2d at 1505 n.1. This includes the "discretion to allow other forms of judgment guarantee," International Telemeter, Corp. v. Hamlin International Corporation, 754 F.2d 1492, 1495 (9th Cir. 1985), and "broad discretionary power to waive the bond requirement if it sees fit," Townsend v. Holman Consulting Corporation, 881 F.2d 788, 796-97 (9th Cir. 1989). Generally, "the amount of the bond should be sufficient to pay the judgment *plus* interest, costs and any other relief (e.g. attorney fees) the appellate court may award." Christopher A. Goelz & Meredith J. Watts, California Practice Guide: Ninth Circuit Civil Appellate Practice ¶ 1:168 (TRG 2011). "The purpose of a supersedeas bond is to secure the appellees from a loss resulting from the stay of execution and full supersedeas bond should therefore be required." Rachel, 831 F.2d at 1505.

The appellant has the burden to "objectively demonstrate" the reasons for departing from the usual requirement of a full supersedeas bond. Poplar Grove Planting & Refining Co., Inc. v. Bache Hasley Stuart, Inc., 600 F.2d 1189, 1191 (5th Cir. 1979). A waiver of the bond requirement may be appropriate where: (1) "the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money"; and (2) "the opposite case, . . . where the requirement would put the defendant's other creditors in undue jeopardy." Olympia Equip. Leasing Co. v. W. Union Tel. Co., 786 F.2d 794, 796 (7th Cir. 1986). When determining whether to waive the supersedeas bond requirement, courts have examined the following criteria:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the

1
2

> defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

3  Dillon v. City of Chicago, 866 F.2d 902, 904-905 (7th Cir. 1988) (internal citations and

4  quotation marks omitted); United States v. Moyer, No. C 07-00510 SBA, 2008 WL

5  3478063, at *12 (N.D. Cal. Aug. 12, 2008) (noting that district courts within the Ninth

6  Circuit "regularly use these factors") (Armstrong, J.).

7         Here, Defendants contend that through the self-insurance pool provided by Redwood

8  Empire Municipal Insurance Fund ("REMIF") and the California Joint Powers Risk

9  Management Authority ("CJPRMA"), the City has sufficient funds to pay the judgment.

10  Clovis Decl. ¶ 2, Dkt. 261-1; Ferguson Decl. ¶ 2, Dkt. 261-3.  The Court is not persuaded

11  by Defendants' showing.  While the representatives from REMIF and CJPRMA assert that

12  there are no coverage issues, neither of them states that their respective funds will

13  unconditionally satisfy the judgment in this action.[16]  "[U]ntil there is absolute certainty

14  that the [entity] has agreed unconditionally to pay the judgment in this case, the mere

15  existence of such possibility is an unacceptable substitute for the guarantees provided by a

16  supersedeas bond."  Perez Rodriguez v. Rey Hernandez, 304 F. Supp. 2d 227, 231 (D.P.R.

17  2004).

18         In any event, Defendants' ability to pay the judgment is but one of many factors the

19  Court is to consider in connection with a request to waive a supersedeas bond.  See Dillon,

20  866 F.2d at 904-905.  Defendants' motion neglects to address any of the other Dillon

21  factors, and the Court declines to do so sua sponte.  See Indep. Towers of Wash. v. Wash.,

22  350 F.3d at 929 ("Our adversarial system relies on the advocates to inform the discussion

23  and raise the issues to the court. . . .  [W]e have held firm against considering arguments

24

25  _____

[16] Defendants attempt to rectify these evidentiary deficiencies by submitting expanded, reply declarations from Messrs. Ferguson and Byrne Conley.  Reply at 6-7; Ferguson Reply Decl., Dkt. 272-2; Clovis Reply Decl., Dkt. 272-2.  It is improper,

26  however, to submit new factual information in a reply brief.  See Tovar v. U.S. Postal Serv., 3 F.3d 1271, 1273 n.3 (9th Cir. 1993) ("To the extent that the [reply] brief presents

27  new information, it is improper."); Docusign, Inc. v. Sertifi, Inc., 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) (striking new information and opinions in an expert's

28  supplemental declaration submitted with a reply brief).

1  that are not briefed.").  Thus, the Court, in its discretion, finds that Defendants have failed

2  to make a persuasive showing that a waiver of the bond requirement is warranted in this

3  case.

4        **C.**    **BOND AMOUNT**

5        Defendants argue that should the Court require a bond that the amount of such bond

6  be for $75,000, the amount of the punitive damage award, on the ground that the REMIF

7  and CJPRMA will cover any the remaining compensatory damages portion of the

8  judgment.  This argument fails for the reasons set forth above.

9        Plaintiffs request that the Court require a bond in the amount of 1.25 to 1.5 times the

10  $4,575,000 judgment.  Pls.' Opp'n at 6, Dkt. 270.  Rule 62(d) is silent as to the required

11  amount of a supersedeas bond.  Fed. R. Civ. P. 62(d).  "The predecessor to present [Federal

12  Rule of Civil Procedure] 62(d), originally Civil Rule 73(d), had directed that the amount of

13  the bond be computed by the district court to include 'the whole amount of the judgment

14  remaining unsatisfied, costs on the appeal, interest, and damages for delay, unless the court

15  after notice and hearing and for good cause shown fixes a different amount or orders

16  security other than the bond.'"  <u>Poplar Grove Planting and Refining Co.</u>, 600 F.2d at 1191.

17  Although Rule 62(d) lacks similar language to its predecessor, "it has been read

18  consistently with the earlier rule."  <u>Id.</u>  "Although practices vary among judges, a bond of

19  1.25 to 1.5 times the judgment is typically required."  <u>See</u> Christopher A. Goelz &

20  Meredith J. Watts, California Practice Guide: Ninth Circuit Civil Appellate Practice ¶ 1:168

21  (TRG 2011)).  Accordingly, to stay execution of the judgment pending appeal, Defendants

22  must file a supersedeas bond equal to 125% of Plaintiffs' $4,575,000 award, i.e.,

23  $5,718,750.  <u>See</u> <u>Am. Ass'n of Naturopathic Physicians v. Hayhurst</u>, 227 F.3d 1104, 1109

24  (9th Cir. 2000) (holding that district court acted within its discretion in ordering defendant

25  to post a $30,000 bond to secure a $11,900 judgment).

26

27

28

IV.    **CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.      Defendants' Motion for Judgment as a Matter of Law, or in the Alternative, Motion for a New Trial is DENIED.

2.      Defendants' Motion to Stay Enforcement of Judgment is DENIED.

3.      This Order terminates Docket 256 and 261, and supersedes Docket 295, which is stricken.

IT IS SO ORDERED.

Dated:  March 16, 2012

SAUNDRA BROWN ARMSTRONG
United States District Judge