UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

SIEHNA M. COTTON, *et al.*,

Plaintiffs,

v.

CITY OF EUREKA, CALIFORNIA, *et al.*,

Defendants.

_____________________________________/

No. C 08-04386 SBA (LB)

**REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION FOR ATTORNEY FEES**

[ECF No. 289]

## I. INTRODUCTION

This report and recommendation addresses Plaintiffs' motion for $957,187.50 in attorneys' fees, which the district court referred to this court.[1] See ECF No. 289. This lawsuit stems from the death of Martin Cotton II ("Decedent"), who died of a head injury. Plaintiffs – Decedents' father and minor daughter – sued the City of Eureka and Humboldt County, claiming that the injury occurred when Eureka police officers beat him during his arrest. First Am. Compl., ECF No. 27 ¶¶ 25-32.

Decedent died shortly thereafter while in custody at the Humboldt County Correctional Facility (and under the supervision of county jail correctional officers). Plaintiffs claimed federal civil rights violations for excessive force and deliberate indifference to serious medical needs, Monell liability, and violation of their fourteenth amendment right to familial association, and they also asserted

[1] The court also referred a related fee dispute between Plaintiffs' attorneys. *See* ECF No. 300. The court will issue a separate report and recommendation addressing regarding that dispute.

related state law claims.

The parties generally refer to the "City Defendants," meaning the Eureka police officers, and the "County Defendants," generally the Humboldt County Correctional Officers." *See, e.g.*, Mot., ECF No. 251 at 17. The court uses that nomenclature here. Following Defendants' summary judgment motions, the district court dismissed the excessive force claims against the County Defendants and denied summary judgment for the claim of deliberate indifference to serious medical needs for five of the six named officers. ECF No. 208 at 34-35. On September 9, 2011, Plaintiffs and the County Defendants settled the remaining claims for $100,000, with $42,856.56 going to attorneys' fees and costs. *See* Notice of Settlement, ECF No. 213.

The district court also granted summary judgment in the City Defendants' favor on Plaintiffs' excessive force claims against Officers Jones and Watson. ECF No. 208 at 28-29. Prior to trial, the parties dismissed Officers Siipola and Franco by stipulation. ECF Nos. 140, 163.

The case proceeded to trial against the City of Eureka and Officers Laird, Winkle, and Whitmer. After a six-day trial, the jury ruled in Plaintiffs' favor on the majority of the remaining claims. Specifically, the jury found:

1. Officers Laird and Winkle used excessive force against Decedent;
2. Officers Laird, Winkle, and Whitmer had been deliberately indifferent to Decedent's serious medical needs;
3. Officers Laird, Winkle, and Whitmer failed to obtain medical care for Decedent, in violation of Cal. Gov't Code § 845.6; and
4. Officers Laird, Winkle, and Whitmer's actions interfered in Martin Cotton Sr.'s right to familial association under the Fourteenth Amendment.

ECF No. 245. The jury ruled for Officer Whitmer on the excessive force claim and in favor of Eureka on Plaintiffs' *Monell* claim. The jury awarded compensatory damages of $4,000,000 to Decedent's daughter and $500,000 to Decedent's father, and it levied $75,000 in punitive damages against the individual officers. *Id.*

The court reviewed all pleadings and materials, heard oral argument on Plaintiffs' Motion for Attorneys' Fees, and **RECOMMENDS** that the district court **GRANT** Plaintiffs' Motion and **RECOMMENDS** that the district court award **$727,904.00** in attorneys' fees. Tables summarizing

UNITED STATES DISTRICT COURT
For the Northern District of California

the requested and recommended fees are on pages 25-27.

## II. LEGAL STANDARDS

### A. Statutory Authority for Awarding Plaintiffs Attorneys' Fees

Plaintiffs' successful first, second, and eighth causes of action assert claims for civil rights violations under 42 U.S.C. § 1983. Compl., ECF No. 27 at 8-11, ¶¶ 38-60 and at 18, ¶¶ 102-07. The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b), authorizes district courts to award "a reasonable attorney's fee" to prevailing civil rights litigants. "The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotation omitted). Thus, Plaintiffs may seek attorneys' fees incurred in prosecuting their case under this statute.

### B. Calculating Fees Under Federal Law

In the Ninth Circuit, the proper method for determining reasonable attorneys' fees is to use the "lodestar method." *Hensley*, 461 U.S. at 433 (1983); *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). First, the trial court calculates attorneys' fees by multiplying the number of hours reasonably spent by counsel by a reasonable hourly rate. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). In setting the rate, the district court also should consider the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975). The *Kerr* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*

After deciding the appropriate hourly rate, the district court then examines the fee applicant's contemporaneously recorded billing records and exclude from the lodestar amount hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Then, in appropriate cases, the district court may adjust the lodestar figure based upon the *Kerr* factors that were not

subsumed into the initial lodestar calculation. *McGrath v. Cnty. of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995). There is a strong presumption that the lodestar figure represents a reasonable fee, and any upward or downward adjustment of that figure is proper only in "rare and exceptional cases." *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal citations omitted).

## III. DISCUSSION

### A. Overview of the Parties' Positions

#### 1. Plaintiffs' Requested Attorneys' Fees

Plaintiffs assert that they are the prevailing parties in this action and are entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988. ECF No. 251 at 4. At the time they filed the instant motion, Plaintiffs requested that the court award $925,520 in attorneys' fees incurred in the underlying lawsuit. ECF No. 251 at 19. After factoring in adjustments and billing records submitted in supplemental declarations, Plaintiffs' fee request now stands at $957,187.50. *See* Pls.' Proposed Order, ECF No. 276-1. The fees, itemized by attorney and hours billed, are as follows.

| Attorney | Hours Worked | Hourly Rate | Total |
|---|---:|---:|---:|
| Dale K. Galipo | 687.8 | $700 | $481,460.00 |
| Vicki I. Sarmiento | 802.7 | $575 | $461,552.50 |
| Melanie Partow | 14 | $375 | $5,250 |
| John Fattahi | 23.8 | $375 | $8,925 |
| **Total** | | | **$957,187.50** |

#### 2. Defendants' Challenges to Plaintiffs' Requested Awards

The city of Eureka and Officers Winkle, Laird, and Whitmer do not dispute that Plaintiffs are the prevailing parties in this action or that Plaintiffs may recover reasonable attorneys' fees. Defs.' Opp'n, ECF No. 258 at 1. However, Defendants contend that the requested fees are unreasonable because: (1) Plaintiffs seek hourly rates that are excessive and unjustified; (2) Plaintiffs have not met their evidentiary burden to establish their rates; (3) Plaintiffs have requested fees for work that was exclusively related to Plaintiffs' claims against the County Defendants; and (4) Plaintiffs improperly seek fees for travel time.

UNITED STATES DISTRICT COURT
For the Northern District of California

**B. Prevailing Party Status**

As indicated above, 42 U.S.C. § 1988(b) authorizes an attorneys' fees award to a party who prevails on a claim brought pursuant to 42 U.S.C. § 1983. For purposes of attorneys' fees, a plaintiff may be considered the "prevailing party" if he succeeds on any significant issue in litigation which achieves some of the benefit he sought in bringing suit. *Hensley*, 461 U.S. at 433. Here, it is undisputed that Plaintiffs are the prevailing parties for the purposes of the fee request. Specifically, the Plaintiffs prevailed, in significant part, in their claims for excessive force, deliberate indifference to serious medical needs, and violation of Martin Cotton, Sr.'s 14th Amendment right to familial association. Jury Verdict, ECF No. 245. The court, therefore, turns to the lodestar analysis to determine the reasonable fees that Plaintiffs may recover.

