UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SIEHNA M. COTTON, a minor, by and Megan McClure, her guardian ad litem; and MARTIN COTTON, SR., an individual, | Case No: C 08-4386 SBA |
| Plaintiffs, | **AMENDED ORDER GRANTING JOINT MOTION TO VACATE JUDGMENT AND APPROVING APPLICATION FOR MINOR'S COMPROMISE** |
| vs. | |
| CITY OF EUREKA, CALIFORNIA, a political subdivision of the State of California, COUNTY OF HUMBOLDT, CALIFORNIA, a political subdivision of the State of California, et al., | Dkt. 327, 332 |
| Defendants. | |

The parties are presently before the Court on (1) the parties' Joint Motion to Vacate Judgment; and (2) Plaintiff's Application for Approval of Minor Siehna M. Cotton's Compromise. Dkt. 327, 331. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS both requests. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I. **BACKGROUND**

Plaintiffs Siehna M. Cotton ("Siehna") and Martin Cotton, Sr. ("Mr. Cotton"), filed the instant survival and wrongful death action pursuant to 42 U.S.C. § 1983 following the death of their father and son, Martin Cotton II ("Decedent"). A jury trial commenced on September 12, 2011, against the City of Eureka and police officers Justin Winkle, Adam Laird and Gary Whitmer. On September 23, 2011, the jury returned a verdict for Plaintiffs and awarded $4,000,000 in compensatory damages to Siehna, $500,000 in compensatory

damages to Mr. Cotton, and imposed punitive damages against the individual officers in the aggregate amount of $75,000.  Dkt. 245.  On the same day, the Court entered judgment in favor of Plaintiffs in accordance with the jury's verdict.  Dkt. 246.

On March 27, 2012, Defendants filed a notice of appeal from the judgment.  Dkt. 297.  During the pendency of the appeal, however, the parties mediated their dispute and reached a settlement of the entire case.  The settlement will result in a $4,000,000 payment to Siehna, and $500,000 to Martin Cotton, Sr.  An order vacating the judgment is a condition of the settlement.  To that end, the parties have now jointly requested that the Court vacate the judgment.  Dkt. 327.[1]  Additionally, because Siehna is a minor, Plaintiffs seek approval of her proposed settlement.  Dkt. 331.

## II.   **DISCUSSION**

### A.    MOTION TO VACATE JUDGMENT

Federal Rule of Civil Procedure 60(b) affords the district court discretion to vacate a judgment "when the equities so demand[.]"  Am. Games, Inc. v. Trade Prods., Inc., 142 F.3d 1164, 1168 (9th Cir. 1998); see Fed. R. Civ. P. 60(b)(6) (permitting the court to vacate a judgment "any other reason that justifies relief.").  A post-judgment settlement does not ipso facto require the district court to vacate a judgment; "otherwise, any litigant dissatisfied with a trial court's findings would be able to have them wiped from the books." Bates v. Union Oil Co. of Cal., 944 F.2d 647, 650 (9th Cir. 1991) (internal quotations and citations omitted).  Thus, where the parties seek to vacate a judgment based upon a settlement, two equitable considerations should be addressed:  "[1] the consequences and attendant hardships of dismissal or refusal to dismiss and [2] the competing values of finality of judgment and right to relitigation of unreviewed disputes."  Dilley v. Gunn, 64 F.3d 1365, 1371 (9th Cir. 1995) (internal quotations and citations omitted).

---

[1] In connection with said motion, the Ninth Circuit has granted Defendants' motion to dismiss the appeal without prejudice to reinstatement in the event the Court declines to vacate the judgment.  Dkt. 332.

Here, both of the concerns germane to a request to vacate a judgment militate in favor of granting the parties' joint request.  First, if the settlement is not realized, the parties will be compelled to proceed with the appeal, which carries with it inherent risks to both sides.  Both parties will face months or perhaps years of delay and uncertainty, incur additional costs and face the prospect of having to retry some or all of the case at a future date in the event the judgment is reversed.  In contrast, no hardship is likely to result from vacating the judgment, as the settlement grants Plaintiffs the same amount of compensatory damages that was awarded under the verdict.  As to the second consideration, the settlement will finally resolve all disputes between the parties arising from the death of the Decedent and, importantly, bring will closure for all involved.