**C. Calculation of the Lodestar Figure**

To determine the presumptive amount of attorneys' fees that Plaintiffs may recover, the court must calculate the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. The court first will evaluate whether Plaintiffs' counsel's billing rates are reasonable and then will examine the reasonableness of the time billed.

**1. Counsel's Reasonable Hourly Billing Rates**

The first step in the lodestar analysis requires the district court to determine a reasonable hourly rate for the fee applicant's services. This determination is made by examining the prevailing market rates in the relevant community charged for similar services by "lawyers of reasonably comparable skill, experience and reputation." *Hensley*, 461 U.S. at 433; *Blum v. Stevenson*, 465 U.S. 886, 895 n. 11 (1984); *Davis v. City and Cnty. of San Francisco*, 976 F.2d 1536, 1545-46 (9th Cir. 1992). The "relevant community" for these purposes is the district in which the lawsuit proceeds. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997); *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its attorneys, that the requested rates are appropriate. Once the fee applicant has met its burden, the opposing party "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the

UNITED STATES DISTRICT COURT
For the Northern District of California

prevailing party in its submitted affidavits." *Gates*, 978 F.2d at 1397. A district court also may consider its own expert knowledge and experience in setting an hourly rate for the lodestar calculation. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Plaintiffs can satisfy their burden of production in various ways. Affidavits of the fee applicant's attorney and other attorneys regarding prevailing fees in the community and rate determinations in other cases, particularly those setting a rate for the attorneys, may be sufficient to establish reasonable hourly rates. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Davis v. City & Cnty. of San Francisco*, 976 F.2d at 1547; *see Blackwell v. Foley*, 724 F.Supp. 2d 1068, 1079 (N.D. Cal. 2010) (looking to rates awarded to counsel in previous cases as evidence of the market value of their services). That said, reasonable hourly rates are "not made by reference to rates actually charged the prevailing party." *Schwarz v. Sec'y of Health and Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (quotation omitted).

**2. Whether Counsel's Billing Rates are Reasonable**

To demonstrate the prevailing market rate for their services, Plaintiffs have submitted their own declarations and declarations submitted by several Los Angeles area attorneys. Ms. Sarmiento's declaration also includes a billing rate survey submitted in an unrelated case that details the hourly rates charged by some California attorneys. Finally, Plaintiffs cite two cases that discuss hourly rates in the San Francisco market. The court will first analyze the declarations and cases supporting Plaintiffs' requested rates, then analyze the *Kerr* factors relevant to its recommendations, and finally discuss the hourly rate appropriate for each attorneys' time.

a. Declarations of Billing Professionals

Plaintiffs have submitted the declarations of other attorneys in support of their fee application.[2]

---

[2] The court has reviewed Defendants' numerous objections to statements in the Grimes, Hoffman, Burton, and Becerra declarations. Defs.' Objections, ECF No. 259. To the extent Defendants object to the declarations as evidence of the attorneys' reputations in the Los Angeles community, they are overruled. Each declarant establishes a sufficient basis for his opinion. Because the court does not rely on the declarations for any other purpose, it need not rule on Defendants' remaining objections.

Defendants criticize Plaintiffs' supporting evidence as generally failing to show reasonable rates in the relevant marketplace and failing to demonstrate that Plaintiffs' attorneys could garner those rates. *See* ECF No. 258 at 8. The court agrees that these declarations provide little support for Plaintiffs' fee application. First, except for the Declaration of Danilo Becerra, the opinions are limited to the Los Angeles marketplace. *See Schwarz*, 73 F.3d at 908 (rejecting as unhelpful to a fee inquiry information about similarly qualified attorneys in markets other than the relevant community). Second, attorney declarations that fail to explain whether the rates sought are comparable to the declarant's rates, or whether the rate might be different depending on the type of case, provide little support for a fee application. *See Schwarz*, 73 F.3d at 908; *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1264 n. 9 (9th Cir. 1987). With those concerns in mind, the court will discuss each declaration separately.

(1) Declaration of Milton C. Grimes

Mr. Grimes states that he has practiced law for over 37 years and has tried over 300 cases. Grimes Decl., ECF No. 252-4 2, at ¶ 2. Mr. Grimes has worked closely with Ms. Sarmiento on over 20 cases and considers $575 per hour to be a reasonable hourly rate for her services. *Id.* at 2-3, ¶¶ 3, 6. In contrast, Mr. Grimes's declaration does not indicate he has ever worked with Mr. Galipo, merely that he is familiar with some of Mr. Galipo's cases. Nonetheless, he believes that Mr. Galipo's requested rate is within the range of the prevailing rates awarded to attorneys with Mr. Galipo's trial experience. *Id.*

From Defendants' perspective, Mr. Grimes's declaration is not probative of reasonable rates in the San Francisco marketplace. Mr. Grimes does not indicate that he has ever tried a case in this district or that he has expert knowledge of rates in this district. He does not state the rates he charges his clients or the rates that he has been awarded in previous cases. On balance, the court finds that because Mr. Grimes neither offers an opinion regarding the rates in the San Francisco marketplace nor explains the basis for his opinion, his declaration is not dispositive of reasonable rates in this district.

(2) Declaration of Paul L. Hoffman

Mr. Hoffman states that he has practiced law in Los Angeles since 1976. Hoffman Decl., ECF

UNITED STATES DISTRICT COURT
For the Northern District of California

No. 252-5 at ¶ 1. He indicates that the California Court of Appeals, Second Appellate District, recently affirmed an hourly rate of $750 for his services in a civil rights case. *Id.* at 2, ¶¶ 2, 6. Mr. Hoffman also states that he is familiar with Ms. Sarmiento's and Mr. Galipo's skills and expertise and that their requested rates are consistent with the market rate for lawyers of comparable skill and experience in the Los Angeles community. *Id.* at ¶¶ 4-6. Mr. Hoffman's opinions are limited solely to the Los Angeles community, and that is not the same as providing information about rates in the Northern District of California. They, therefore, have little bearing on this court's hourly rate determination.

(3) Declaration of John Burton

Mr. Burton states that he has been practicing law for 32 years and specializes in police misconduct civil rights litigation. Burton Decl., ECF No. 252-6 at ¶ 2. Mr. Burton studies attorney billing rates in Southern California, some of which he has attached to his declaration. *Id.* at ¶ 9, Exs. A and B. In 2010, Mr. Burton was awarded an hourly rate of $600 in the Central District of California. *Id.* at 4, ¶ 10. Finally, Mr. Burton states that he thinks he should now be compensated at $750 per hour because his status in the legal community has increased since 2010, though he does not explain the basis for this opinion. *Id.* Mr. Burton's input is limited to the Southern California market and provides no support in establishing the market rates for Plaintiffs' services. Mr. Burton's declaration, therefore, provides little support for Plaintiffs' motion.