While not every settlement warrants vacating a judgment reached following a jury verdict, the Court finds that the unique circumstances of this case, which has entailed years of difficult litigation, on balance, warrant granting the parties' joint request to vacate the judgment in order to facilitate the settlement.  See Ahern v. Central Pac. Freight Lines, 846 F.2d 47, 48 (9th Cir. 1988) ("The Ninth Circuit is firmly committed to the rule that the law favors and encourages compromise settlements.") (internal quotations and citation omitted).  Accordingly, the parties' joint request to vacate the judgment is GRANTED.

### B.   APPLICATION FOR MINOR'S COMPROMISE

As part of the proposed settlement, Plaintiffs also seek judicial approval of proposed compromise of Siehna's claims.  In considering the fairness of a settlement of a minor's claim, federal courts generally are guided by state law.  See Schwarzer, Tashima & Wagstaffe, California Practice Guide, Federal Procedure Before Trial ¶ 15.138 at 15-48 (TRG 2012).  California law "bestows broad power on the court to authorize payment from the settlement—to say who and what will be paid from the minor's money…."  Goldberg v. Superior Court, 23 Cal.App.4th 1378, 1382 (1994).  The Court's role in approving a minor's compromise is to "assure that whatever is done is in the minor's best interest" and that "the compromise is sufficient to provide for the minor's injuries, care and treatment."  Id.  "[A] court must independently investigate and evaluate any compromise or settlement

of a minor's claims to assure itself that the minor's interests are protected … even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem." <u>Salmeron v. United States</u>, 724 F.2d 1357, 1363 (9th Cir. 1983).

Here, the settlement for Siehna, for all intents and purposes, mirrors the jury's verdict and the judgment entered in this action. <u>See</u> Kloeppel Decl. Ex. A (General Release of All Claims § 2.0), Dkt. 328; Final Judgment, Dkt. 246; Jury Verdict, Dkt. 245. Thus, based on the information presented in connection with the Application, coupled with the Court's familiarity with the facts and procedural history of this action, the Court is satisfied that the proposed minor's compromise is fair and reasonable and sufficiently protects her interests. In addition, the Court finds that the proposed structure of the settlement protects the interest of Siehna by ensuring that the settlement will remain in a blocked account interest bearing account until she reaches majority. Therefore, Plaintiffs' application for approval of the minor's compromise is GRANTED.

## III.   **CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT

1.      The Joint Motion to Vacate Judgment is GRANTED. The judgment entered on September 23, 2011 (Dkt. 246) is vacated.

2.      Application for Approval of Minor Siehna M. Cotton's Compromise is GRANTED, subject to the following:

a.      The settlement of minor Siehna M. Cotton's action against the Defendants in the sum of $4,000,000.00 is hereby approved. Defendant City of Eureka, through counsel, shall prepare and deliver drafts for the partial settlement proceeds, no later than twenty (20) days from the date of this Order, payable as follows:

i.      A draft for $998,103.00 shall be made payable to John Hancock Assignment Company and $1,648,662.90 shall be made payable to BHG Structured Settlement, Inc., as Assignees for the benefit of minor Siehna M.

Cotton.  These funds shall be used to purchase two annuities in accord with the Addendum ("Exhibit A") to this Order which outlines the future periodic payments;

      ii.     The Assignees shall have the right to fund its liability to make periodic payments to the minor plaintiff by purchasing an annuity policy from John Hancock Life Insurance Company U.S.A. and Berkshire Hathaway Life Insurance Company of Nebraska.  Attached hereto as "Exhibit B" is a copy of this rating information and a sample annuity policy.  John Hancock Life Insurance Company U.S.A. and Berkshire Hathaway Life Insurance Company of Nebraska will act as Guarantors of the Assignees.

      iii.    The Court approves Megan McClure to be named as primary beneficiary on Siehna's M. Cotton's structured settlement.

      iv.    A draft for $1,353,234.10 shall be made payable to the Law Offices of Dale K. Galipo and Law Offices of Vicki I. Sarmiento, representing the minor's share of attorneys' fees and costs.

    b.    The Court directs the Assignees to purchase the annuity contracts on behalf of Siehna M. Cotton.  The funds shall be disbursed in accord with the terms of the Annuities as outlined in the Addendum attached to this Order as "Exhibit A." John Hancock Life Insurance Company U.S.A. and Berkshire Hathaway Life Insurance Company of Nebraska shall act as Guarantors of the Assignees. Disbursement drafts will be made payable and issued directly to Siehna M. Cotton upon reaching the age of maturity according to the payment schedule.

    c.    Absent a further order of this Court, there will be no distributions to any person other than specified by this Order.