(4) Declaration of Danilo Becerra

Mr. Becerra states that he is familiar with the work of Ms. Sarmiento and Mr. Galipo and finds their rates to be reasonable. Becerra Decl., ECF No. 252-7 at 2-3, ¶¶ 3-7. Specifically, Mr. Becerra finds Ms. Sarmiento's requested hourly rate to be in line with market rates in Los Angeles and in the San Francisco Bay Area for attorneys who prevail in similar civil rights cases. Mr. Becerra, however, does not indicate that $575 per hour is reasonable for an attorney of Ms. Sarmiento's skill, experience, and reputation. *Id.* at 2-3, ¶ 5. While Mr. Becerra states that Mr. Galipo's requested hourly rate is reasonable and consistent with the rates awarded to attorneys with his trial experience, he does not indicate whether that is true for the San Francisco marketplace. *Id.* at ¶ 6. Finally, Mr. Becerra states that he is familiar with rates in the San Francisco Bay Area as he has handled cases in

the Northern District. Still, Mr. Becerra does not provide the bases for his opinions: he does not explain when he last tried a case in this district, how many cases he has tried here, or the types of cases he has tried. On balance, the court finds that Mr. Becerra's declaration provides some support for Ms. Sarmiento's hourly rate and less support for Mr. Galipo's.

b. Westlaw CourtExpress Market Survey

Plaintiffs also seek to establish the reasonableness of their requested rates through survey evidence. Motion, ECF No. 251 at 16. Specifically, Plaintiffs submit a 2009 declaration filed in an unrelated case that includes excerpts from a WestLaw CourtExpress Legal Billing Report ("CourtExpress Report") showing prevailing rates for legal services in California. Sarmiento Decl., ECF. No 252 at 46, Ex. 2. In response, Defendants argue that the rates cited do not represent fees for "similar services" as discussed in *Blum*, 465 U.S. at 898-99. Opp'n, ECF No. 258 at 11. They correctly point out that the five firms listed in the report handle complex commercial rather than civil rights litigation and one of the firms does not even have an office in the Bay Area. *Id.* In reply, Plaintiffs point to dicta in *Blum* equating civil rights litigation with antitrust and other complex federal litigation matters. Pls.' Reply, ECF No. 260 at 10. The court agrees with Plaintiffs that the proper scope of comparison for establishing reasonable hourly rates "extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (emphasis added and internal quotation omitted).

Assuming the court could take judicial notice of the CourtExpress Report, it would not be probative of the market rates for Plaintiffs' services in this district for several reasons. First, Plaintiffs have not established that the CourtExpress Report indicates the rates charged by attorneys engaged in litigation of any type, let alone equally complex federal litigation. Instead, the CourtExpress Report was compiled from fee applications submitted to bankruptcy courts across the country. *See* Sarmiento Decl., ECF No. 252 at 47-49. These would normally include rates charged by transactional attorneys as well as by litigators. Second, as Plaintiffs point out, the CourtExpress Report purports to show the rates for legal services in California but does not indicate which, if any, of the listed attorneys work in the San Francisco Bay area. *Id.* at 23, ¶ 5 (stating that the report

UNITED STATES DISTRICT COURT
For the Northern District of California

shows "prevailing rates for legal services in California") and ¶ 47 (report titled "California Regional Report"). Third, the Kemple Declaration states that the rates submitted are "excerpts from Westlaw CourtExpress," rather than the complete report, which might provide the court with more reliable and useful information. Finally, the CourtExpress Report fails to explain whether the rates cited were those actually charged and collected by the listed attorneys. *See Allen v. Bay Area Rapid Transit Dist.*, No. C 00-3232 VRW, 2003 WL 23333580, at *5 (N.D. Cal. July 31, 2003). In summary, the court finds that the CourtExpress Report is not probative evidence in support of Plaintiffs' requested hourly rates.

c. Cases Cited by the Parties

Finally, Plaintiffs suggest that the court should look to the Eastern District of California's award in *L.H. v. Schwarzenegger*, 645 F.Supp. 2d 888, 895 (E.D. Cal. 2009), a class action challenging the parole revocation process for juvenile parolees, as evidence of the 2008 hourly rates for attorneys in the San Francisco market. Pls.' Mot., ECF No. 251 at 14-15. Plaintiffs include a chart of attorney billing rates that was originally published in the *L.H.* opinion and suggest that this supports the reasonableness of their requested rates. *Id.* The chart reproduced in Plaintiffs' motion is merely a summary culled from declarations the *L.H.* plaintiffs submitted about San Francisco market rates. *See L.H.*, 645 F.Supp. 2d at 895. The defendants there offered no rebuttal evidence. *Id.*

The undersigned looks to the hourly rates actually awarded in *L.H.* as the appropriate comparators. *See Phelps Dodge Corp.*, 896 F.2d at 407. In *L.H.*, an attorney with more experience than either Mr. Galipo[3] or Ms. Sarmiento was awarded $475 per hour. Defendants argue that even the rates actually awarded in *L.H.* rates are poor comparators because that court based its award, in part, on the attorneys' "specific expertise" in "class action litigation, civil rights litigation, and youth law." *L.H.*, 645 F.Supp. 2d at 894; *see* Defs.' Opp'n, ECF No. 258 at 10. As Defendants point out, such expertise was not required to litigate the instant case. Defs.' Opp'n, ECF No. 258 at 10. The court accepts *L.H.* as evidence of the hourly rates that may be charged in the Northern District of California by attorneys who have been practicing as long as Ms. Sarmiento and Mr. Galipo. But

[3] *See infra* Part III(2)(e)(1),discussing Mr. Galipo's years of experience.

*Hensley* also requires the court to consider the similarity of the services provided, whether the attorneys have displayed reasonably comparable skill in the litigation, and the reputation of the attorneys. *See* 461 U.S. at 433. Each of these factors suggests the court should award hourly rates lower than those awarded in *L.H.*

First, Defendants argue that Plaintiffs' claims were significantly less complicated than the issues in *L.H.* Defs.' Opp'n, ECF No. 258 at 12. This lawsuit involved two plaintiffs and two groups of defendants. *L.H.*, on the other hand, was a class action seeking injunctive relief against various state officials and agencies regarding parole revocation policies. The *L.H.* matter was so complicated and risky that "no Sacramento firms [were] experienced and capable enough and willing to undertake such a suit." *Id.* at 894. Based on the the court's review of the pleadings, nothing in the record indicates that this suit was similarly complex.

Second, the *L.H.* court noted that the winning attorneys brought particular expertise to the matter because they also prevailed in a closely related class action. *Id.*[4] Third, the highest hourly rate – $640 – was awarded to an attorney who had been practicing for 28 years, and who had previously been named in published opinions as a "'genuine expert in the area of complex, institutional prison reform litigation' so as to merit exceptional fees." *Id.* at 895 (quoting *Lucas v. White*, 63 F.Supp. 2d 1046, 1061-62 (N.D. Cal. 1999)). Finally, the court noted that the same rates previously had been awarded for those attorneys' work in other prison litigation cases. *Id.*

In comparison, Mr. Galipo requests even more exceptional fees for work on a less complicated case when he has six fewer years of experience and neither the niche expertise nor the history of fee awards of the attorney in *L.H.* In summary, Plaintiffs' evidence counsels a downward departure from the rates requested by Mr. Galipo and, to a lesser degree, Ms. Sarmiento.