3.      This Order terminates Docket 327 and 332.

IT IS SO ORDERED.

Dated:  December 5, 2012

_Saundra B Armstrong_
SAUNDRA BROWN ARMSTRONG
United States District Judge

# EXHIBIT A

ADDENDA

## INDIVIDUALLY DESIGNED SETTLEMENT
### FINAL Proposal

CLAIMANT: **Siehna Cotton, female**
D.O.B. October 04, 2005

| PAYMENT DESCRIPTION | COSTS | GUARANTEED PAYOUT |
|---|---|---|
| **Education Fund:** Commencing at age 18 (10/04/2023); $40,000.00 every 6 months for 5 years Compounding at a rate of 4.50% per annum | | $437,656.78 |
| **Education Fund:** Commencing at age 23 (10/04/2028); $45,000.00 every 6 months for 3 years Compounding at a rate of 4.50% per annum | | $282,332.25 |
| **Monthly Income:** Commencing at age 18 (10/04/2023); $2,500.00 every month for 5 years Compounding at a rate of 3.00% per annum | | $159,274.06 |
| **Monthly Income:** Commencing at age 23 (10/04/2028); $2,750.00 every month for 3 years and 1 month Compounding at a rate of 3.00% per annum | | $105,004.70 |
| **Monthly Income:** Commencing at age 26 (10/04/2031); $3,000.00 every month for 4 years and 1 month Compounding at a rate of 3.00% per annum | | $153,987.09 |
| **Lump Sum:** $250,000.00 at age 21 (10/04/2026) $350,000.00 at age 23 (10/04/2028) $400,000.00 at age 27 (10/04/2032) $500,000.00 at age 30 (10/04/2035) $550,000.00 at age 33 (10/04/2038) $650,000.00 at age 36 (10/04/2041) $750,000.00 at age 40 (10/04/2045) $795,000.00 at age 45 (10/04/2050) | | $4,245,000.00 |
| **Monthly Income:** Commencing at age 30 (10/04/2035); $3,500.00 every month for 5 years and 1 month | | $213,500.00 |
| **Annual Income:** Commencing at age 30 (10/04/2035); $30,000.00 every year for 11 years | | $330,000.00 |
| **Money fund:** Costs for plans | $2,646,765.90 | |
| **Totals:** | $2,646,765.90 | $5,926,754.89 |

Quote is valid for 7 days as of October 8, 2012



# ATLAS SETTLEMENT GROUP, INC.

October 8, 2012

**VIA MAIL & EMAIL**                    **\*REVISED\***
Vicki Sarmiento
Law Offices of Vicki I. Sarmiento
333 N. Garfield Ave.
Alhambra, CA 91801

> Re:   Plaintiff:    Siehna Cotton
>          DOB:         10/4/05
>          Defendant:   City of Eureka

Dear Mrs. Sarmiento:

We are pleased to confirm that the above referenced matter has been settled in part with a structured settlement **pending approval of the Minor's Compromise**. The terms are as follows:

From the total gross settlement of $4,000,000.00, all fees and costs are to be disbursed in compliance with the Order Approving Minor's Compromise and the remaining balance of $2,646,765.90 will be utilized to purchase structured annuities through two life companies, which will provide the following benefits.