In their reply brief, Plaintiffs also proffer *Prison Legal News v. Schwarzenegger*, 608 F.3d 446 (9th Cir. 2010), in support of their requested hourly rates. Plaintiffs correctly point out that evidence

---

[4] In *L.H.*, the attorneys represented a class of juvenile parolees seeking changes to the parole revocation system; they had previously sued to change parole revocation policies for adult parolees. *L.H.*, 645 F.Supp. 2d at 895. The attorneys were from Rosen, Bien & Galvan, LLP, and included Michael Bien. *Id.*

in that matter showed that an unnamed attorney with 23 years of experience charged $700 per hour and an associate with 5 years' experience charged $325 per hour. Mot., ECF No. 260 at 16 (*citing Prison Legal News*, 608 F.3d at 455). As in *L.H.*, the court finds the rates actually awarded in the cited case to be more probative of the market than mere summaries of declarations. In *Prison Legal News*, the court awarded an hourly rate of $740 to a partner with 46 years of experience, $370 to an associate with 7 years of experience, and $340 for an associate with 5 years of experience. *Id.* at 450. The court further notes that *Prison Legal News* and *L.H.* involved the same law firm and some of the same attorneys, who were noted for their experience in prison litigation:

> That a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market. But there is such a thing as a high charger and a low charger, and the district judge is supposed to use the prevailing market rate for attorneys of comparable experience, skill and reputation, which may or may not be the rate charged by the individual attorney in question.

*Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006). The court finds that *L.H.* and *Prison Legal News* are evidence of what high-charging attorneys in the relevant community can garner, though not necessarily the rates that are appropriate for the attorneys in this matter.

In their Opposition, Defendants argue that Plaintiffs' requested rates are excessive and far above the market rates for Plaintiffs' counsel's services. Defs.' Opp'n, ECF. No. 258 at 11. Instead, Defendants suggest the court should be guided by *Blackwell v. Foley*, where the district court awarded $495 per hour to an attorney with 41 years of experience, primarily in complex disabled access litigation and $425 per hour to an attorney with 20 years of various litigation experience. 724 F.Supp. 2d 1068, 1082 (N.D. Cal. 2010). The court accepts *Blackwell* as somewhat probative of rates in this market. The value of *Blackwell* as a comparator is significantly lessened, however, because that court recognized the rates requested – and awarded – were "below market rates for attorneys with equal experience." Defendants also cite *Lopez v. San Francisco Unified School Dist.*, 385 F.Supp. 2d 981, 989 (N.D. Cal. 2005) (awarding $495 per hour for an attorney with 30 years of experience in civil rights litigation). The court does not consider *Lopez* to be probative of current rates, however, because it was decided 7 years ago.

Where, as here, Plaintiffs have failed to meet their burden of production, the district court is

permitted to place significant weight on its own knowledge of attorneys fees in the relevant community. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). Accordingly, the court will set the reasonable market rate for Plaintiffs' services after considering *L.H.*, *Blackwell*, *Prison Legal News*, and the cases listed in Appendix C as probative of market rates in the San Francisco Bay Area.

d. The *Kerr* Factors

The court will make its ultimate hourly rates recommendation by assessing the evidence using the rubric set out in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975). When deciding the appropriate hourly rate for counsel's services, a court may consider: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained. *Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988). The court will address each factor in turn.

First, this case does not strike the court as unusually novel or complex, particularly when compared to the cases cited by Plaintiffs. Second, the special skills and experience of counsel weigh in favor of a slightly higher award in this case. Both Mr. Galipo and Ms. Sarmiento established that they have significant experience in civil rights litigation and are well-regarded in the Los Angeles legal community. There is also little doubt Mr. Galipo and Ms. Sarmiento are experienced trial lawyers.[5] Still, the degree of specialization exhibited by counsel is not as specifically applicable as the attorneys in *L.H.* and *Prison Legal News*.

Finally, Plaintiffs' counsel obtained an excellent result for their clients. The jury granted Plaintiffs a large monetary award and levied punitive damages against the police officers involved. Plaintiffs' counsel's success is only partially tempered by their loss on the claims for failure to train and excessive force against Officer Whitmer. On balance, the court finds that the relevant *Kerr* factors counsel setting Plaintiffs' rates at amounts that are relatively high for the market but still lower than they have requested.

---

[5] The court is not convinced, however, that Mr. Galipo and Ms. Sarmiento have the same reputation and experience as the senior attorneys in the cases they offer in support of their rates.

e. Declarations of Plaintiffs' Counsel and Court's Recommended Hourly Rates

(1) Dale K. Galipo

Plaintiffs request that the court approve an hourly rate of $700 for Dale K. Galipo. Pls.' Mot., ECF No. 251 at 15. Defendants suggest the court award the $500 hourly rate awarded to Mr. Galipo in *Ingram v. City of San Bernadino*, No. EDCV 05-925-VAP (SGLx), 2007 WL 5030225 (C.D. Cal. Aug. 27, 2007). In his declaration, Mr. Galipo states that he "attended law school at UCLA from 1981 to 1984," and has managed his own law firm since 1991. Galipo Decl., ECF No. 252-1 at 2, ¶¶ 7-8. Noticeably, Mr. Galipo fails to state the length of his legal career in his declaration or in any other papers the court has been able to locate. The State Bar of California website, however, reveals that he was not admitted in California until December 1989, five years after he last attended UCLA law school. *See* State Bar of California Attorney Search, *available at* http://members.calbar.ca.gov/fal/Member/Detail/144074 (last visited June 28, 2012). Lacking further information, the court finds, for purposes of assessing attorneys' fees, that Mr. Galipo had at least 22 years of experience when this case went to trial.

While Mr. Galipo's practice initially specialized in personal injury, wrongful death, and criminal defense cases, at an unspecified date he also began to handle police misconduct civil rights litigation. *Id.* at 2, ¶ 8. Mr. Galipo has extensive trial experience and claims to have "tried in excess of one hundred and fifty civil cases through verdict" and "approximately fifty criminal felony cases." *Id.* at 2, ¶¶ 9-10.[6]

Mr. Galipo does not state the hourly rate he charges paying clients. Instead, he variously claims either that his regular rate is $700 per hour, Supp. Galipo Decl. in Reply to Defs.' Opp'n, ECF No. 260-2 at 2, ¶ 6 (referring to "my present hourly rate of $700"), or that he believes $700 per hour to

---

[6] The court notes that Mr. Galipo claims to have tried 150 cases "through verdict." In a July 2009 declaration, Mr. Galipo claimed that he had "tried approximately 80 civil cases through verdict...." Galipo Decl. at 1, ¶ 5 *McCown v. Fontana*, No. CV 05-05337 AG (VBKx) (C.D. Cal. July 27, 2009) (ECF No. 176). By February 1, 2011 – 18 months later – Galipo claimed he had tried 70 more civil cases "through verdict." *See* Galipo Decl. at 2, ¶ 9 *Gilbert v. City of Los Angeles*, No. CV 06-04770 GW AJW (C.D. Cal. Feb. 1, 2011) (ECF No. 117-1) ("I have tried approximately 150 civil cases through verdict").