**Periodic payments payable to Siehna Cotton**
**College Education Fund:**
$40,000.00 payable Semi-annually, Guaranteed for 5 years, Commencing age 18 (10/4/2023),
and compounding at a rate of 4.5% annually
**GraduateCollege Education Fund:**
$45,000.00 payable Semi-annually, Guaranteed for 3 years, Commencing age 23 (10/4/2028),
and compounding at a rate of 4.5% annually
**Monthly Income:**
$2,500.00 payable monthly, Guaranteed for 5 years, Commencing age 18 (10/4/2023), and compounding at
a rate of 3.0% annually
$2,750.00 payable monthly, Guaranteed for 3 years and 1 month, Commencing age 23 (10/4/2028), and
compounding at a rate of 3.0% annually
$3,000.00 payable monthly, Guaranteed for 4 years and 1 month, Commencing age 26 (10/4/2031), and
compounding at a rate of 3.0% annually
$3,500.00 payable monthly, Guaranteed for 5 years and 1 month, Commencing age 30 (10/4/2035)
**Annual Income:**
$30,000.00 payable annually, Guaranteed for 11 years, Commencing age 30 (10/4/2035)
**Lump Sum Payment:**
$100,000.00 payable at age 23 (10/4/2028)

*\*\*Note: The above referenced payments will be provided by John Hancock Life Insurance Co. USA*

Member National Structured Settlements Trade Association

24265 Juanita Drive • Laguna Niguel, California 92677
Phone: 949.600.5441    Toll Free: 800.485.0336    Fax: 949.600.5445
CA License No. 0654860
California@AtlasSettlements.com • www.AtlasSettlements.com

**Periodic payments payable to Siehna Cotton**

**Lump Sum Payments:**

$250,000.00 payable at age 21 (10/4/2026)
$250,000.00 payable at age 23 (10/4/2028)
$400,000.00 payable at age 27 (10/4/2032)
$500,000.00 payable at age 30 (10/4/2035)
$550,000.00 payable at age 33 (10/4/2038)
$650,000.00 payable at age 36 (10/4/2041)
$750,000.00 payable at age 40 (10/4/2045)
$795,000.00 payable at age 45 (10/4/2050)

**Note: *The above referenced payments will be provided by Berkshire Hathaway Life Insurance Co.*

**Please note that all payments are guaranteed.** If the payee is not living at the time the guaranteed payments are due, they will go to her estate.

Enclosed please find the A.M. Best ratings and a sample annuity policies for both life insurance companies being utilized, John Hancock and Berkshire Hathaway, for use in obtaining court approval.

***Please note***, *since this settlement is for a minor child, the life company(s) will require a copy of the Order Approving the Minor's Compromise. The name of the life insurance company(s), ratings and the benefit schedule should be stated in your Order. You may attach this letter as an Exhibit to your Order.* We will need a copy of the Order Approving Minor's Compromise.

If I may assist you further, or if you have any questions, please feel free to call me.

Very truly yours,

**Atlas Settlement Group, Inc.**

*Melissa Baldwin*

Melissa Baldwin

Enclosures

# EXHIBIT B

*John Hancock.*
the future is yours®



# Who do you trust with your future?

## A market leader since 1862

In a world of financial uncertainty and market volatility, the financial strength and stability of your annuity carrier makes all the difference. John Hancock, together with our parent company, Manulife Financial Corporation (Manulife Financial), is among the highest-rated life insurance companies. But don't just take our word for it. Take the word of A.M. Best, Fitch Ratings, Standard & Poor's, and Moody's—the financial rating agency experts.

### Learn more!

To learn more about **John Hancock Structured Settlements**, please contact your Structured Settlement professional.

## JOHN HANCOCK—EXCELLENT FINANCIAL STRENGTH

| Rating Agency | John Hancock Life Insurance Companies |
|---|---|
| A.M. Best Company | **A+ (2nd of 15 ratings)** Superior ability to meet ongoing obligations. |
| Fitch Ratings | **AA- (4th of 21 ratings)** Very strong capacity to meet policyholder and contract obligations. |
| Standard & Poor's | **AA- (4th of 21 ratings)** Very strong financial security characteristics. |
| Moody's Investors Service | **A1 (5th of 21 ratings)** Good financial security. |

Financial strength ratings are current as of December 13, 2010, are subject to change, and apply to John Hancock Life Insurance Company (U.S.A.) and John Hancock Life Insurance Company of New York as a measure of the companies' claims-paying ability to honor any guarantees provided by the contract and any applicable optional riders, but not specifically to its products.