be appropriate "[b]ased on the difficulty of this case and the skill, experience, and ability necessary to prevail…." Galipo Decl., ECF No. 252-1 at 5, ¶ 19. Lacking sufficient information of Mr. Galipo's regular rates, the court reviewed the dockets in some of Mr. Galipo's 2011 cases. This review shows that Mr. Galipo does not have a history of charging a $700 hourly rate. *See, e.g.*, *Carcamo v. Sec'y of the Dept. of Health and Human Servs.*, No. 07-483V, 2011 WL 2413345, at *1 (Fed. Cl. May 20, 2011) (requesting an hourly rate of $500 in a vaccine case because the case was complex as to both liability and damages)*;* Suppl. Decl. of Vicki I. Sarmiento in Supp. of Att'y Fee Request at 2, ¶ 4 *Ledesma v. City of Indio*, Case No. CV09-07917 JST (JCx) (C.D. Cal. Apr. 25, 2011) (ECF No. 57) ("Mr. Galipo's hourly rate of $500 has been approved in federal and state court"); Decl. of Dale K. Galipo in Supp. of Pls.' Mot. for Att'y Fees at 4, ¶ 16 *Gilbert v. City of Los Angeles*, Case No. CV 09-06685 DSF (AGRx) (C.D. Cal. Feb. 1, 2011) (ECF No. 117-1) (seeking an hourly rate of $600). At oral argument, Ms. Sarmiento stated that Mr. Galipo had, indeed, requested rates of $700 per hour in several 2011 cases. While the court accepts Ms. Sarmiento's representations, given the absence of documentary evidence supporting Mr. Galipo's $700 hourly rate claim and the strong evidence to the contrary, the court finds that Plaintiffs have not established that Mr. Galipo regularly charges $700 per hour.

Nor does Mr. Galipo claim that he has ever been awarded fees of $700 per hour in this or any other market, a relevant consideration for this court. *See Camarillo v. City of Maywood*, No. 07-3469, 2011 WL 3665028, at *7 (C.D. Cal. Aug. 22, 2011) ("The actual rate that an attorney can command in the market and customarily charges is itself highly relevant proof of the prevailing community rate."); *see also Velez v. Roche*, No. 02-337, 2004 U.S. Dist. LEXIS 29848, at *25 (N.D. Cal. Sept. 22, 2004). In fact, during the hearing in this matter, Ms. Sarmiento stated that she did not believe a court had ever awarded Mr. Galipo a $700 hourly rate.[7] On previous occasions, however, courts in the Central District of California awarded Mr. Galipo hourly rates of $500. *See Ingram v. San Bernadino*, No. EDCV 05-925-VAP (SGLx), 2007 WL 5030225 (C.D. Cal. Aug. 27, 2007)

[7] Ms. Sarmiento also argued that civil rights cases often settle while fee applications are pending, which results in fewer court-ordered fee awards.

(civil rights litigation); Order at 31 *Adams v. City of Rialto*, No. 04-cv-155-VAP (SGLx) (C.D. Cal. July 20, 2006) (ECF No. 154) (civil rights litigation). More recently, however, one federal court tentatively ruled that it would "almost certainly set Mr. Galipo's hourly rate lower than $500 per hour." Tentative Ruling at 4 *Gilbert v. City of Los Angeles*, Case No. CV 09-06685 DSF (AGRx) (C.D. Cal. Mar. 10, 2011) (ECF No. 129) (civil rights litigation).

On balance, the court finds that Plaintiffs have not met their burden to establish that a reasonable rate for Mr. Galipo's services in this market is $700 per hour. Instead, the $475 hourly rate awarded in *L.H.* is persuasive. The hourly rates previously awarded to Mr. Galipo are also persuasive, primarily as evidence of Mr. Galipo's reputation, since they were awarded by courts outside this district.

In sum, Plaintiffs posit $700 per hour, Defendants posit $500 per hour. The court recommends $525 per hour. While this is significantly lower than the excessive amount requested by Mr. Galipo, it seems to be the highest ever awarded for his services and is higher than that awarded to a more experienced attorney in *L.H* in 2008.

(2) Vicki I. Sarmiento

Plaintiffs request Ms. Sarmiento's work on this case be calculated at $575 per hour, which Ms. Sarmiento claims is her present billing rate. Motion, ECF No. 251 at 11; Sarmiento Decl., ECF No. 252 at 8, ¶ 12. Defendants suggest awarding a rate of $410 per hour. Opp'n, ECF No. 258 at 14. Ms. Sarmiento graduated from Hastings College of Law in 1986 and was admitted to the bar in 1988. Reply, ECF No. 260 at 16; Sarmiento Decl., ECF No. 252 at 3, ¶ 6. After law school, Ms. Sarmiento spent three years as a trial attorney for the Los Angeles City Attorney's Office. Sarmiento Decl., ECF No. 252 at 3, ¶ 6. In 1991, she moved into private practice, handling personal injury and civil rights cases. *Id.* Ms. Sarmiento first tried a civil rights police misconduct case in 1993. *Id.* at 6, ¶ 8. Since then, she has litigated numerous civil rights cases in state and federal court, several of which she describes in her declaration. *See id.* at 4-6, ¶ 7. In this matter, Ms. Sarmiento drafted most of the pleadings, handled the majority of the depositions, and was one of Plaintiffs' two trial counsel. *Id.* at 2, ¶ 3.

Ms. Sarmiento claims that her "present billing rate" of $575 per hour "is a very reasonable rate

and in the lower range of hourly rates for attorneys of comparable experience." *Id.* at 8, ¶ 12. Yet, in April 2011, Ms. Sarmiento's billing rate was only $350 per hour. Suppl. Decl. of Vicki I. Sarmiento in Supp. of Att'y Fee Request at 2, ¶ 5 *Ledesma v. City of Indio*, Case No. CV09-07917 JST (JCx) (C.D. Cal. Apr. 25, 2011) (ECF No. 57) (referring to "the undersigned's hourly rate of $350").

Plaintiffs' motion for attorneys fees does not indicate that Ms. Sarmiento has ever been awarded fees for her work. The court takes notice, however, that she was awarded fees at $350 per hour in at least two cases: *Ledesma v. City of Indio* and *Adams v. City of Rialto*. *See* Order at 2, *Ledesma v. City of Indio*, Case No. CV09-07917 JST (JCx) (C.D. Cal. Apr. 27, 2011) (ECF No. 60); and Order at 31, *Adams v. City of Rialto*, No. 04-cv-155-VAP (SGLx) (C.D. Cal. July 20, 2006) (ECF No. 154).