**John Hancock's A.M. Best Financial Size Category: XV ($2 billion or greater, largest of 15 categories)**

The Financial Size Category (FSC) is assigned specifically by A.M. Best, based on adjusted policyholders' surplus. The FSC is intended to provide a convenient indicator of the size of a company in terms of its statutory surplus and related accounts.

1210:SS0024

 Life Insurance Company

John Hancock Place
Boston, Massachusetts 02117

INITIAL PAYEE- JOHN CLIENT
SINGLE PREMIUM- VALUABLE CONSIDERATION
DATE OF ISSUE- JULY 29, 2003
ISSUE AGE- 41

ANNUITY NUMBER
14963-10001-100

# Individual Annuity

The John Hancock Life Insurance Company agrees, subject to the conditions and provisions of this contract, to pay the Annuity Payments at its Home Office in Boston, Massachusetts.

The Annuity Payments will be made as specified on page 3. Payments will be made to the person or persons designated on that page until otherwise directed by the Owner.

The contract is issued in consideration of the application, a copy of which is attached to and made a part of the contract, and the payment of the Single Premium.

The conditions and provisions on this and the following pages are part of the contract.

**10 Day Right to Cancel - This contract may be returned by delivering or mailing it within 10 days after its receipt to the Company at Boston, Massachusetts, or to the agent or agency office through which it was delivered. Immediately on such delivery or mailing, the contract shall be deemed void from the beginning. Any premium paid on it will then be refunded within 10 days.**

Signed for the Company at Boston, Massachusetts.

President

Secretary

Single Premium Immediate Annuity with payments, amounts and period limitations as described on page 3

Not eligible for dividends

Form 84-65

**Contract Provisions**

**Alphabetical Guide**

Section

| | |
|---|---|
| 1 | Definitions |
| 2 | Contract Specifications |
| 3 | Owner, Payee |
| 4 | Proof Required for Payment |
| 5 | Claims of Creditors |
| 6 | Assignment |
| 7 | Incontestability |
| 8 | Misstatement of Age or Sex |
| 9 | The Contract |

Section

| | |
|---|---|
| 6 | Assignment |
| 5 | Claims of Creditors |
| 9 | Contract |
| 2 | Contract Specifications |
| 1 | Definitions |
| 7 | Incontestability |
| 8 | Misstatement of Age or Sex |
| 3 | Owner, Payee |
| 4 | Proof Required for Payment |

---

## 1. DEFINITIONS

"We", "us" and "our" refer only to the John Hancock Life Insurance Company.

"You" and "your" refer only to the Owner of this contract.

"Payment" means, unless otherwise stated, payment at our Home Office in Boston, Massachusetts.

"Written notice" means, unless otherwise stated, a written notice received at our Home Office in Boston, Massachusetts, or at one of our authorized offices.

"Payee" means the person or persons to whom Annuity Payments are to be made.

"Measuring Life" means the person or persons on whose life an Annuity Payment is or may be contingent.

## 2. CONTRACT SPECIFICATIONS

INITIAL PAYEE- JOHN CLIENT
SINGLE PREMIUM- VALUABLE CONSIDERATION
DATE OF ISSUE- JULY 29, 2003
ISSUE AGE- 41

ANNUITY NUMBER
14963-10001-100

### SCHEDULE OF ANNUITY PAYMENTS

See Application

*John Hancock.*

3

317-000



**JOHN HANCOCK LIFE INSURANCE COMPANY**
200 Clarendon Street
Structured Settlements, T-24
Boston MA 02117
FAX (866)329-5477

## APPLICATION FOR SINGLE PREMIUM IMMEDIATE ANNUITY

| 1 | **Measuring Life** | John  Client | | |
|---|---|---|---|---|
| | | Full Name | | Phone |
| | | | | 01 / 01 / 1962 |
| | | Address | | Date of Birth (Mo. / Day / Yr.) |
| | | | | |
| | | Social Security Number | | ☑ Male      ☐ Female |

| 2 | **Joint Measuring Life (if applicable)** | Full Name | | Phone |
|---|---|---|---|---|
| | | Address | | Date of Birth (Mo. / Day / Yr.) |
| | | Social Security Number | | ☐ Male      ☐ Female |
| | | Relationship to Measuring Life | | |

| 3 | **Owner** | John Hancock Assignment Company | (800)624-5155 |
|---|---|---|---|
| | | Full Name | Phone |
| | | Rocky Hill Connecticut 06067 | |
| | | Address | |
| **3A** | **Applicant (if different than Owner)** | | |

| 4 | **Payee** (will be Measuring Life if left blank) | SEE ATTACHED | | |
|---|---|---|---|---|
| | | Full Name | | Phone |
| | | Address | | |