On balance, the court finds that Plaintiffs have not met their burden to establish that a reasonable rate for Ms. Sarmiento's services in this market is $575 per hour. As explained above, the court finds the hourly rates awarded in *L.H.* and the rates previously awarded to Ms. Sarmiento to be persuasive. While Plaintiffs request $525 per hour, and Defendants request $410 per hour, the court recommends assessing Ms. Sarmiento's time at the rate of $475 per hour. While this is lower than the amount requested by Ms. Sarmiento, it also seems to be nearly the highest ever awarded for her services[8] and is equivalent to the amount awarded to a more experienced attorney in *L.H.*

(3) Melanie T. Partow

Plaintiffs request an hourly rate of $375 for Ms. Partow's work on this matter. Motion, ECF No. 251 at 19. Ms. Partow's declaration establishes that she graduated from Southwestern University School of Law and passed the California Bar Examination in 2004. Partow Decl., ECF No. 252-3 at 2, ¶ 2. She was admitted to the California Bar in 2006 but has practiced federal civil rights litigation since 2004. *Id.* at 3, ¶ 4. She is currently managing 16 federal civil rights cases and has worked on

---

[8] At the hearing on Plaintiffs' motion, Ms. Sarmiento stated that in February, 2012, a court awarded her $500 per hour. This court accepts Ms. Sarmiento's representation. Except for counsel's statement, however, the court has no basis upon which to compare that case with the present one. Moreover, this court's independent hourly rate recommendation is only 5% lower than the highest amount Ms. Sarmiento seems to have been awarded.

over 32 federal civil rights cases alleging excessive force against law enforcement officers. *Id.* at 6, ¶ 5. Ms. Partow's declaration documents specialized expertise in civil rights litigation for an attorney with six years' experience. Similarly, the associates in *L.H.* and *Prison Legal News*, having similarly specialized were also awarded relatively higher rates. *See L.H.*, 645 F.Supp. 2d at 895-96 (awarding $360 per hour for associates with 6 years' experience); *Prison Legal News*, 608 F.3d at 450 (awarding $340 per hour for an associate with 5 years' experience). Given that this case was less complicated than either of those matters, however, the court recommends awarding a slightly smaller amount. *See Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996) (no abuse of discretion in district court's reduction of attorney's requested rate in excessive police force suit "because many of the issues were not complex"). In sum, while Plaintiffs request $375 per hour and Defendants request $270, the court recommends assessing Ms. Partow's time at the rate of $300 per hour.

(4) John C. Fattahi

Plaintiffs request an hourly rate of $375 for Mr. Fattahi's work on this matter. Mr. Fattahi graduated from UCLA School of Law in 2006, where he was Senior Editor of the UCLA Law Review. Fattahi Decl., ECF No. 252-2 at 2, ¶ 3. After graduating and passing the bar, Mr. Fattahi clerked for one year in the Central District of California. *Id.* He then spent 15 months working at the law firm of Quinn Emanuel Urquhart & Sullivan before joining the Law Offices of Dale K. Galipo. *Id.* In support of his requested rates, Mr. Fattahi submits the declaration of Eric Emanuel, a name partner at Mr. Fattahi's former firm. *Id.* at 5. Mr. Emanual states that, while Mr. Fattahi was employed at Quinn Emanuel, clients paid his billing rate of $365 per hour. *Id.*

The court finds the Emanuel declaration relatively unpersuasive. Mr. Fattahi's ability to bill a relatively higher rate while working at a prestigious firm provides weak evidence of his later billing rates. Considering the rates for associates discussed above, and in light of the *Kerr* factors, the court recommends assessing Mr. Fattahi's time at the rate of $280 per hour.

**3. Assessing the Reasonableness of the Hours Expended in Litigation**

Having recommended the billing rates, the court turns to the second component of the lodestar calculation: ascertaining the number of hours reasonably expended litigating this matter. Initially, the party seeking fees bears the burden of establishing the hours expended litigating the case and

must provide detailed time records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). "It is not sufficient for prevailing counsel to opine that all of the time claimed was usefully spent, and the district court should not uncritically accept counsel's representations concerning the time expended." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 n. 8 (9th Cir. 1987). In short, "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

After the party seeking fees has come forward with its evidence supporting the time billed, "[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992). The party opposing fees must specifically identify defects or deficiencies in the hours requested. Conclusory and unsubstantiated objections are insufficient to warrant a reduction in fees. *Cancio v. Fin. Credit Network, Inc.*, No. 04-CV-3755 THE, 2005 WL 1629809, at *3 (N.D. Cal. July 6, 2005).

Even if the opposing party has not objected to the time billed, the district court "may not uncritically accept a fee request" but is obligated to review the time billed and assess whether it is reasonable in light of the work performed and the context of the case. *Common Cause v. Jones*, 235 F.Supp. 2d 1076, 1079 (C.D. Cal. 2001) (citing *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984)); *see also McGrath v. County of Nevada*, 67 F.3d 248, 254 n.5 (9th Cir. 1995) (noting that court may not adopt prevailing party's representations without conducting an independent review of the fee application).

In fulfilling this responsibility, district courts have broad discretion to reduce the number of billable hours awarded. Courts have reduced fee awards where prevailing counsel engaged in inefficient or unreasonably duplicative billing, or where counsel's billing records contain insufficiently descriptive entries, show evidence of block billing, or billing in large time increments. *See e.g., Mendez v. County of San Bernardino*, 540 F.3d 1109 (9th Cir. 2008); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007).

UNITED STATES DISTRICT COURT
For the Northern District of California

**4. Whether the Hours Requested Are Reasonable**

As indicated above, Plaintiffs seek to recover $957,187.50 expended in litigating this case. *See* Pls.' Proposed Order, ECF No. 276-1. Defendants object to the reasonableness of the requested hours on the grounds that Plaintiffs did not provide sufficient evidence to justify their billing for travel time, and Plaintiffs should not be awarded fees for time expended solely to develop their case against the County Defendants. Defs.' Opp'n, ECF No. 258 at 6-8. In addition, the court takes seriously its obligation to critically review Plaintiffs' fee application instead of limiting its consideration the arguments made by Defendants. The court has identified additional billing discrepancies that it will discuss after addressing Defendants' objections.[9]

a. Billing for Travel

Defendants object to the fees requested for travel time. They argue that Plaintiffs have not submitted sufficient evidence that local customary practice permits attorneys to bill for travel time. Defs.' Opp'n, ECF No. 258 at 8. In reply, Plaintiffs correctly point out that, under Section 1988, this district has long granted prevailing parties their full hourly rate for travel time. Pls.' Reply, ECF No. 260 at 8-9 (citing *United States v. The City and Cnty. of San Francisco*, 748 F.Supp. 1416 (N.D. Cal. 1990)); *see also Blackwell v. Foley*, 724 F.Supp. 2d 1068, 1080 (N.D. Cal. 2010) (cited in Defendants' Opposition). Accordingly, Defendants arguments are unconvincing. The court also observes that both counsel say that they worked on the case while traveling. Galipo Decl., ECF No. 260-2 at ¶ 5; Sarmiento Decl., Ex. 260-1 at ¶ 9.

While Plaintiffs may recover fees for reasonably expended travel time, they still bear the burden of documenting that time accurately. Mr. Galipo and Ms. Sarmiento both claim that they have "attempted to maintain contemporaneous time records reflecting the work activity and time spent on this case." Galipo Decl., ECF No. 252-1 at ¶ 6; Sarmiento Decl., ECF No. 252 at ¶ 5. A cursory review of the billing records reveals that neither attorney followed this practice with regard to their

---

[9] While the court makes observations about the billing practices of Mr. Galipo and Ms. Sarmiento, these observations do not apply to their associates. Ms. Partow and Mr. Fattahi's billing records are thorough and clear. The court can assess the reasonableness of their work easily and recommends awarding full attorneys' fees for the hours requested.