**5    Payment Information**      *(Submit proof of age for life or joint life payments.)*

| START DATE | TYPE (e.g. certain, life, lump sum, joint) | AMOUNT | NUMBER OF PAYMENTS | FREQUENCY OF PAYMENTS |
|---|---|---|---|---|

## SEE ATTACHED

156-SS-99CT                                                                                              Page 1



**JOHN HANCOCK LIFE INSURANCE COMPANY**
200 Clarendon Street
Structured Settlements, T-24
Boston MA 02117
FAX (866)329-5477

## APPLICATION FOR SINGLE PREMIUM IMMEDIATE ANNUITY
### (continued)

**6    Beneficiary**  *For each designated Beneficiary, the following information must be supplied:*

| Full Name | Phone | Address | Social Security Number | Relationship to Measuring Life |
|-----------|-------|---------|------------------------|-------------------------------|
| See Attached | | | | |
| | | | | |
| | | | | |

**7    Premium**        Valuable Consideration

**8    Replacement**        Is the annuity applied for replacing or changing any existing annuity or life insurance?
☐ Yes    ☒ No    If yes, provide issuer and contract number:

The Immediate Annuity applied for does not provide a cash surrender or death benefit. However, under some options, scheduled payments may continue beyond the death of the Measuring Life. The type of annuity indicated above will determine what, if anything, is payable after death.

The Applicant represents that all statements and answers on this application are true to the best of his or her knowledge and belief and completely recorded herein.

Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud.

_____    Signed at ___Rocky Hill  Connecticut___    Date _____
            Applicant                                              City, State

_____
Agent Signature and License Identification Number

Agent: Is the annuity applied for intended to replace or change any existing annuity or life insurance?    ☐ Yes
                                                                                                            ☒ No

## Addendum No. 1
### Description of Periodic Payments

Payee (1):     **John Client**
Payee Address:
Benefit(s):    1.  **Life with Certain Annuity** - $1,000.00 for life, payable monthly, guaranteed for 20 year(s), beginning on 09/08/2003, with the last guaranteed payment on 08/08/2023.

### 3. OWNER

The Owner will be as shown in the application unless changed by you.

You shall have the sole and absolute power to exercise all rights and privileges without the consent of any other person unless you provide otherwise by written notice.

You may change the Owner or Payee by written notice. A change will take effect when the notice is signed if we acknowledge receipt on the notice. The change will take effect whether or not the Owner or any Payee is alive at the time of the acknowledgment. A change: (i) will take effect only with respect to a payment due after the effective date of such change; and (ii) shall be subject to the rights of any assignee of record with us; and (iii) will be subject to any payment made or action taken by us before the acknowledgment.

### 4. PROOF REQUIRED FOR PAYMENT

Any payment contingent on the continuation of life or the occurrence of an event may be withheld until due proof of such continuation or occurrence is received at our Home Office in Boston, Massachusetts.

We may rely on any affidavit or certificate which we consider satisfactory proof to: (i) identify any Payee not described by name; or (ii) to determine the conditions for payment.

Any payment made or other action taken by us before the receipt of due proof as required above or of an affidavit or certificate shall be a complete discharge of our liability for the payment made or other action taken.

### 5. CLAIMS OF CREDITORS

The Annuity Payments under the contract will be exempt from the claims of creditors to the extent permitted by law. They may not be assigned before becoming payable without our agreement.

### 6. ASSIGNMENT

We will not be on notice of any assignment unless it is in writing; nor will we be on notice until a duplicate of the original assignment has been filed at our Home Office. We assume no responsibility for the validity or sufficiency of any assignment.

### 7. INCONTESTABILITY

This contract shall be incontestable after 1 year from its Date of Issue.