UNITED STATES DISTRICT COURT
For the Northern District of California

travel time. Instead, they bill precisely 6.0 hours every time they travel between Los Angeles and Eureka and 3.0 hours every time they travel between Los Angeles and Oakland. *See* Defs.' Opp'n at Ex. B, ECF No. 258. "The lack of contemporaneous records does not justify an automatic reduction in the hours claimed, but such hours should be credited only if reasonable under the circumstances and supported by other evidence such as testimony or secondary documentation." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989). Here, the court finds that Plaintiffs have billed reasonable amounts of time for the distances that they traveled. Accordingly, the court recommends awarding Plaintiffs attorneys' fees for the travel time they billed.

b. Fees for Work Solely against County Defendants

Defendants also object that Plaintiffs seek fees for work performed solely to develop the case against the County Defendants and request these billing entries, identified in Attachment A to their Opposition, be denied. Defs.' Opp'n, ECF No. 258 at 6. Defendants request the court reduce the fees award by 87.8 hours at Ms. Sarmiento's rate, ECF No. 258 at 16-17, and 50 hours at Mr. Galipo's rate, *Id.* at 17. Defendants correctly point out that "unrelated time against dismissed defendants generally is not chargeable against the remaining defendants." *Id.* Defendants further contend that Plaintiffs' claims against the City and County Defendants were distinct and separable, permitting attorneys' fees to be divided on a claim-by-claim basis. *Id.* at 6-7. No claim or allegation against them, the Defendants argue, involved conduct occurring after Officers Laird and Winkle observed Mr. Cotton in the sobering cell, and reported to the correctional officers the force used during the encounter. *Id.* at 7.

Plaintiffs respond that they are permitted to recover attorneys fees for work that is related to litigation against the City Defendants and they explain how many of the entries in question are related. Pls.' Reply, ECF No. 260 at 6 (*citing Hensley*, 461 U.S. at 434). For example, the County Defendants' deposition testimony was relevant to determining the cause of Mr. Cotton's death and discovering whether the City Defendants made any statements about Mr. Cotton's arrest. *Id*. Plaintiffs also argue that fees for document discovery against the County Defendants should be awarded because Plaintiffs would have had to subpoena and review the same documents even if the County Defendants had never been a party. *Id.* Plaintiffs also point out that they billed only for

UNITED STATES DISTRICT COURT
For the Northern District of California

their initial review of the discovery they received from the County. *Id.* at 8.

With some exceptions, Plaintiffs' arguments are well-taken. The court agrees with Plaintiffs that taking the depositions of Humboldt County employees and reviewing their deposition transcripts and statements were related to the case against the City Defendants. Still, the court finds that Defendants' objections have some merit. If the County Defendants were not parties in this matter, they would not have filed initial disclosures, exhibit lists, and would not have designated experts in defense of their case. In addition, the court observes that Ms. Sarmiento also requests 3.5 hours for reviewing her time logs to eliminate work that related solely to the County Defendants. Sarmiento Decl., ECF No. 252 at 19 (10/7/2011 entry). The court agrees with Defendants that it would be improper to award fees for these billing entries, which took 17.5 hours of Ms. Sarmiento's time. *See infra*, Appendix B. Accordingly, the court recommends that the District Court deduct these billing entries, totaling 17.5 hours, from Plaintiffs' attorneys' fees award.[10]

c. <u>Billing Excessively High Hours in a Single Day</u>

Mr. Galipo claims to have billed more than 18 hours on multiple, consecutive days. *See Alvarado v. FedEx Corp.*, Case Nos. C 04-0098 SI, C 04-0099 SI, 2011 WL 4708133, at *17 (N.D. Cal. Sept. 30, 2011). In *Alvarado*, the court identified an attorney's habit of repeatedly billing for excessively long days of 18 hours or more as evidence of pervasive inflation supporting a a 40% across-the-board reduction in that attorney's fee award. In this case, between September 11 and September 15, 2011, Mr. Galipo claims to have billed 17 hours, 16 hours, 20 hours, 18 hours, and 19 hours, respectively. Galipo Decl., ECF No. 252-1 at 14. Again, on September 19 and 21, he billed 18 hours a day. *Id.* at 15. The court contrasts this to Mr. Galipo's pattern of billing while attending trial. He billed exactly 6.5 hours for time spent in trial on September 12, 14, 15, and 16. In contrast, Ms. Sarmiento's time entries those days vary from 5.5 hours to 8.5 hours, as would be expected. Sarmiento Decl., ECF No. 252 at 18. Furthermore, Mr. Galipo acknowledges that he did not

[10] Plaintiffs also voluntarily withdraw Ms. Sarmiento's 8/23/2010 billing entry for 3.0 hours spent preparing "Plaintiff's objections to County defendant jury instruction." *See* Sarmiento Decl. in Reply, ECF No. 260-1 at 4, ¶ 15, Defs.' Opp'n, ECF No. 258 at 16. This voluntary deduction is already reflected in Plaintiffs' adjusted fee request.

maintain contemporaneous billing records for the time he spent in trial, but reconstructed his time entries from his notes. Considering the lack of contemporaneous billing records, their vague descriptions, the inconsistencies between Mr. Galipo and Ms. Sarmiento's records, and Mr. Galipo's record of time entries, the court recommends awarding Mr. Galipo a maximum of 15 hours per day. At the June 28, 2012 hearing on Plaintiffs' motion for fees, the court raised this concern with Ms. Sarmiento. Ms. Sarmiento stated that she agreed with the court's recommendation. This reduces Mr. Galipo's fee award for September 11-15 and 19-21 by a total of 21 hours. Accordingly, the court RECOMMENDS the district court reduce Plaintiffs' fee award by an additional 21.0 hours at Mr. Galipo's hourly rate.

d. <u>Billing Inconsistencies</u>

The court also notes an inconsistency in Mr. Galipo's billing entries. On 12/10/2009, Mr. Galipo billed 13.0 hours in this matter, 6 hours of which were spent traveling. Galipo Decl. 252-1. On the same day, he billed 3.0 hours in the matter of *Gilbert v. Pearce*. *See* Galipo Decl. at Ex. B 7, *Gilbert v. Pearce*, No. 06-cv-4770-GW (AJWx) (C.D. Cal. Feb. 1, 2011) (ECF No. 117-3). Similarly, on 1/19/2010, Mr. Galipo billed 17.0 hours in this matter, including 12 hours of travel, and an additional 3.0 hours in *Gilbert*. After factoring in the unbillable time that accompanies business travel, the court finds these inconsistencies irreconcilable. The court, therefore, recommends reducing the award for Mr. Galipo's work by an additional 6.0 hours, the amount billed to the *Gilbert* file on these two days.

Finally, Ms. Sarmiento double-counted some of her time (and the court assumes that was accidental). In her declaration, she includes 6.0 hours for "Anticipated Response to Reply Brief." ECF No. 252 at 19. Ms. Sarmiento did not subtract this time when she later billed 22.8 hours for preparing her Response to Plaintiffs' Opposition. See Sarmiento Decl. in Reply, ECF No. 260-1. Accordingly, the court recommends reducing Ms. Sarmiento's fee request by an additional 6.0 hours. In summary, the court RECOMMENDS the district court reduce Plaintiffs' fee award by 12.0 hours (6.0 hours at Mr. Galipo's hourly rate and 6.0 hours at Ms. Sarmiento's) due to billing inconsistencies.