### 8. MISSTATEMENT OF AGE OR SEX

If the age or the sex of any Measuring Life has been misstated, we will adjust the amount of each Annuity Payment to that which the premium paid would have purchased at the correct age and sex.

Any overpayment shall be repaid to us on demand. Any underpayment shall be paid to you. In either case interest will be paid at the rate of 6% a year to the date of payment.

### 9. THE CONTRACT

The entire contract between the applicant and us consists of this contract and the written application. A copy of the application is attached at issue. All statements made in the application shall be deemed representations and not warranties. We will use no statement to defend a claim under the contract unless it is in the written application.

This contract is not entitled to share in any of our divisible surplus.

Only the President, a Vice President, the Secretary, or an Assistant Secretary of the Company has authority to waive or agree to change in any respect any of the conditions or provisions of the contract, or to extend credit to make an agreement for us.

5                                                                                                            541-000

Communications about this contract may be sent to the Company at John Hancock Place, Boston, Massachusetts 02117, or to any Agency of the Company.

Single Premium Immediate Annuity with payments, amounts and period limitations as described on page 3

Not eligible for dividends

Form 84-65                                                                 Printed in U.S.A.

# John Hancock Life Insurance Company (U.S.A.)

Bloomfield Hills, Michigan



### EVIDENCE OF GUARANTEE

John Hancock Life Insurance Company (U.S.A.) ("John Hancock") guarantees any payment or other obligation required to be made or performed by John Hancock Assignment Company ("JHAC"), a wholly-owned subsidiary of John Hancock, under the terms of any and all qualified assignments (as defined under Section 130 of the United States Internal Revenue Code) that JHAC enters into on or after January 1, 2010 in connection with which JHAC purchases annuities from John Hancock or its subsidiaries.

# SAMPLE

John G. Vrysen
Senior Vice President & General Manager
John Hancock Annuities

This Evidence of Guarantee is not an insurance policy.

## Berkshire Hathaway Life Insurance Company of Nebraska

Active life reinsurer, founded 1993

Structured Settlements 1993-1999, re-entering 2011

| | |
|---|---|
| AM Best A++, XV | 12/31/10 Written Premium $2.44B |
| Standard & Poor's AA+ | 12/31/10 Admitted Assets $8.41B |
| Moody's Aa1 | 12/31/10 Surplus $1.55B |

| Ultimate Parent - Berkshire Hathaway Inc. | |
|---|---|
| 12/31/10 Admitted Assets | $372B |
| 12/31/10 Surplus | $163B |

### Marketing now provided by Symetra Financial Corporation

- Top-notch service
- Quick turn-around

Competitive Advantage
- Superior balance sheet supports an appetite for long duration liabilities
- Financially strong yet competitive product
    - Younger annuitants
    - Longer deferral periods and cost of living increases
    - Long-dated portion of split cases.

Key Products
- Structured Settlement Annuities (assigned and unassigned)
- Structured Attorney Fees
- Non-Qualified SPIAs
- Periodic Payment Reinsurance *(through National Indemnity Company)*

# BERKSHIRE HATHAWAY LIFE INSURANCE COMPANY OF NEBRASKA
### A Stock Company
### 3024 Harney Street
### Omaha, Nebraska 68131
### (402) 916-3100

## SINGLE PREMIUM ANNUITY CONTRACT

For valuable consideration, Berkshire Hathaway Life Insurance Company of Nebraska (herein called "BHLN") agrees that it will make the payments described in this Contract in accordance with the terms and conditions thereof. The amount and due date of each payment is shown on the SCHEDULE OF PAYMENTS.

**There is no cash value provided under this Contract.**

Please read this Contract carefully.

| Contract No.: [enter contract number] | Contract Date: [enter date premium received] |
|---|---|
| | |
| Owner: BHG Structured Settlements, Inc., a Missouri Corporation | |
| Date of Birth of Measuring Life: [enter measuring life(s) date of birth] | |
| Measuring Life: [enter measuring life(s) name] | Social Security No.: [enter measuring life(s) SS#] |
| Annuity Commencement Date: [enter date first payment begins] | |
| Optional Payee: [enter payee(s) name] | |
| Contingent Payee (if any): [enter contingent aka beneficiary name(s), relationship(s) and allocation] | |

Signed for Berkshire Hathaway Life Insurance Company of Nebraska.