UNITED STATES DISTRICT COURT
For the Northern District of California

## IV. CONCLUSION

The court **RECOMMENDS** that the district court **GRANT** Plaintiff's Motion for Approval of Attorneys' Fees in the amount of $727,904.00. Charts are attached that summarize the conclusions in this report.

Any party may file objections to this Report and Recommendation with the district judge within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civil L.R. 72-3. Failure to file an objection may waive the right to review of the issue in district court.

**IT IS SO ORDERED**

Dated: July 5, 2012

LAUREL BEELER
United States Magistrate Judge

UNITED STATES DISTRICT COURT
For the Northern District of California

Appendix A
**Summary**

**1. Court's Recommended Fee Award**

| **Attorney** | **Hours Worked** | **Hourly Rate** | **Total** |
|---|---|---|---|
| Dale K. Galipo | 660.80 | $525 | $346,920.00 |
| Vicki I. Sarmiento | 779.20 | $475 | $370,120.00 |
| Melanie Partow | 14.00 | $300 | $4,200.00 |
| John Fattahi | 23.80 | $280 | $6,664.00 |
| **Total** | | | **$727,904.00** |

**2. Plaintiffs' Requested Fee Award**

| **Attorney** | **Hours Worked** | **Hourly Rate** | **Total** |
|---|---|---|---|
| Dale K. Galipo | 687.80 | $700 | $481,460.00 |
| Vicki I. Sarmiento | 802.70 | $575 | $461,552.50 |
| Melanie Partow | 14.00 | $375 | $5,250 |
| John Fattahi | 23.80 | $375 | $8,925 |
| **Total** | | | **$957,187.50** |

**3. Recommended Deductions**

**(a) Dale K. Galipo**

| **Reason for Deduction** | **Hours Claimed** | **Recommended Reasonable Hours** | **Running Total Recommended Hours** |
|---|---|---|---|
| Hours Requested | | | 687.80 |
| Double Billing | 6.00 | 0.00 | 681.80 |
| Excessively High Single-Day Billings | 21.00 | 0.00 | 660.80 |
| **Total** | | | **660.80** |

UNITED STATES DISTRICT COURT
For the Northern District of California

**(b) Vicki I. Sarmiento**

| **Reason for Deduction** | **Hours Claimed** | **Recommended Reasonable Hours** | **Running Total Recommended Hours** |
|---|---|---|---|
| Hours Requested | | | 802.70 |
| Work Related to Case Against County Defendants (*See* App. B) | 17.50 | 0.00 | 785.20 |
| Time for "Anticipated Response to Reply Brief" | 6.00 | 0.00 | 779.20 |
| **Total** | | | **779.20** |

UNITED STATES DISTRICT COURT
For the Northern District of California

Appendix B

**Work Related Solely to County Defendants**[11]

| | **Work Related Solely to County Defendants** | | |
|---|---|---|---|
| **Date** | **Notes** | **Billed Time** | **Allowed Time** |
| 5/13/10 | Reviewed Co. defendants Expert Designation | 2.0 | 0.0 |
| 5/14/10 | Reviewed Co. defendants Supplemental Expert Designation. | 1.0 | 0.0 |
| 6/7/10 | Reviewed Co. defendants supplemental disclosure of Expert Witnesses | 1.0 | 0.0 |
| 8/23/10 | Prepared Plaintiff's objections to County defendant jury instructions | 3.0 | 0.0 |
| 9/10/11 | Draft amended exhibit list removing County exhibits | 2.0 | 0.0 |
| 9/11/11 | Modify exhibit binders and oversee removal of exhibits related to county. | 5.0 | 0.0 |
| 10/7/11 | Review time log for exclusion of work solely attributable to County claims | 3.5 | 0.0 |
| | **Total** | **17.5** | **0.0** |
| | **Net Adjustment (Sarmiento Rate)** | **-17.5** | |

[11] The Notes column in the table contains verbatim quotes from Ms. Sarmiento's time entries.

Appendix C
**Cases Probative of Bay Area Market Rates**

| Rate | Years | Case | Notes |
|---|---|---|---|
| 450 | 37 | *Jones v. Metropolitan Life Ins. Co.* , No. C 08-03971, 2012 WL 604144, at *3 (N. D. Cal. Feb. 24, 2012) | ERISA Litigation |
| 585 | 25 | *San Francisco Baykeeper v. West Bay Sanitary District* , No. C-09-5676 EMC, 2011 WL 6012936, at *7, *9 (N.D. Cal. Dec. 1, 2011) | Clean Water Act Litigation - Attorneys specialized in public interest environmental litigation |
| 550 | 21 | | |
| 600 | 36 | *Lafever v. Acosta, Inc.* , No. C10-01782 BZ, 2011 WL 5416650, at *2-3 (N.D. Cal. Nov. 8, 2011) | Employment Litigation |
| 575 | 25 | | |
| 565 | 35 | *Hamed v. Macy's W. Stores* , No. 10-2790, 2011 WL 5183856 (N.D. Cal. Oct. 31, 2011) | Employment Litigation; Attorney described as having extensive trial |
| 350 | 22 | | |
| 600 | 31 | *White v. Coblentz, Patch, Duffy & Bass LLP Long Term disability Ins. Plan* , No. 10-1855, 2011 WL 5183854 (N.D. Cal. Oct. 31, 2011 | ERISA Litigation |
| 445 | 32 | *Muniz v. United Parcel Service, Inc* ., No. C 09-01987 CW, 2011 Wl 3740808, at *9-10 (N.D. Cal. Aug. 23, 2011) | Employment Litigation |
| 350 | 7 | | |
| 800 | 39 | *Stonebrae v. Toll Bros., Inc.* , No. C-08-0221 EMC, 2011 WL 1334444 at *16 (N.D. Cal. Apr. 7, 2011) | Real Estate Litigation |
| 675 | 35 | | |
| 495 | 41 | *Blackwell v. Foley* , 724 F.Supp. 2d 1068, 1082 (N.D. Cal. 2010) | Civil Rights Litigation; ADA - Court noted these were below market rates based on evidence in |
| 395 | 9 | | |
| 395 | 18 | | |
| 421 | 36 | *Mitchel v. City of Santa Rosa* , No. 09-5004, 2010 WL 2740069, at *2 (N.D. Cal. July 12, 2010) | Employment Litigation |
| 700 | 28 | *Campbell v. Nat'l Passenger R.R. Corp.* , 718 F.Supp. 2d, 1093, 1099-1102 (N.D. Cal. 2010) | Employment Litigation - Case was not novel or complex, but results were excellent, quality of representation outstanding, and risk |
| 625 | 49 | | |
| 265 | 3 | | |
| 245 | 2 | | |
| 740 | 46 | *Prison Legal News v. Schwarzenegger* , 608 F.3d 446, 450 (9th Cir. 2010) | Civil Rights Litigation - counsel has special expertise |
| 370 | 7 | | |
| 340 | 5 | | |
| 640 | 28 | *L.H. v. Schwarzenegger* , 645 F.Supp. 2d 888, 895 (E.D. Cal. 2009 | Civil Rights - class action, counsel had special expertise |
| 475 | 24 | | |
| 360 | 6 | | |



UNITED STATES DISTRICT COURT
For the Northern District of California