_____          _____
Assistant Secretary                                    President

## 10 DAY RIGHT TO EXAMINE CONTRACT

If the Owner returns the contract to BHLN within 10 days after its receipt and requests in writing that BHLN cancel the contract, BHLN will do so and refund the amount received to purchase the annuity.

CONTRACT NO.:

**BERKSHIRE HATHAWAY LIFE INSURANCE COMPANY OF NEBRASKA**
A Stock Company
3024 Harney Street
Omaha, Nebraska 68131
(402) 916-3100

SINGLE PREMIUM ANNUITY CONTRACT

**Rights of Owner:**

The Owner stated on Page 1 of this Contract owns the annuity described in this Contract. The Owner will have the right at any time to designate the payee to whom benefits are payable under the annuity. Unless the Owner otherwise directs, however, Berkshire Hathaway Life Insurance Company of Nebraska ("BHLN") will make all payments under this annuity to the Optional Payee named in this Contract during the lifetime of the Optional Payee and, thereafter, to the Contingent Payee. If no Optional Payee is stated, the Optional Payee shall be the Measuring Life. If the Contingent Payee is not stated on Page 1 of the Contract, the Estate of the Optional Payee shall be the Contingent Payee.

No change in payee will be effective until written notice of the change is received by BHLN. However any change in an Optional Payee or Contingent Payee designation will take effect as of the date the request was signed but without prejudice to BHLN on account of any payment made by it within ten days after its receipt of the request.

The Owner is the sole person entitled to exercise any right or privilege under this Contract.

**Proof of Living:**

BHLN may require proof that the Measuring Life or Optional Payee or Contingent Payee is living on the date on which any annuity payment is to be made. If proof is requested, no payment will be made until the proof has been received by BHLN.

**Payees:**

If two or more Optional Payees or Contingent Payees are designated and their respective interests are not specified, their interests will be several and equal.

**Change or Waiver:**

No sales representative or other person, except an officer of BHLN, may make or change any term or condition of this Contract or make any binding promises concerning this Contract on behalf of BHLN. No modification, interpretation or waiver of any provision of this Contract is valid unless it is in writing and signed by an officer of BHLN.

**Amendments:**

This Contract may only be amended by an endorsement signed by an officer of BHLN and attested by BHLN's Secretary or Assistant Secretary.

FORM BN-1 (7/94)                                      Page 2 of 4

CONTRACT NO.:

**Misstatements:**
If the age or sex of the Measuring Life, Optional Payee or Contingent Payee or any other relevant fact has been misstated, BHLN will not pay a greater amount under this Contract than would have been paid by BHLN if the correct information had been provided. Any overpayment of annuity will, together with interest, be deducted from future annuity payments. The interest rate(s) will be that used in determining the purchase price of the annuity.

**Nonassignability of Claims of Creditors:**
This Contract and the payments provided under this Contract are nonassignable and will be exempt from the claims of any creditor of the Owner, Optional Payee or Contingent Payee to the maximum extent permitted by law.

**Currency:**
Any money BHLN pays, or that is paid to BHLN, must be in United States currency. Any amount BHLN owes will be payable at BHLN's Home Office in Omaha, Nebraska.

**Payee Direction:**
BHLN will not be deemed to know of any direction to change payee or of the death of any payee until ten days after such written direction or information is received at our Home Office. BHLN is not obliged to assure that any payment direction is valid or sufficient.

**No Change, No Surrender and No Loan:**
No person may change the annuity payments, surrender this Contract for cash or borrow any amount from BHLN under this Contract. Neither the Owner nor any other person has the right to accelerate, defer, increase or decrease any payment required to be made under this Contract.

**No Participation (No Dividends):**
This Contract is not eligible for any dividends. Neither the Owner nor any other person shall participate in the profits of BHLN.



FORM BN-1 (7/94)

Page 3 of 4

CONTRACT NO.:

**Schedule of Payments:**

BHLN will make payments under this Contract to:

[enter optional payee(s) name as shown on Page 1]
[address]
[city, state, zip]

[enter payment options]

